IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


KATHLEEN A. BENZ,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )          Civil Action No. 1:05CV01760
                                           )
THE WASHINGTON NEWSPAPER                   )
  PUBLISHING COMPANY, LLC, *et al*.,       )
                                           )
            Defendants.                    )
_____)


**FIRST AMENDED COMPLAINT**
(DIVERSITY JURISDICTION; DEFAMATION; INVASION OF PRIVACY – INTRUSION UPON
SECLUSION; INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS;
FALSE LIGHT INVASION OF PRIVACY; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;
COMPENSATORY AND PUNITIVE DAMAGES; TEMPORARY RESTRAINING ORDER
AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)


**JURY TRIAL DEMANDED**


            Plaintiff, Kathleen A. Benz, by her undersigned lawyers, brings this diversity

action against defendants The Washington Newspaper Publishing Company, LLC and John F.

Bisney, jointly and severally, alleging claims for defamation, invasion of privacy, false light

invasion of privacy, and intentional infliction of emotional distress, seeking both compensatory

and punitive damages.  Plaintiff, Kathleen A. Benz, also seeks a temporary retraining order and

preliminary and permanent injunctive relief against defendant John F. Bisney and permanent

injunctive relief against defendant The Washington Newspaper Publishing Company, LLC.

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 in that this case presents a controversy between citizens of different states in which the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(2) & (3).

**PARTIES**

3.      Plaintiff, Kathleen A. Benz, is an adult citizen of the District of Columbia.

4.      Defendant The Washington Newspaper Publishing Company, LLC, is a limited liability corporation organized and operating under the laws of the State of Delaware with its principal place of business at 6408 Edsall Road, Alexandria, Virginia 22312. Defendant The Washington Newspaper Publishing Company, LLC regularly does business in the District of Columbia.  Its statutory agent for service of process in the District of Columbia is C.T. Corporation System, Suite 1000, 1015 Fifteenth Street, N.W., Washington, D.C. 20005.

5.      Defendant John F. Bisney is an adult citizen of the State of Maryland residing at 5803 Ryland Drive, Bethesda, Maryland 20817-2538.

**ALLEGATIONS OF FACT COMMON TO ALL CLAIMS**

6.      The Washington, D.C. office of the Cable News Network (hereinafter referred to as "CNN") employs plaintiff, Kathleen A. Benz, as an assignment editor.

2

7.    At CNN, the responsibilities of plaintiff, Kathleen A. Benz, include working the desk on weekends in the evenings and producing news segments during the week.

8.    Plaintiff, Kathleen A. Benz, is thirty-five (35) years of age.

9.    Plaintiff, Kathleen A. Benz, is not, and at all times relevant to the allegations of this First Amended Complaint was not, married.

10.    Defendant The Washington Newspaper Publishing Company, LLC publishes a free daily newspaper entitled *The Washington D.C. Examiner*.  Defendant The Washington Newspaper Publishing Company, LLC distributes *The Washington D.C. Examiner* Monday through Saturday to homes, on the streets, at Metro Stations, and at other locations in the District of Columbia, Maryland, and Virginia.

11.    Defendant John F. Bisney is a former CNN Radio correspondent and a former colleague at CNN of plaintiff, Kathleen A. Benz.

12.    In or about June 2005, CNN discharged defendant John F. Bisney in part because of his harassment of plaintiff, Kathleen A. Benz, as more fully set forth.

13.    Defendant John F. Bisney is approximately fifty-one (51) years of age.

14.    Defendant John F. Bisney is not, and at all times relevant to the allegations of this First Amended Complaint was not, married.

### ACTS AND OMISSIONS OF DEFENDANT JOHN F. BISNEY

15.    Plaintiff, Kathleen A. Benz, first met defendant John F. Bisney sometime in 1997 while both were working on the CNN program *Crossfire.*

16.    Beginning in or about November 2002, plaintiff, Kathleen A. Benz, and defendant John F. Bisney developed a social friendship.

17.     Plaintiff, Kathleen A. Benz, ended her friendship with defendant John F. Bisney in May 2005 when plaintiff, Kathleen A. Benz, learned that defendant John F. Bisney, without the knowledge or permission of plaintiff, Kathleen A. Benz, among other things had obtained access to her e-mail (hereinafter referred to as "e-mail") and read them and had established and maintained websites on the World Wide Web in the name of plaintiff, Kathleen A. Benz, and posted personal and private information regarding and photographs of plaintiff, Kathleen A. Benz, thereon, all as alleged more fully below.

18.     During the period of her friendship with defendant John F. Bisney from November 2002 to May 2005, plaintiff, Kathleen A. Benz, from time to time attended concerts, went out to dinner, and took vacations with defendant John F. Bisney.

19.     When plaintiff, Kathleen A. Benz, and defendant John F. Bisney traveled together, they always stayed in separate hotel rooms.

20.     Also during the period of her friendship with defendant John F. Bisney from November 2002 to May 2005, plaintiff, Kathleen A. Benz, accepted gifts from defendant John F. Bisney as she would from any other person whom she considered a friend.

21.     At no time ever has plaintiff, Kathleen A. Benz, had any type of romantic relationship with defendant John F. Bisney.

22.     At no time ever has plaintiff, Kathleen A. Benz, had any type of sexual relationship with defendant John F. Bisney.

23.     At no time ever has plaintiff, Kathleen A. Benz, had any type of relationship with defendant John F. Bisney other than one of friendship.

24.     Plaintiff, Kathleen A. Benz, has never kissed defendant John F. Bisney romantically.

25.     Plaintiff, Kathleen A. Benz, has never engaged in sexual intercourse with defendant John F. Bisney.

26.     Plaintiff, Kathleen A. Benz, has never engaged in sexual or genital touching with defendant John F. Bisney.

27.     Plaintiff, Kathleen A. Benz, has never engaged in any behavior with defendant John F. Bisney that could be said to denote a romantic or sexual relationship of any kind.

28.     Plaintiff, Kathleen A. Benz, suffers from epilepsy, a disorder that plaintiff, Kathleen A. Benz, in part controls with medication.

29.     Plaintiff, Kathleen A. Benz, also suffers from frequent migraine headaches, a condition she in part controls with medication.

30.     Plaintiff, Kathleen A. Benz, at all times material to the allegations of this First Amended Complaint, has been under the regular care of a physician for her epilepsy, migraines, and related problems.

31.     Stress exacerbates the epilepsy and the migraines suffered by plaintiff, Kathleen A. Benz, by, among other things, causing her to suffer seizures, severe and debilitating headaches, nausea, and other symptoms.

32.     Plaintiff, Kathleen A. Benz, suffered from this disorder of epilepsy, migraines, and related problems and when she first met defendant John F. Bisney in 1997.

33.     In or about 2002, plaintiff, Kathleen A. Benz, told defendant John F. Bisney that she suffered from epilepsy, migraines, and related problems.

34.     In or about 2002, plaintiff, Kathleen A. Benz told defendant John F. Bisney that stress exacerbated the epilepsy, migraines, and related problems, suffered by

plaintiff, Kathleen A. Benz, by among other things, causing her to pass out and to suffer seizures, severe and debilitating headaches, nausea, and other symptoms.

35.     In or about 2002, plaintiff, Kathleen A. Benz, told defendant John F. Bisney that she took medication to control her epilepsy, migraines, and related problems.

36.     In or about 2002, plaintiff, Kathleen A. Benz, told defendant John F. Bisney that she was under the regular care of a physician for epilepsy, migraines, and related problems.

37.     From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, suffer seizures.

38.     From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, suffer severe and debilitating headaches.

39.     From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, suffer nausea.

40.     From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, suffer migraine headaches.

41.     From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, pass out.

42.    From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, in the hospital for treatment of her epilepsy, migraines, and related symptoms.

43.    From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, take medication for her epilepsy, migraines, and related problems.

44.    From time to time throughout the period that plaintiff, Kathleen A. Benz, maintained a friendship with defendant John F. Bisney, defendant John F. Bisney observed plaintiff, Kathleen A. Benz, visit a physician for treatment of her epilepsy, migraines, and related problems.

45.    Throughout the period of her friendship with defendant John F. Bisney, plaintiff, Kathleen A. Benz, repeatedly told defendant John F. Bisney in unequivocal language that she was not interested in a romantic or sexual relationship of any type with him.

46.    Throughout the period of her friendship with defendant John F. Bisney, plaintiff, Kathleen A. Benz, repeatedly told defendant John F. Bisney in unequivocal language that she was not interested in dating him.

47.    Throughout the period of her friendship with defendant John F. Bisney, plaintiff, Kathleen A. Benz, repeatedly told defendant John F. Bisney in unequivocal language that she was only interested in being his friend.

48.    From time to time during the period of her friendship with defendant John F. Bisney, plaintiff, Kathleen A. Benz, discussed with defendant John F. Bisney the fact that her income and assets were inadequate to pay her expenses.

49.    On numerous occasions, defendant John F. Bisney offered to provide money to plaintiff, Kathleen A. Benz, to help her pay her expenses.

50.    When defendant John F. Bisney offered to provide money to plaintiff, Kathleen A. Benz, as alleged herein and on numerous other occasions, defendant John F. Bisney stressed to plaintiff, Kathleen A. Benz, that he had extensive inherited wealth.

51.    When defendant John F. Bisney offered to provide money to plaintiff, Kathleen A. Benz, as alleged herein and on numerous other occasions, defendant John F. Bisney stressed to plaintiff that he had numerous lucrative investments.

52.    When defendant John F. Bisney offered to provide money to plaintiff, Kathleen A. Benz, as alleged herein and on numerous other occasions, defendant John F. Bisney stressed to plaintiff, Kathleen A. Benz, that he had sizeable discretionary income.

53.    When defendant John F. Bisney offered to provide money to plaintiff, Kathleen A. Benz, as alleged herein and on numerous other occasions, defendant John F. Bisney stressed to plaintiff, Kathleen A. Benz, that he did not need to work because he had sufficient money to live without working.  On the strength of these representations, plaintiff, Kathleen A. Benz, accepted money from defendant John F. Bisney from time to time as a gift.

54.    When defendant John F. Bisney offered to provide money to plaintiff, Kathleen A. Benz, as alleged herein and on numerous other occasions, defendant John F. Bisney stressed to plaintiff, Kathleen A. Benz, that he had no children, family, or dependents who depended upon him for assistance or support.

55.    When defendant John F. Bisney offered to provide money to plaintiff, Kathleen A. Benz, as alleged herein and on numerous other occasions, defendant John F.

8

Bisney stressed to plaintiff, Kathleen A. Benz, that he did not expect her to pay back any of the money he provided her.

56.     Throughout the friendship between plaintiff, Kathleen A. Benz, and defendant John F. Bisney, defendant John F. Bisney expressed his desire to have a romantic and sexual relationship with plaintiff, Kathleen A. Benz.

57.     On each occasion when defendant John F. Bisney expressed this desire, plaintiff, Kathleen A. Benz, told him that she was not interested in any such relationship with defendant John F. Bisney.

58.     In or about March 2004, plaintiff, Kathleen A. Benz, discovered that defendant John F. Bisney had accessed her e-mail and read hundreds of e-mail messages stored therein.

59.     At no time did plaintiff, Kathleen A. Benz, ever authorize defendant John F. Bisney to access her e-mail for any reason.

60.     At no time did plaintiff, Kathleen A. Benz, ever authorize defendant John F. Bisney to read e-mails stored in her e-mail account.

61.     In late 2004, defendant John F. Bisney increased his pressure on plaintiff, Kathleen A. Benz, to have a romantic and sexual relationship with him.

62.     In response to this pressure, plaintiff, Kathleen A. Benz, repeatedly told defendant John F. Bisney that she did not want a romantic or sexual relationship with him and would not engage in one and that if he persisted in pressuring her, she would break off her friendship with him.

9

63.    When so rebuffed by plaintiff, Kathleen A. Benz, defendant John F. Bisney changed his story and told plaintiff, Kathleen A. Benz, that the money he had given her had not been a gift but a loan and demanded immediate repayment.

64.    At or about this same time in late 2004, defendant John F. Bisney sent plaintiff, Kathleen A. Benz, an e-mail containing an "article" authored by defendant John F. Bisney stating that plaintiff, Kathleen A. Benz, sought friendships with wealthy men for the purpose of procuring money from them.  A complete and accurate photocopy of this e-mail message is attached to the original Complaint in this case as Exhibit 1 and is incorporated herein by reference.

65.    This fake "article" in the e-mail message from defendant John F. Bisney, Exhibit 1, named the following persons as having been targets of this alleged activity by plaintiff, Kathleen A. Benz:  Gary Williams, the basketball coach at the University of Maryland; Mark Ein, identified in the message as a "venture capitalist;" Julian Esptein, identified in the message as a "Democratic superlawyer;" United States Representative Pete Sessions; Paul Bosserman, identified in the message as "Georgetown hairdresser to the stars;" John Sunnunu, Sr., former chief of staff to President George H.W. Bush; John Daggitt, identified in the message as a "multi-millionaire" who was engaged to plaintiff, Kathleen A. Benz; and defendant John F. Bisney, described in the message as "a recent paramour" of plaintiff, Kathleen A. Benz.

66.    Of all the men named in this fake article, Exhibit 1, plaintiff, Kathleen A. Benz, had briefly dated only Gary Williams, Paul Bosserman, Julian Epstein (over ten years before), and John Daggitt (five years before).

10

67.     Plaintiff, Kathleen A. Benz, had never in any way dated or been romantically or sexually involved with any of the other men named in this fake article, Exhibit 1.

68.     At no time did plaintiff, Kathleen A. Benz, ever seek the friendship of any of these men or of anyone else for the purpose of seeking money from them.

69.     In or about May 2005, James C. Benz, the father of plaintiff, Kathleen A. Benz, informed his daughter that by chance he had found two Internet sites, www.kathy-benz.net and www.kathy-benz.com.

70.     Plaintiff, Kathleen A. Benz, had not established any such Internet sites.

71.     Plaintiff, Kathleen A. Benz, had never authorized anyone to establish any such Internet sites.

72.     The first that plaintiff, Kathleen A. Benz, ever heard of these Internet sites was when her father told her of their existence.

73.     Upon learning of the existence of these two Internet sites, plaintiff, Kathleen A. Benz, viewed them on the World Wide Web.

74.     Each of these two Internet websites linked to other websites that dealt with negative character traits, such as narcissism, self-importance, arrogance, and haughtiness.

75.     On or about May 9, 2005, plaintiff, Kathleen A. Benz, communicated with employees of the Internet host for these two websites, GoDaddy.com.

76.     Employees of GoDaddy.com informed plaintiff, Kathleen A. Benz, that defendant John F. Bisney had established the two Internet sites.

11

77.     On or about May 9, 2005, plaintiff, Kathleen A. Benz, told defendant John F. Bisney what she had learned from GoDaddy.com about him having established the two Internet sites.

78.     In reply, defendant John F. Bisney denied that he had any involvement with establishing those two Internet websites.

79.     Plaintiff, Kathleen A. Benz, then sent an e-mail message to defendant John F. Bisney telling him not to communicate with her in any way.

80.     Defendant John F. Bisney replied admitting to plaintiff, Kathleen A. Benz, that he had in fact been responsible for establishing the two Internet sites and that he had lied when he denied responsibility for doing so.

81.     At some point thereafter, plaintiff, Kathleen A. Benz, was no longer able to access these Internet websites.

82.     On or about May 16, 2005, plaintiff, Kathleen A. Benz, while covering a press conference for her employer, CNN, noticed defendant John F. Bisney pacing back and forth behind her and staring at her in a hostile and intense way, causing her to feel uncomfortable, scared, and fearful for her safety.

83.     Also on May 16, 2005, some two hours after this press conference, defendant John F. Bisney e-mailed plaintiff, Kathleen A. Benz and commented on her physical appearance at the press conference.

84.     On or about May 17, 2005, plaintiff, Kathleen A. Benz, learned of the existence of a third Internet website about her on the World Wide Web, www.kathy-benz.org.

85.     Plaintiff, Kathleen A. Benz, had not created the third Internet website, www.kathy-benz.org.

86.    Plaintiff, Kathleen A. Benz, had not authorized anyone to create the third Internet website, www.kathy-benz.org.

87.    On or about May 14, 2005, plaintiff, Kathleen A. Benz, viewed the third Internet website, www.kathy-benz.org.

88.    On this third Internet website, www.kathy-benz.org, plaintiff, Kathleen A. Benz, found a page headed "Looks are deceiving. Boys Do you know anyone like this?' This heading was followed by several statements listing unpleasant character traits, for example: "[f]eels grandiose and self-important;" "obsessed with fantasies;" "uses others to achieve her own ends;" "devoid of empathy;" and "behaves arrogantly and haughtily."

89.    After she located this third Internet Website, www.kathy-benz.org, plaintiff, Kathleen A. Benz, communicated with employees of GoDaddy.com, the host for this third Internet website.

90.    The employees of GoDaddy.com informed plaintiff, Kathleen A. Benz, that this third Internet website, www.kathy-benz.org, had been established by defendant John F. Bisney.

91.    After learning that defendant John F. Bisney was behind this third Internet website, www.kathy-benz.org, plaintiff, Kathleen A. Benz, communicated with friends of defendant John F. Bisney and told them what she had discovered about this third Internet website and that she wanted them to persuade defendant John F. Bisney to take this third Internet website down.

92.    After she communicated with the friends of defendant John F. Bisney, plaintiff, Kathleen A. Benz, again checked and found that this third Internet website remained active.

13

93.    After she communicated with the friends of defendant John F. Bisney, plaintiff, Kathleen A. Benz, discovered that defendant John F. Bisney had added to the third Internet website, www.kathy-benz.org, photographs of her wearing only a bikini taken by defendant John F. Bisney while on vacation with plaintiff, Kathleen A. Benz.

94.    Attached to the original Complaint in this case as Exhibit 2 and incorporated herein are several pages downloaded from www.kathy-benz.org.

95.    Plaintiff, Kathleen A. Benz, had never known of the existence of any of these Internet sites before her father called her to tell her about them.

96.    At no time did plaintiff, Kathleen A. Benz, ever authorize anyone to establish an Internet site in or in any way using her name.

97.    At no time did plaintiff, Kathleen A. Benz, ever authorize anyone to post on any Internet site any personal information about her.

98.    At no time did plaintiff, Kathleen A. Benz, ever authorize anyone to post on any Internet site any photographs of plaintiff, Kathleen A. Benz.

99.    By no later than May 10, 2005, plaintiff, Kathleen A. Benz, had on several occasions instructed defendant John F. Bisney not to communicate with her in any way.

100.    By no later than May 10, 2005, plaintiff, Kathleen A. Benz, had instructed defendant John F. Bisney not to come near her.

101.    On or about May 21, 2005, plaintiff, Kathleen A. Benz instructed the security service in her building not to permit defendant John F. Bisney to enter.

102.    On or about May 25, 2005, defendant John F. Bisney entered the apartment building where plaintiff, Kathleen A. Benz, resides and slipped a card under her apartment door.

14

103.    On or about June 1, 2005, plaintiff, Kathleen A. Benz, brought a civil action in the Superior Court of the District of Columbia styled *Benz v. Bisney*, Case No. CA-05-4205 (hereinafter referred to as "the D.C. Superior Court Case").  A complete and accurate photocopy of that complaint is attached to the original Complaint in this case as Exhibit 3 and is incorporated herein by reference.

104.    Along with her Complaint, plaintiff, Kathleen A. Benz, filed Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction requesting the Superior Court of the District of Columbia to enjoin defendant John F. Bisney from communicating with plaintiff, Kathleen A. Benz, in any way and from creating or maintaining any websites referring to plaintiff, Kathleen A. Benz.

105.    On June 8, 2005, Judge Henry F. Greene of the Superior Court of the District of Columbia, signed a Temporary Restraining Order enjoining defendant John F. Bisney "from creating or maintaining, directly or through a third party, any Internet website referring in any way to plaintiff" and providing that defendant John F. Bisney could not "'blog' or participate in any Internet chat rooms regarding plaintiff."  A complete and accurate photocopy of that Temporary Restraining Order is attached to the original Complaint in this case as Exhibit 4 and is incorporated herein by reference.

106.    On July 11, 2005, plaintiff, Kathleen A. Benz, and defendant John F. Bisney executed a document entitled "Binding Settlement Agreement and Release" regarding the D.C. Superior Court Case (hereinafter referred to as "the D.C. Superior Court Case Settlement Agreement").  A complete and accurate photocopy of the Binding Settlement Agreement and Release is attached to the original Complaint in this case as Exhibit 5 and is incorporated herein by reference.

15

107.    Paragraph 2 of the D.C. Superior Court Case Settlement Agreement provides that "[t]he parties agree that they will not intentionally contact or communicate with each other."

108.    Notwithstanding the pendency of the D.C. Superior Court Case and his execution of the D.C. Superior Court Case Settlement Agreement, from in or about July 2005 and continuing through the date of this First Amended Complaint, defendant John F. Bisney has engaged in a campaign of harassment, identity-theft, Internet stalking, and defamation to destroy the health, reputation, and well-being of plaintiff, Kathleen A. Benz.

109.    For example, defendant John F. Bisney on or about July 19, 2005, wrote a second fake news article, this one entitled "Politics And Porn Stars."  This second fake news article was very close in content to the initial fake news article attached to the original Complaint in this case as Exhibit 1.  A complete and accurate photocopy of this second fake news article is attached to the original Complaint in this case as part of Exhibit 6 and is incorporated herein by reference.

110.    In this second fake news article, Exhibit 6, defendant John F. Bisney states that plaintiff, Kathleen A. Benz, is dating Mark Kulkis, president and CEO of Kick Ass Pictures, a company that produces pornographic movies; that plaintiff, Kathleen A. Benz, is a "Washington powerdater;" that plaintiff, Kathleen A. Benz, told her girlfriends "'Mark's a wonderful guy and I think this could be the real thing;'" and that plaintiff, Kathleen A. Benz, is "known in Washington power circles" for dating numerous men, identifying them by name as: Jonathan Ledecky, a "venture capitalist;" Gary Williams; and Mel Karmazin, CEO of Sirius, with whom the article alleged that plaintiff, Kathleen A. Benz, had "spent time last August … at his Hamptons home."

16

111.    Plaintiff, Kathleen A. Benz, never dated or had any romantic or sexual involvement of any type with Mark Kulkis, Jonathan Ledecky, or Mel Karmazin and indeed, did not and does not even know Mel Karmazin and has never visited the home of Mel Karmazin in the Hamptons or anywhere else.

112.    Defendant John F. Bisney sent this second fake article, Exhibit 6, all around the World Wide Web by posting it on numerous Internet sites, many of them containing explicit sexual material, such as "SXXXY.org," "Scuttleslut.blogspot.com," "PornNews.com," "Submittodesire.tripod.com," and numerous other sites.

113.    On or about July 31, 2005, defendant John F. Bisney modified the fake article, Exhibit 6, by adding additional men with whom plaintiff, Kathleen A. Benz, had romantic involvement, specifically Representative Pete Sessions, John Sunnunu, Sr., and Mark Ein.  A complete and accurate of this further-modified fake article is attached to the original Complaint in this case as part of Exhibit 6 and is incorporated herein by reference.

114.    Plaintiff, Kathleen A. Benz, never had any romantic or sexual involvement of any type with, and never dated, Sessions, Sunnunu, or Ein.

115.    In other postings on the World Wide Web, defendant John F. Bisney added the names of John McDonough, identified by defendant John F. Bisney as a "Chicago Cubs VP," and Julian Esptein.

116.    Plaintiff, Kathleen A. Benz, does not know any person employed by or affiliated with the Chicago Cubs, including any "John McDonough."

117.    Defendant John F. Bisney posted similar versions of the articles contained in Exhibit 6 on several other websites, including www.dailysexreview.com.  In his posting on this website, defendant John F. Bisney alleges plaintiff, Kathleen A. Benz, is dating

17

Mark Kulkis and writes: "Finally, a relationship in which Kulkis isn't the sluttier one. Happy herpes!" A complete and accurate photocopy of this posting, as printed from the World Wide Web, is attached to the original Complaint in this case as Exhibit 7 and is incorporated herein by reference.

118.    Plaintiff, Kathleen A. Benz, is not and has never been a "slut."

119.    Defendant John F. Bisney has distributed the fake article linking plaintiff, Kathleen A. Benz, with Kulkis with a photograph of plaintiff, Kathleen A. Benz, juxtaposed to a photograph of Kulkis.

120.    One Internet website to which defendant John F. Bisney distributed the fake article linking plaintiff, Kathleen A. Benz, with Kulkis and containing photographs of plaintiff, Kathleen A. Benz, and Kulkis is bc.indymedia.org. A complete and accurate photocopy of the fake article as downloaded from that Internet website is attached to the original Complaint in this case as Exhibit 8 and is incorporated herein by reference.

121.    Plaintiff, Kathleen A. Benz, has a professional acquaintance with John McDonough, an agent of the United States Secret Service.

122.    Plaintiff, Kathleen A. Benz, has never had any type of sexual or romantic relationship and has never dated Secret Service Agent John McDonough.

123.    Plaintiff, Kathleen A. Benz, referred to Secret Service Agent John McDonough in conversations in front of defendant John F. Bisney.

124.    On or about May 13, 2005, at 12:31 a.m. E.D.T., defendant John F. Bisney sent an e-mail message to plaintiff, Kathleen A. Benz, that said (among other things): "Hey you said you're not a baseball fan but you never mentioned JD." A complete and

18

accurate photocopy of this e-mail message is attached to the Complaint as Exhibit 9 and is incorporated herein by reference.

125.    On or about May 13, 2005, at 6:16 a.m. E.D.T., defendant John F. Bisney send an e-mail message to plaintiff Kathleen A. Benz, with a subject line that sated "Correction."  This e-mail stated:  "McDonough (not 'JD')."  A complete and accurate photocopy of this e-mail message is attached to the original Complaint in this case as Exhibit 10 and is incorporated herein by reference.

126.    Plaintiff, Kathleen A. Benz, does know Craig Karmazin, the son of Mel Karmazin, though she has never had any type of sexual or romantic relationship with Craig Karmazin and has never dated him.

127.    On an occasion in 2005, defendant John F. Bisney was present and within hearing distance of plaintiff, Kathleen A. Benz, while she spoke on the telephone with Mel Karmazin's son, Craig.

128.    After overhearing the part of this conversation conducted by plaintiff, Kathleen A. Benz, defendant John F. Bisney became agitated and hostile and accused plaintiff, Kathleen A. Benz, of having a romantic and sexual relationship with Mel Karmazin who, defendant John F. Bisney told her, had once fired defendant John F. Bisney from a radio job. Plaintiff, Kathleen A. Benz, assured defendant John F. Bisney that she did not even know Mel Karmazin.  Defendant John F. Bisney broke down crying.

129.    CNN assigned plaintiff, Kathleen A. Benz, to produce and cover a press conference being held June 14, 2005, by Mary Carey, a pornographic movie star who had come to Washington, D.C., with Mark Kulkis, a producer of pornographic films.

130.    CNN and numerous other broadcasters broadcast the press conference held by Mary Carey and anyone watching could have seen that plaintiff, Kathleen A. Benz, was covering this press conference for CNN.

131.    Attached to the original Complaint in this case as Exhibit 11 are photocopies of sixteen (16) of the hundreds of articles on various websites on the World Wide Web containing the various versions of the fake news story published by defendant John F. Bisney about plaintiff, Kathleen A. Benz.

132.    Among the websites to which defendant John F. Bisney has sent the fake news articles is one entitled www.WhatshappeningatCNN.blogspot.com, a website about events of interest to employees of CNN.  A high percentage of CNN employees read this website regularly.

133.    On July 21, 2005, a version of the fake news article published by defendant John F. Bisney about plaintiff, Kathleen A. Benz, this one entitled "Porn Baron + CNN Producer," appeared on the website www.WhatshappeningatCNN.blogspot.com, where it remains available to this date.  A complete and accurate photocopy of this version of the fake news article is attached to the original Complaint in this case as Exhibit 12 and is incorporated herein by reference.

134.    Since in or about July 2005, defendant John F. Bisney has sent e-mail messages to members of the family of plaintiff, Kathleen A. Benz, directing them to pornographic websites where the fake articles about her are available.

135.    Plaintiff, Kathleen A. Benz, has had involvement as a volunteer with a charity knows as "Hoop Dreams," which provides college scholarships to the youth of the

District of Columbia, college and career mentoring, SAT preparation, internships and job

connections, and community service.

136.    The chair of the board of Hoop Dreams is Susan Kay.

137.    In or about August 2005, defendant John F. Bisney sent a fake e-mail

message in the name of Susan Kay to some members of the board of directors of Hoop Dreams

directing those directors to the fake news articles about plaintiff, Kathleen A. Benz.

138.    Susan Kay did not authorize or send the e-mail message that defendant

John F. Bisney sent out in her name.

139.    On or about August 22, 2005, defendant John F. Bisney sent a fake e-

mail message to plaintiff, Kathleen A. Benz, purporting to be from her superior at CNN, Phil

Kent.  A complete and accurate photocopy of that e-mail message is attached to the original

Complaint in this case as Exhibit 13 and is incorporated herein by reference.  Phil Kent did not

send this e-mail.

140.    In Exhibit 13, defendant John F. Bisney stated:  "I would strongly warn

you to maintain better boundaries between your life and your employment.  This is critical to

maintain the professional integrity of our product."

141.    On or about July 31, 2005, at approximately 3:01 a.m. defendant John F.

Bisney sent a fake e-mail message from Dr. Sanjay Gupta, Medical Correspondent for CNN, to

plaintiff, Kathleen A. Benz, forwarding an article entitled "U.S. Warns Fentanyl Patients About

Drug."  Plaintiff, Kathleen A. Benz, sent an e-mail message to Dr. Gupta asking about this

purported message.  Dr. Gupta denied sending the e-mail message or having any knowledge

about the message.  Complete and accurate photocopies of these e-mail messages are attached

to the original Complaint in this case as Exhibit 14 and are incorporated herein by reference.

21

142.     Since on or about August 25, 2005, defendant John F. Bisney has impersonated plaintiff, Kathleen A. Benz, by replying in her name with her home telephone number, her personal work telephone number, her home address, and her e-mail address to personal advertisements seeking sexual relations that were posted on a website known as www.craigslist.com.

143.     As a result of this impersonation of plaintiff, Kathleen A. Benz, by defendant John F. Bisney, persons who have posted personal advertisements seeking sexual relations on a website known as www.craigslist.com, have communicated with plaintiff, Kathleen A. Benz, in numerous telephone calls and e-mail messages from persons who believe she desires to engage in sexual relations with them.

144.     Plaintiff, Kathleen A. Benz, has never responded to any personal ads on www.craigslist.com.

145.     Attached to the original Complaint in this case as Exhibit 15 and incorporated herein by reference are complete and accurate photocopy of some of fake responses posted by defendant John F. Bisney at www.craigslist.com impersonating plaintiff, Kathleen A. Benz, with the phone numbers and addresses of plaintiff, Kathleen A. Benz.

146.     The e-mails and telephone calls contain graphic sexual content and have severely upset plaintiff, Kathleen A. Benz.

147.     Plaintiff, Kathleen A. Benz, fears for her safety, knowing that persons who are seeking sexual relations and who believe she is also seeking sexual relations have been provided her home and work telephone numbers, her home address, and her e-mail address by defendant John F. Bisney.

22

148.    On or about August 26, 2005, defendant John F. Bisney sent an e-mail message to a weblog that addresses matters relating to Texas politics.  A complete and accurate photocopy of this e-mail message is attached to the original Complaint in this case as Exhibit 16 and is incorporated herein by reference.

149.    In this message, Exhibit 16, defendant John F. Bisney stated that plaintiff, Kathleen A. Benz, was having an affair with Representative Pete Sessions, who is married.

150.    In this message, Exhibit 16, defendant John F. Bisney also stated that plaintiff, Kathleen A. Benz, has a romantic and sexual relationship with one Kinky Friedman, a Texas author and politician.

151.    As noted, plaintiff, Kathleen A. Benz, has never had any type of romantic or sexual relationship with Rep. Sessions, nor has she dated him.

152.    Plaintiff, Kathleen A. Benz, has never had any type of sexual or romantic relationship, and has never dated, Kinky Friedman.

153.    Prior to publishing the statements about plaintiff, Kathleen A. Benz, made by defendant John F. Bisney as alleged in this First Amended Complaint, defendant John F. Bisney did nothing to investigate the truth of those statements.

154.    The statements regarding plaintiff, Kathleen A. Benz, made by defendant John F. Bisney as alleged herein, were false.

155.    The statements regarding plaintiff, Kathleen A. Benz, made by defendant John F. Bisney as alleged herein were defamatory.

156.    The statements regarding plaintiff, Kathleen A. Benz, made by defendant John F. Bisney as alleged herein were defamatory *per se*.

23

157.    The acts and omissions of defendant John F. Bisney as alleged in this First Amended Complaint were negligent, in that they failed to meet the standards required of a reasonable person in the circumstances.

158.    The acts and omissions of defendant John F. Bisney as alleged in this First Amended Complaint breached his duty of care to plaintiff, Kathleen A. Benz.

159.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were motivated by hatred, ill-will, common law malice, and a desire to harm plaintiff, Kathleen A. Benz.

160.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were intentional, willful, and done for the purpose of harming plaintiff, Kathleen A. Benz.

161.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were done with knowledge that the statements he made about plaintiff, Kathleen A. Benz, were false or with reckless disregard whether they were false.

### ACTS AND OMISSIONS OF DEFENDANT
### THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC

162.    On or about August 19, 2005, defendant The Washington Newspaper Publishing Company, LLC published in its print publication, *The Washington D.C. Examiner*, an article under the byline of one Karen Feld, entitled "Controversial Love for CNN Producer," (hereinafter referred to as "the *Examiner* Article").  A complete and accurate photocopy of the *Examiner* Article as it appeared in the print edition of *The Washington D.C. Examiner* is attached to the original Complaint in this case as Exhibit 17 and is incorporated herein by reference.

24

163.    In the *Examiner* Article, defendant The Washington Newspaper Publishing Company, LLC accused plaintiff, Kathleen A. Benz, of "us[ing] her position to meet all the 'right' people," and being romantically linked to several named "power players," including Jonathan Ledecky, Gary Williams, John McDonough, Mel Karmazin, Hugh O'Brien, John Bisney, Paul Bosserman, and John Daggitt, who was described as Ms. Benz's "one-time fiance (*sic*)."

164.    In the *Examiner* Article, defendant The Washington Newspaper Publishing Company, LLC alleged that according to the "gal pals" of plaintiff, Kathleen A. Benz, Ms. Benz has "hooked up…with porn king Mark Kulkis" and implied that she had done so for the purpose of obtaining information about a lunch Kulkis had with Karl Rove, an adviser to President George W. Bush.

165.    Defendant The Washington Newspaper Publishing Company, LLC posted the *Examiner* Article on *The Washington Examiner*'s website at www.dcexaminer.com, where, as of the date of the filing of the original Complaint in this case, it remained available to members of the public with Internet access.  A complete and accurate photocopy of the *Examiner* Article as it was downloaded from the website of *The Washington Examiner* is attached to the original Complaint in this case as Exhibit 18 and is incorporated herein by reference.

166.    Prior to publishing the *Examiner* Article in print and on its website, defendant The Washington Newspaper Publishing Company, LLC did not speak or attempt to speak with plaintiff, Kathleen A. Benz.

167.    Prior to publishing the *Examiner* Article in print and on its website, defendant The Washington Newspaper Publishing Company, LLC did nothing to investigate the truth of the statements in the *Examiner* Article.

168.    It was the *Examiner* Article that defendant John F. Bisney sent to the members of the board of directors of the Hoop Dreams foundation, as alleged above.

169.    On or about August 19, 2005, plaintiff, Kathleen A. Benz, telephoned Karen Feld, the person whose byline appeared on the *Examiner* Article.

170.    Karen Feld refused to take the August 19, 2005, telephone call from plaintiff, Kathleen A. Benz.

171.    On at least three (3) more occasions on August 19, 2005, plaintiff, Kathleen A. Benz, telephoned Karen Feld.

172.    Karen Feld refused to take any telephone calls from plaintiff, Kathleen A. Benz, on August 19, 2005.

173.    When Karen Feld refused to take her telephone calls, plaintiff, Kathleen A. Benz, left a message asking Karen Feld to call back.

174.    Karen Feld failed to return numerous telephone calls from plaintiff, Kathleen A. Benz, on August 19, 2005.

175.    The next day, on or about August 20, 2005, plaintiff, Kathleen A. Benz, succeeded in reaching Karen Feld by telephone by pretending to be a social friend of Karen Feld.

176.    In that telephone call, plaintiff, Kathleen A. Benz, told Karen Feld that the *Examiner* Article was substantially false.

177.    In that telephone call, plaintiff, Kathleen A. Benz, demanded that the *Examiner* print a retraction.

178.    In reply, Karen Feld told plaintiff, Kathleen A. Benz, that the *Examiner* would not print a retraction.

179.    Further in reply, Karen Feld told plaintiff, Kathleen A. Benz, to "just get used" to such stories.

180.    On or about September 30, 2005, defendant The Washington Newspaper Company, LLC published an article by Karen Feld in her gossip column entitled "Correction." In that "Correction," defendant the Washington Newspaper Publishing Company, LLC again published the false and defamatory allegation that plaintiff, Kathleen A. Benz, used her position at CNN to obtain romantic relationships with "Gary Williams, Paul Bosserman and John Daggett," each of whom the "Correction" described as "contacts made by Kathy Benz, an assignment editor at CNN."  A photocopy of this "Correction" as it appeared on www.DCExaminer.com is attached to this First Amended Complaint as Exhibit 19.

181.    At all times relevant to the allegations of this First Amended Complaint, Karen Feld was acting within the scope of her employment by defendant The Washington Newspaper Publishing Company, LLC.

182.    At all times relevant to the allegations of this First Amended Complaint, Karen Feld was acting as the authorized agent of defendant The Washington Newspaper Publishing Company, LLC.

183.    The statements regarding plaintiff, Kathleen A. Benz, made by defendant The Washington Newspaper Publishing Company, LLC as alleged herein, were false.

27

184.    The statements regarding plaintiff, Kathleen A. Benz, made by defendant The Washington Newspaper Publishing Company, LLC as alleged herein were defamatory.

185.    The statements regarding plaintiff, Kathleen A. Benz, made by defendant The Washington Newspaper Publishing Company, LLC as alleged herein were defamatory *per se*.

186.    The acts and omissions of defendant The Washington Newspaper Publishing Company, LLC as alleged in this First Amended Complaint were negligent, in that they failed to meet the standards required of a reasonable person in the circumstances.

187.    The acts and omissions of defendant The Washington Newspaper Publishing Company, LLC as alleged in this First Amended Complaint breached his duty of care to plaintiff, Kathleen A. Benz.

188.    The acts and omissions of defendant The Washington Newspaper Publishing Company, LLC, as alleged in this First Amended Complaint, were motivated by hatred, ill-will, common law malice, and a desire to harm plaintiff, Kathleen A. Benz.

189.    The acts and omissions of defendant The Washington Newspaper Publishing Company, LLC, as alleged in this First Amended Complaint, were intentional, willful, and done for the purpose of harming plaintiff, Kathleen A. Benz.

190.    The acts and omissions of defendant The Washington Newspaper Publishing Company, LLC, as alleged in this First Amended Complaint, were done with knowledge that the statements he made about plaintiff, Kathleen A. Benz, were false or with reckless disregard whether they were false.

28

## CLAIM ONE

### (DEFAMATION; DEFENDANT THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC AND DEFENDANT JOHN F. BISNEY; COMPENSATORY AND PUNITIVE DAMAGES; INJUNCTIVE RELIEF)

191.    Plaintiff, Kathleen A. Benz, realleges the averments of the preceding paragraphs of this First Amended Complaint and incorporates them herein by reference.

192.    The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, published false and defamatory statements about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint that have injured plaintiff in her trade, profession, and community standing and exposed plaintiff, Kathleen A. Benz, to public scorn, hatred, contempt, and ridicule and have discouraged others in the community from having a good opinion of and from associating and dealing with plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint.

193.    The false and defamatory statements published by defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, have made plaintiff, Kathleen A. Benz, appear odious, infamous, and ridiculous.

194.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, knew or should have known that the false and defamatory statements they published about plaintiff, Kathleen A. Benz, were false.

195.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, had a duty to take reasonable steps to investigate and verify the accuracy of the statements they published about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint, before they published them.

196.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, breached their duty to take reasonable steps to investigate and verity the accuracy of the statements they published about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint, before they published them.

197.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, published false and defamatory statements about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint with knowledge that those statements were false or almost certainly false or else acted with reckless disregard of the truth of those statements.

198.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, published false and defamatory statements about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint with hatred, malice, ill-will, and an intent to injure and harm plaintiff, Kathleen A. Benz.

199.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, published false and defamatory statements about plaintiff, Kathleen A. Benz, on the World Wide Web in such a way as to result in such false and defamatory statements being "cached," or preserved or retained on the Web.

200.    In this way, the false and defamatory statements about plaintiff, Kathleen A. Benz, that defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, published on the World Wide Web remain accessible to any person who has access to an Internet search engine.

201. So long as these false and defamatory statements remain cached on the World Wide Web as alleged in this First Amended Complaint, plaintiff, Kathleen A. Benz, has suffered, is suffering, and will suffer irreparable harm to her trade, profession, community standing, reputation and good name, obloquy, hatred, ridicule, and other irreparable harm that cannot be recompensed at law.

202. As a direct and proximate result of the acts and omissions of defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, plaintiff, Kathleen A. Benz, has suffered and continues to suffer actual damages in the form of financial loss, injury to reputation, and loss of current and future business, and is entitled to presumed damages as well, in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00).

203. WHEREFORE PLAINTIFF, KATHLEEN A. BENZ, demands judgment against defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, including a mandatory injunction directing defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, to take all steps necessary to remove from the World Wide Web and all search engines operating thereon all traces of and links to the false and defamatory statements posted on the Web by defendant as alleged in this First Amended Complaint; an award of compensatory and presumed damages in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00); punitive damages in an amount to be determined at trial, but believed to exceed Twenty Million Dollars ($20,000,000.00); her costs in this behalf expended; and such further relief as justice demands.

## CLAIM TWO
### (INVASION OF PRIVACY – INTRUSION UPON SECLUSION; DEFENDANT JOHN F. BISNEY; COMPENSATORY AND PUNITIVE DAMAGES)

204.    Plaintiff, Kathleen A. Benz, realleges the preceding averments of this First Amended Complaint and incorporates them herein by reference.

205.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, constitute an invasion or interference by physical intrusion, by use of defendant John F. Bisney's sense of sight and hearing, into the private or secret concerns of plaintiff, Kathleen A. Benz.

206.    Defendant John F. Bisney intruded upon the seclusion and private or secret concerns of plaintiff, Kathleen A. Benz, in a way that would be highly offensive to a reasonable person.

207.    As a direct and proximate result of the acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, plaintiff, Kathleen A. Benz, has suffered has suffered and continues to suffer actual damages in the form of financial loss, injury to reputation, and loss of current and future business, and is entitled to presumed damages as well, in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00).

208.    WHEREFORE PLAINTIFF, KATHLEEN A. BENZ, demands judgment against defendant John F. Bisney, including an award of compensatory and presumed damages in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00); punitive damages in an amount to be determined at trial, but believed to exceed Twenty Million Dollars ($20,000,000.00); her costs in this behalf expended; and such further relief as justice demands.

32

## CLAIM THREE
### (INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS; DEFENDANT THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC AND DEFENDANT JOHN F. BISNEY; INJUNCTIVE RELIEF; COMPENSATORY AND PUNITIVE DAMAGES)

209.    Plaintiff, Kathleen A. Benz, realleges the preceding averments of this First Amended Complaint and incorporates them herein by reference.

210.    The publication of information about plaintiff, Kathleen A. Benz, by defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, constituted a publication of private facts concerning plaintiff, Kathleen A. Benz.

211.    At no time has plaintiff, Kathleen A. Benz, waived or otherwise taken any action that would constitute an implied waiver of her privilege against the publication of private facts concerning plaintiff, Kathleen A. Benz.

212.    The facts published as alleged in this First Amended Complaint were not and are not of legitimate concern to the public.

213.    The publication of this private information as alleged in this First Amended Complaint was such that it was and is highly offensive to a reasonable person of ordinary sensibilities, considering the time and place of such publication.

214.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, published private facts about plaintiff, Kathleen A. Benz, on the World Wide Web in such a way as to result in such statements being "cached," or preserved or retained on the Web.

215.    In this way, the statements about plaintiff, Kathleen A. Benz, that defendant The Washington Newspaper Publishing Company, LLC and defendant John F.

Bisney, jointly and severally, published on the World Wide Web remain accessible to any person who has access to an Internet search engine.

216.    So long as these statements remain cached on the World Wide Web as alleged in this First Amended Complaint, plaintiff, Kathleen A. Benz, has suffered, is suffering, and will suffer irreparable harm to her trade, profession, community standing, reputation and good name, obloquy, hatred, ridicule, and other irreparable harm that cannot be recompensed at law.

217.    As a direct and proximate result of the acts and omissions of defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, plaintiff, Kathleen A. Benz, has suffered, is suffering, and will continue to suffer actual damages in the form of financial loss, injury to reputation, mental anguish, and loss of current and future business, and is entitled to presumed damages as well, in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00).

218.    WHEREFORE PLAINTIFF, KATHLEEN A. BENZ, demands judgment against defendant The Washington Newspaper Publishing Company and defendant John F. Bisney, jointly and severally, including a mandatory injunction directing defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, to take all steps necessary to remove from the World Wide Web and all search engines operating thereon all traces of and links to the statements posted on the Web by defendant as alleged in this First Amended Complaint; and an award of compensatory and presumed damages in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00); punitive damages in an amount to be determined at trial, but believed

to exceed Twenty Million Dollars ($20,000,000.00); her costs in this behalf expended; and such further relief as justice demands.

## CLAIM FOUR

### (FALSE LIGHT INVASION OF PRIVACY; DEFENDANT THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC AND DEFENDANT JOHN F. BISNEY; INJUNCTIVE RELIEF; COMPENSATORY AND PUNITIVE DAMAGES)

219.    Plaintiff, Kathleen A. Benz, realleges the preceding averments of this First Amended Complaint and incorporates them herein by reference.

220.    The various statements published by defendant The Washington Newspaper Publishing Company, LLC and by defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, placed plaintiff, Kathleen A. Benz, in a false and objectionable light and other than she actually is.

221.    The various statements published by defendant The Washington Newspaper Publishing Company, LLC and by defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, placed plaintiff, Kathleen A. Benz, in a false and objectionable light highly offensive to a reasonable person.

222.    The various statements published by defendant The Washington Newspaper Publishing Company, LLC and by defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, characterized plaintiff, Kathleen A. Benz, falsely by attributing to her conduct which is not her own.

223.    Defendant The Washington Newspaper Publishing Company and defendant John F. Bisney, jointly and severally, owed a duty of care not to publish information about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint that placed her in a false light.

35

224.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, breached that duty by publishing information that they knew or should have known placed plaintiff, Kathleen A. Benz, in a false light.

225.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, when they published the information about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint, knew that the information they published about plaintiff, Kathleen A. Benz, was false or else acted with reckless disregard whether it was false.

226.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, when they published the information about plaintiff, Kathleen A. Benz, as alleged in this First Amended Complaint, knew that the information they published about plaintiff, Kathleen A. Benz, placed her in a false light or were reckless with regard to whether such publication placed her in a false light.

227.    As the direct and proximate result of the acts and omissions of defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, plaintiff, Kathleen A. Benz, has suffered, is suffering, and will suffer harm to her reputation and good name, loss of business and custom, obloquy, hatred, and ridicule.

228.    Defendant The Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and severally, as alleged in this First Amended Complaint, posted statements about plaintiff, Kathleen A. Benz, that place plaintiff, Kathleen A. Benz, in a false, objectionable and highly offensive light and other than what she actually is, and characterize plaintiff, Kathleen A. Benz, falsely by attributing conduct which is not her own, on

36

the World Wide Web in such a way as to result in these false, objectionable, and highly

offensive statements being "cached," or preserved or retained on the World Wide Web.

229.    In this way, the false, objectionable, and highly offensive statements

about plaintiff, Kathleen A. Benz, that defendant The Washington Newspaper Publishing

Company, LLC and defendant John F. Bisney, jointly and severally, posted on the World Wide

Web remain accessible to any person with access to the World Wide Web.

230.    So long as these false, objectionable, and highly offensive statements

remained cached on the World Wide Web as alleged in this First Amended Complaint,

plaintiff, Kathleen A. Benz, has suffered, is suffering, and will suffer irreparable harm to her

trade, profession, community standing, reputation and good name, obloquy, hatred, ridicule,

and other irreparable harm that cannot be recompensed at law.

231.    WHEREFORE PLAINTIFF, KATHLEEN A. BENZ, demands judgment

against defendant The Washington Newspaper Publishing Company, LLC and defendant John

F. Bisney, jointly and severally, including a mandatory injunction directing defendant The

Washington Newspaper Publishing Company, LLC and defendant John F. Bisney, jointly and

severally, to take all steps necessary to remove from the World Wide Web and all search

engines operating thereon all traces of and links to the statements posted on the Web by

defendant as alleged in this First Amended Complaint; and an award of compensatory and

presumed damages in an amount to be determined at trial, but believed to exceed Ten Million

Dollars ($10,000,000.00); punitive damages in an amount to be determined at trial, but believed

to exceed Twenty Million Dollars ($20,000,000.00); her costs in this behalf expended; and such

further relief as justice demands.

## CLAIM FIVE
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; DEFENDANT JOHN F. BISNEY; COMPENSATORY AND PUNITIVE DAMAGES)

232.    Plaintiff, Kathleen A. Benz, realleges the preceding averments of this First Amended Complaint and incorporates them herein by reference.

233.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were so extreme and outrageous as to exceed the bounds of decency and to be atrocious and intolerable in a civilized society.

234.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were intended by defendant John F. Bisney to cause disturbance in the emotional tranquility of plaintiff, Kathleen A. Benz, so acute that harmful physical consequences might result.

235.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were intended by defendant John F. Bisney to cause harmful physical consequences to plaintiff, Kathleen A. Benz.

236.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were such that a reasonable person would find that they were reasonably likely to cause disturbance in the emotional tranquility of plaintiff, Kathleen A. Benz, so acute that harmful physical consequences might result.

237.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were such that a reasonable person would find that they were reasonably likely to cause harmful physical consequences to plaintiff, Kathleen A. Benz.

238.     The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were malicious, intentional, motivated by hatred, common law malice, ill-will, and a desire to injure plaintiff, Kathleen A. Benz.

239.     In the alternative, plaintiff, Kathleen A. Benz, alleges that the acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were reckless.

240.     When he committed the acts and omissions attributed to him in this First Amended Complaint, defendant John F. Bisney knew that plaintiff, Kathleen A. Benz, by virtue of her illness, was peculiarly susceptible to emotional distress.

241.     When he committed the acts and omissions attributed to him in this First Amended Complaint, defendant John F. Bisney was reckless as to whether plaintiff, Kathleen A. Benz, by virtue of her illness, was peculiarly susceptible to emotional distress.

242.     At the times defendant John F. Bisney committed the acts and omissions alleged in this First Amended Complaint, a reasonable person would have known that plaintiff, Kathleen A. Benz, by virtue of her illness, was peculiarly susceptible to emotional distress.

243.     The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, have directly and proximately caused extreme emotional distress to plaintiff, Kathleen A. Benz.

244.     As a direct and proximate result of the acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, plaintiff, Kathleen A. Benz, has suffered and continues to suffer compensatory damages in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00).

245.    WHEREFORE PLAINTIFF, KATHLEEN A. BENZ, demands judgment against defendant John F. Bisney and an award of compensatory and presumed damages in an amount to be determined at trial, but believed to exceed Ten Million Dollars ($10,000,000.00); punitive damages in an amount to be determined at trial, but believed to exceed Twenty Million Dollars ($20,000,000.00); her costs in this behalf expended; and such further relief as justice demands.

### CLAIM SIX
#### (DEFENDANT JOHN F. BISNEY;
#### TEMPORARY RESTRAINING ORDER
#### AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

246.    Plaintiff, Kathleen A. Benz, realleges the preceding averments of this First Amended Complaint and incorporates them herein by reference.

247.    Defendant John F. Bisney has impersonated plaintiff, Kathleen A. Benz, by using her name on Internet web sites; sending e-mails in her name to sexually-oriented advertisements on the World Wide Web; using her name to post sexually-oriented advertisements on the World Wide Web; and sending and requesting Internet messages and e-mail as though he were plaintiff, Kathleen A. Benz, all for the purpose of harassing, intimidating, and injuring plaintiff, Kathleen A. Benz.

248.    Defendant John F. Bisney has impersonated a number of other persons, including but not limited to Phil Kent of CNN, Susan Kay of Hoop Dreams, Dr. Sanjay Gupta of CNN, and others to conduct a campaign of intimidation and harassment against plaintiff, Kathleen A. Benz, causing her extreme emotional distress.

40

249.    The acts and omissions of defendant John F. Bisney, as alleged in this First Amended Complaint, were malicious, intentional, motivated by hatred, common law malice, ill-will, and a desire to injure, harass, and intimidate plaintiff, Kathleen A. Benz.

250.    The acts and omissions of defendant John F. Bisney as alleged in this First Amended Complaint continue through the date of this First Amended Complaint.

251.    Defendant John F. Bisney has engaged in hundreds of acts of harassment and intimidation against plaintiff, Kathleen A. Bisney.

252.    Unless he is restrained by this Court, defendant John F. Bisney will continue to harass, intimidate, and injury plaintiff, Kathleen A. Benz.

253.    Plaintiff does not have an adequate remedy at law to recompense her for all the acts of harassment and intimidation by defendant John F. Bisney, as alleged in this First Amended Complaint, or to make defendant John F. Bisney stop his harassment and intimidation of plaintiff, Kathleen A. Benz, and to make him stop impersonating her.

254.    WHEREFORE PLAINTIFF, KATHLEEN A. BENZ, demands entry of a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction ordering defendant, John F. Bisney, forthwith to cease all use of her name for any reason in any forum; to cease replying to e-mails as though he were plaintiff, Kathleen A. Benz; to stop all impersonation of plaintiff, Kathleen A. Benz, on the Internet and elsewhere; to stop all impersonations of any person in any e-mail or other messages or publications about or referring to plaintiff, Kathleen A. Benz; to stop all communications about or regarding plaintiff, Kathleen A. Benz, unless done in his own name; to cease all communication to plaintiff, Kathleen A. Benz; to cease all acts of intimidation or harassment of plaintiff, Kathleen A.

41

Benz; and awarding plaintiff, Kathleen A. Benz, her costs in this behalf expended and such

further relief as justice demands.

# JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF
WILLIAM ALDEN McDANIEL, JR.

_____/s/_____
William Alden McDaniel, Jr.

_____/s/_____
Bassel Bakhos
*Pro Hac Vice Pending*

118 West Mulberry Street
Baltimore, Maryland 21201
Tel.:  410.685.3810
Fax:  410.685.0203
wam@wamcd.com
bb@wamcd.com

*Lawyers for Plaintiff, Kathleen A. Benz*

First Amended Complaint.doc