**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KATHLEEN A. BENZ,          )
                              )
        Plaintiff,       )
                              )
     v.                    )     Civil Action No. 1:05cv1760 (EGS)
                              )
THE WASHINGTON NEWSPAPER    )
PUBLISHING COMPANY, LLC      )
and                            )
JOHN F. BISNEY,            )
                              )
        Defendants.    )

<u>**DEFENDANT THE WASHINGTON EXAMINER'S
MOTION TO DISMISS**</u>

Defendant The Washington Newspaper Publishing Company, LLC, publisher of the Washington Examiner ("the Examiner") hereby moves to dismiss Plaintiff Kathleen A. Benz's Complaint against the Examiner pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. This Motion is accompanied by a Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss. Grounds for dismissal are as follows:

1.     The defamation claim must be dismissed because no reasonable reader could construe the Column as containing defamatory meaning nor is the Column capable of bearing implied defamatory meaning;

2.     The defamation claim must also be dismissed because neither the Column nor Correction makes a statement of fact as to Plaintiff's motives, and a defamation claim cannot be based merely on an expression of opinion;

3.     The statements in the Column do not support a claim for false light invasion of privacy, because the statements, as a matter of law, do not place Plaintiff in a highly offensive false light;

4.     The statements in the Column do not support a claim for private facts invasion of privacy because, as a matter of law, the facts in the Column are neither private nor highly offensive, and, insofar as plaintiff claims the facts are false, no private facts claim is available.

Therefore, Defendant respectfully requests that the court grant its motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6), and dismiss the Complaint in its entirety with prejudice against Defendant The Washington Newspaper Publishing Company, LLC.


Dated this 8th day of November, 2005.



Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:                    
     Laura R. Handman (D.C. Bar No. 444386)
     Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

Attorneys for Defendant The Washington
Newspaper Publishing Company, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2005, I caused the foregoing to be served electronically on counsel of record by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF).

Amber L. Husbands
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KATHLEEN A. BENZ,    )
          )
   **Plaintiff,**    )
          )
  **v.**         )   **Civil Action No. 1:05cv1760 (EGS)**
          )
THE WASHINGTON NEWSPAPER )
PUBLISHING COMPANY, LLC  )
and          )
JOHN F. BISNEY,     )
          )
   **Defendants.**    )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT THE WASHINGTON EXAMINER'S
## MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

Laura R. Handman (D.C. Bar No. 444386)
Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

November 8, 2005

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT .......................................................................................................6

I.      MOTION TO DISMISS STANDARD.................................................6

II.     DEFAMATION CLAIM (CLAIM ONE) MUST BE DISMISSED ...................................7

        A.      No Reasonable Reader Could Construe the Column as Containing
                Defamatory Meaning .................................................................7

        B.      Column and Correction Not Capable of Bearing Implied Defamatory
                Meaning That Plaintiff Misused Her Professional Position ...................11

        C.      The Column and Correction Do Not Make an Actionable Statement of
                Fact As to Plaintiff's Motives .................................................15

III.    FALSE LIGHT INVASION OF PRIVACY CLAIM (CLAIM FOUR) MUST
        ALSO BE DISMISSED BECAUSE COLUMN DOES NOT PLACE PLAINTIFF
        IN A HIGHLY OFFENSIVE FALSE LIGHT ................................................17

IV.     PUBLIC DISCLOSURE OF PRIVATE FACTS CLAIM (CLAIM THREE)
        MUST ALSO BE DISMISSED..........................................................18

CONCLUSION....................................................................................................21

i

## TABLE OF AUTHORITIES

**Cases**

*Abadian v. Lee*, 117 F. Supp. 2d 481 (D. Md. 2000) .............................................................. 7, 14

*Albright v. Morton*, 321 F. Supp. 130 (D. Mass. 2004) ............................................................. 10

*Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433 (1982) ................................................................. 18

*Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180 (4th Cir. 1998) ................................................ 16

*Caudle v. Thomason*, 942 F. Supp. 635 (D.D.C. 1996) ............................................................. 7

*Chapin v. Knight-Ridder*, 993 F.2d 1087 (4th Cir. 1993) .................................................... 11, 14

*Coles v. Washington Free Weekly,* 881 F. Supp. 26 (D.D.C. 1995), *aff'd,* 88 F.3d 1278 (D. C. Cir. 1996) ........................................................................................................................... 6

*Community for Creative Non-Violence v. Pierce*, 814 F. 2d 663 (D.C. Cir. 1987) ...................... 7

*Dasey v. Anderson*, 304 F.3d 148 (1st Cir. 2002) ..................................................................... 20

*Doe v. U.S.*, 83 F. Supp. 2d 833 (S.D. Tex. 2000) ..................................................................... 19

*EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621 (D.C. Cir. 1997) .......................... 6

*Freedlander v. Edens Broad. Inc.*, 734 F. Supp. 221 (E.D. Va. 1990), *aff'd,* 923 F.2d 848 (4th Cir. 1991) ............................................................................................................................ 7

*Guilford Transportation Industries v. Wilner*, 760 A.2d 580 (D.C. 2000) ................................... 8

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984) ...................................................................... 8

*Immuno AG v. Moor-Jankowski*, 74 N.Y.2d 548 (N.Y. 1989) .................................................... 16

*Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir. 1986) ...................................................... 16

*Jenkins v. Snyder*, 2001 WL 755818 (E.D. Va. 2001) .............................................................. 15

*Kitt v. Capital Concerts, Inc.*, 742 A.2d 856 (D.C. 1999) .................................................... 17, 18

* *Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) .................................................................. passim

*Lane v. Random House, Inc.*, 985 F. Supp. 141 (D.D.C. 1995) ................................................ 17

*Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997) ........................................................................ 15

*Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) .......................................................... 17

*Macharia v. United States*, 334 F.3d 61 (D.C. Cir. 2003) .......................................................... 3

*Mencher v. Chesley*, 297 N.Y. 94 (1947) ................................................................................ 10

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990) ................................................................. 15

*Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994) ................................................. 16

*Neitzke v. Williams*, 490 U.S. 319 (1989) ................................................................................. 6

*Nix v. Hoke*, 139 F. Supp. 2d 125 (D.D.C. 2001) ..................................................................... 19

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) ................................................................ 15, 16

*Ostrzenski v. Seigel*, 3 F. Supp. 2d 648 (D. Md. 1998)................................................................. 18

*Polsby v. Spruill*, 25 Media L. Rep. 2259 (D.D.C. 1997)............................................................ 9, 17

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ........................................................ 15

*Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369 (N.Y. 1977) ............................................. 16

*Romaine v. Kallinger*, 109 N.J. 282 (N.J. 1988)........................................................................ 10

*Rose v. Daily Mirror, Inc.*, 284 N.Y. 335 (1941) ......................................................... 11

*Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305 (11th Cir. 2001) ................................. 7

*Shewmaker v. Minchew*, 504 F. Supp. 156 (D.D.C. 1980) ....................................................... 20

*Thomas v. Los Angeles Times Communications*, 189 F. Supp. 2d 1005 (C.D. Cal. 2002, *aff'd*, 30 Media L. Rep. (BNA) 2438, 2002 WL 31007420 (9th Cir. 2002), *cert. denied*, 537 U.S. 1172 (2003)....................................................................................................................... 13

*Van Buskirk v. New York Times Co.*, 325 F.3d 87 (2d Cir. 2003) .................................................. 7

*Washington Post Co. v. Keogh*, 365 F.2d 965 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967)........................................................................................................................... 6

* *Weyrich v. The New Republic*, 235 F.3d 617  (D.C. Cir. 2001).......................................... passim

* *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) .................................. passim

* *Wolf v. Regardie*, 553 A.2d 1213 (D.C. 1989) .................................................................. 19, 20

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 1, 21

**Other Authorities**

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure 2d* § 1357 ............... 6

Merriam-Webster's Collegiate Dictionary, 11th ed. (2003)...................................................... 9, 10

Restatement (Second) of Torts § 574........................................................................................ 9

Restatement (Second) of Torts § 625(d) ................................................................................. 19

Robert D. Sack, Sack on Defamation (3d ed. 2005)............................................................. 19, 20

W. Prosser, Handbook on the Law of Torts § 117 (4th ed. 1971) ............................................. 19

Authorities upon which we chiefly rely are marked with asterisks.

Defendant The Washington Newspaper Publishing Company, LLC, publisher of the Washington Examiner ("the Examiner") hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss Plaintiff Kathleen A. Benz's Complaint against the Examiner pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff, a 35-year-old assignment editor at CNN, seeks $30 million in compensatory and punitive damages claiming defamation and invasion of privacy for reporting that she "was linked romantically" with various single men. The threshold issue before the court presented by the Examiner's Motion to Dismiss is whether the column in suit is capable of a defamatory meaning, *i.e.*, the column's meaning must be "more than offensive or unpleasant," it "must" be language that "make[s] the plaintiff[s] appear 'odious, infamous or ridiculous.'" *Weyrich v. The New Republic*, 235 F.3d 617, 627 (D.C. Cir. 2001) (internal quotations and citation omitted). Even assuming, as Plaintiff alleges, she was falsely "linked" with regard to at least some of the men, dating between single adults can hardly rise to the level of an accusation of "odious, infamous or ridiculous" conduct. The fact that the men were rich, powerful or well-known, or even that one was a Republican donor and in the business of producing pornography, does not rise to the level necessary for defamatory meaning. While the column does not say she had sex with any of the men, even if it did, in this day and age, sex between consenting single adults is hardly "odious" (Point II.A.).

The further implication plaintiff seeks to draw from the text – that she somehow misused her position as a CNN assignment editor to improperly gain access to these men – cannot be reasonably understood from the text. In addition, the text does not endorse or adopt that

1

implication, an additional requirement plaintiff must meet at the outset in implication cases. *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990). At most the text suggests that her position put her in contact with the rich and powerful – again, hardly defamatory in 21st-Century Washington, D.C., where relationships between reporters and public officials are routine and respected. NBC reporter Andrea Mitchell and former Federal Reserve Chairman Alan Greenspan is but one example. (Point II.B.). Even if the implication could be sustained, speculation as to the plaintiff's motives in contacting or dating various men is a not an objectively verifiable statement of fact. (Point II.C.).

Similarly, the text cannot possibly meet the even higher threshold of "highly offensive," an element required to state a claim for false light invasion of privacy or a claim for intimate private facts (Points III and IV). In addition, Plaintiff cannot maintain an intimate private facts claim and, at the same time, contend that the allegations are false. The *sine qua non* of this claim is that the facts are intimate, private and true. As to the men Plaintiff says she did date, Plaintiff's intimate private facts claim fails because the true facts – dating – are not of the intimate nature the claim is meant to address. Nor were those facts private by the time the Examiner reported them, since as Plaintiff alleges in the Complaint, they had already been widely circulated on the Internet. (Point IV).

Accordingly, the Examiner's Motion to Dismiss should be granted and the complaint dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

The First Amended Complaint (Am. Compl.)[1] alleges:

---

[1] Plaintiff's First Amended Complaint was filed on October 20, 2005.

Plaintiff Kathleen Benz ("Benz" or "Plaintiff"), age 35, is an assignment editor at the Washington, D.C. office of the Cable News Network ("CNN"). Am. Compl. ¶ 6, 8.[2] Defendant John B. Bisney ("Bisney"), age 51, is a former CNN Radio correspondent and colleague of Benz. *Id.* ¶ 11, 13. Plaintiff first met Bisney in 1997, and they "developed a social friendship" in November 2002. *Id.* ¶¶ 15, 16. During the time of their "social friendship," Plaintiff "attended concerts, went out to dinner, and took vacations with" Bisney. *Id.* ¶ 18. During this time, Bisney provided money to Plaintiff, *id.* ¶ 55, and expressed his desire to have a romantic and sexual relationship with Plaintiff. *Id.* ¶ 56. Plaintiff's and Bisney's friendship ended in May 2005, after Plaintiff learned that Bisney had obtained access to her e-mail, established and maintained websites in Plaintiff's name, and posted personal and private information about Benz on the World Wide Web. *Id.* ¶ 17.[3]

In late 2004, Bisney allegedly sent Plaintiff an article stating that Plaintiff sought friendships with wealthy men, including Gary Williams, Mark Ein, Julian Epstein, Pete Sessions, Paul Bosserman, John Sunnunu, Sr., and John Daggitt. *Id.* ¶ 64, 65 and Exhibit 1. On or about July 19, 2005, a second article, "very close in content" to the first, was posted on various Internet sites, stating that Plaintiff was dating Mark Kulkis, president and CEO of Kick Ass pictures, a company that produces pornographic films. *Id.* ¶¶ 109, 110, 112 and Exhibit 6. The article stated that Plaintiff met Mr. Kulkis when she conducted an interview with him while he was in D.C. on business as an honorary chairman of the National Republican Congressional

---

[2] In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003).

[3] Plaintiff filed a complaint against Bisney in the Superior Court for the District of Columbia on June 1, 2005 and obtained a Temporary Restraining Order against Bisney on June 8, 2005. On July 11, 2005, Plaintiff and Bisney executed a "Binding Settlement Agreement and Release" regarding the D.C. Superior Court case. *Id.* ¶103-107 and Exhibits 3-5.

Committee's Business Advisory Council, a "roundtable of millionaire entrepreneurs." *Id.* at Exhibit 6. The article stated that Plaintiff "denies she's cozying up to Kulkis to get a scoop for CNN about the private lunch he and Carey had with White House Chief of Staff Karl Rove." *Id.* The article also stated that Plaintiff is a "Washington powerdater;" that she told her girlfriends, "Mark's a wonderful guy and I think this could be the real thing;" that Plaintiff is "known in Washington power circles" for dating numerous men, identifying them by name as Jonathan Ledecky and Gary Williams; and that Plaintiff "spent time" with Mel Karmazin "at his Hamptons house." *Id.* On or about July 31, 2005, additional men with whom Plaintiff allegedly had romantic involvement were added to the article, specifically Pete Sessions, John Sununu, Sr., and Mark Ein. *Id.* ¶ 113. In other postings on the World Wide Web, the names of John McDonough and Julian Epstein were added. *Id.* ¶ 115. Plaintiff admits having dated Gary Williams, Paul Bosserman, Julian Epstein, and John Daggitt, but denies dating or being "romantically or sexually involved" with any of the other men. None of the men are alleged to be married. *Id.* ¶¶ 66, 67, 111, 114. Plaintiff attributes these Internet articles to John Bisney. *Id.* ¶ 64, 109.

The Examiner publishes a thrice-weekly gossip column by Karen Feld entitled "The Buzz." Karen Feld's August 19, 2005 gossip column (the "Column") bore the headline "Controversial love for CNN producer" and contained the following item:

> CNN producer **Kathy Benz**, 35, uses her position to meet all the "right" people. She's been linked romantically with power players – including venture capitalist **Jonathan Ledecky** (a Washington Nationals ownership hopeful), University of Maryland basketball coach **Gary Williams**, Chicago Cubs VP **John McDonough**, Sirius CEO **Mel Karmazin**, actor **Hugh O'Brien**, CNN correspondent **John Bisney**, Georgetown hairstylist **Paul Bosserman** and her one-time fiance [sic], AOL millionaire **John Daggett**. Now, she has hooked up, according to her gal pals, with porn king **Mark Kulkis**. The couple first met when Kulkis, 40, president and CEO of Kick Ass Pictures, did a CNN interview while he was in D.C. for the National Republican Congressional Committee's

annual President's Dinner. He's the honorary chairman of the NRCC's Business Advisory Council. That's a roundtable of millionaire entrepreneurs. Kulkis made tabloid headlines when he escorted porn star **Mary Carey** to the GOP dinner with **President Bush** in June. At that time, he and Carey enjoyed a private lunch with White House insider **Karl Rove**. Wouldn't you have liked to have been a fly on that wall?

*Id.* at Exhibit 17.

After this action was filed, on September 30, 2005, the Examiner published in "The Buzz" column a correction of its previous article ("Correction"). *Id.* ¶ 180. The Correction stated:

Karen Feld's August 19, 2005 "Buzz" column discussed several contacts made by Kathy Benz, an assignment editor at CNN. The column said Ms. Benz had been linked romantically with nine men. We now believe we were the target of an Internet "spoofer" who used an email address that appeared to come from another news organization. Ms. Benz has filed a lawsuit against The Washington Examiner regarding this column; while we ordinarily would not comment on pending litigation, we have learned that Mark Kulkis was interviewed by Ms. Benz but they never had a relationship of any kind. In her complaint, Ms. Benz says that she dated Gary Williams, Paul Bosserman and John Daggett, but did not date the other men mentioned in the column. We regret the errors. We did not intend to suggest any improper relationship or misuse of her position at CNN and apologize to Ms. Benz for any offense taken.

In her Amended Complaint, Plaintiff brings three claims against the Examiner for the August 19, 2005 Column and September 30, 2005 Correction: for defamation (Claim One), invasion of privacy (public disclosure of private facts) (Claim Three), and false light invasion of privacy (Claim Four).[4]  *Id.* at ¶¶ 191-203, 209-231. For the reasons discussed below, these three claims against the Examiner must be dismissed for failure to state a claim upon which relief may be granted.

---

[4] Plaintiff does not allege – nor could she allege – that Karen Feld knew or spoke with Bisney in preparing her column. These claims are, however, brought against Bisney as well. Plaintiff also brings two additional claims against defendant Bisney only for invasion of privacy (intrusion upon seclusion) and intentional infliction of emotional distress.

**ARGUMENT**

**I.    MOTION TO DISMISS STANDARD**

The purpose of Fed. R. Civ. P. 12(b)(6) is to permit the Court to terminate lawsuits that

are fatally flawed in their legal premises and thus to spare the litigants the burdens of

unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  In the

context of a complaint alleging defamation, due to the significant First Amendment concerns at

stake, the 12(b)(6) standard is applied with particular care. *See, e.g., Coles v. Washington Free*

*Weekly,* 881 F. Supp. 26, 30 (D.D.C. 1995) ("Given the threat to the first amendment posed by

nonmeritorious defamation actions, it is particularly appropriate for courts to scrutinize such

actions at an early stage of the proceedings to determine whether dismissal is warranted"), *aff'd,*

88 F.3d 1278 (D. C. Cir. 1996) (citing *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C.

Cir. 1966) ("In the First Amendment area, summary procedures are … essential.  For the stake

here, if harassment succeeds, is free debate."), *cert. denied,* 385 U.S. 1011 (1967)); *see also* 5B

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure 2d* § 1357 ("When the

claim alleged is a traditionally disfavored "cause of action," such as … libel, or slander, the

courts [tend] to construe the complaint by a somewhat stricter standard and [are] more inclined

to grant a Rule 12(b)(6) motion to dismiss").

Because the Column is referred to in the Amended Complaint, and attached to it as an

exhibit, this court should and must consider the nature and content of the Column in deciding

this Motion. *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997)

(in deciding a 12(b)(6) motion to dismiss, court will consider facts alleged in the pleadings and

documents attached as exhibits or incorporated by reference in the pleadings).

## II.    DEFAMATION CLAIM (CLAIM ONE) MUST BE DISMISSED

### A.    No Reasonable Reader Could Construe the Column as Containing Defamatory Meaning

It is for this court to determine, as a preliminary matter, whether the Column is reasonably capable of conveying a defamatory meaning. *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) ("Whether a statement is capable of a defamatory meaning is a question of law"); *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) ("whether a statement is capable of having a defamatory meaning is a legal question").[5]  A publication is defamatory if it tends to injure the plaintiff in her trade, profession, or community standing, or lower her in the estimation of the community. *Caudle v. Thomason*, 942 F. Supp. 635, 638-39 (D.D.C. 1996) (citations omitted).  An "allegedly defamatory remark must be more than offensive or unpleasant; the language must make the plaintiff appear 'odious, infamous, or ridiculous.' " *Klayman*, 783 A.2d at 613 (quoting *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984)); *see also Weyrich*, 235 F.3d 617 at 627-28 (D.C. Cir. 2001) (same).

---

[5] Accordingly, Courts routinely grant early motions to dismiss on the basis that the challenged statements are incapable of conveying a defamatory meaning. *See, e.g., Van Buskirk v. New York Times Co.*, 325 F.3d 87 (2d Cir. 2003) (district court properly dismissed libel action because news article at issue did not convey the defamatory meaning suggested by plaintiff, that plaintiff had committed a war crime); *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305 (11th Cir. 2001) (dismissal affirmed where true statements regarding gold refinery's owner could not reasonably be read to imply a defamatory meaning); *Abadian v. Lee*, 117 F. Supp. 2d 481, 488 (D. Md. 2000) (granting 12(b)(6) motion to dismiss where article, which included materially true statements from plaintiff but chose not to include one of plaintiff's other statements, was not capable of a defamatory meaning); *Freedlander v. Edens Broad. Inc.*, 734 F. Supp. 221, 228 (E.D. Va. 1990) (granting 12(b)(6) motion to dismiss where a reasonable listener would not have found a humorous song to be defamatory), *aff'd*, 923 F.2d 848 (4th Cir. 1991); *Community for Creative Non-Violence v. Pierce*, 814 F. 2d 663, 671 (D.C. Cir. 1987) ("Because we find that nothing in the Report is capable of bearing a defamatory meaning, we dismiss appellants' libel claim for failure to state a claim upon which relief may be granted."); *Klayman v. Segal*, 783 A.2d 607, 618 (D.C. 2001) (affirming decision of trial court which dismissed defamation claim for failure to state a claim, because the "words are not reasonably capable of defamatory meaning as a matter of law").

The plaintiff has the burden of proving the defamatory nature of the challenged publication and the "publication must be considered as a whole in the sense in which it would be understood by the readers to whom it was addressed." *Klayman*, 783 A.2d at 613 (quoting *Best*, 484 A.2d at 989). The court should not "indulge far-fetched interpretations of the challenged publication." *Guilford Transportation Industries v. Wilner*, 760 A.2d 580, 594 (D.C. 2000). The statements in the Column "should not be interpreted by extremes, but should be construed as the average or common mind would naturally understand them." *Id.* The mere fact that a statement is allegedly false does not mean that it is defamatory – the statement must <u>also</u> be capable of conveying a defamatory meaning. *See Klayman*, 783 A.2d at 613.

Plaintiff alleges that the statements made in the Column are "defamatory" and "defamatory *per se*." Am. Complaint ¶¶ 184-185. She specifically complains of the following statements made in the Column:

> In the *Examiner* Article, defendant The Washington Newspaper Publishing Company, LLC accused plaintiff, Kathleen A. Benz, of "us[ing] her position to meet all the 'right' people," and being romantically linked to several named "power players," including Jonathan Ledecky, Gary Williams, John McDonough, Mel Karmazin, Hugh O'Brien, John Bisney, Paul Bosserman, and John Daggitt, who was described as Ms. Benz' "one-time fiance (*sic*)."

> In the *Examiner* Article, defendant The Washington Newspaper Publishing Company, LLC alleged that according to the "gal pals" of plaintiff, Kathleen A. Benz, Ms. Benz has "hooked up … with porn king Mark Kulkis" and implied that she had done so for the purpose of obtaining information about a lunch Kulkis had with Karl Rove, an adviser to President George W. Bush.

Am. Complaint ¶¶ 163-164.

There is nothing defamatory about a statement that a single woman has been "linked romantically" with a single man. As an initial matter, the phrase "linked romantically" merely suggests that Plaintiff has been socially "linked," or connected, with certain men by others, in this case, in Internet articles, not by the author of the Column. Further, a "romance" or a

8

"romantic" relationship is defined as a "love affair." Merriam-Webster's Collegiate Dictionary, 11th ed. (2003), p. 1081. Plaintiff is a 35-year-old single woman who, by her own admission, has "dated" three of the men named in the Column. Am. Complaint ¶ 66. A statement that she is rumored to have had a romantic relationship with other men as well (even if the statement is false) is not defamatory, as no reasonable reader would find that the statement injured Plaintiff in her profession or made her appear "odious." *See, e.g., Polsby v. Spruill*, 25 Media L. Rep. 2259, 2267 (D.D.C. 1997) (assuming that novel is about plaintiff's life, the plot point that protagonist had a romantic relationship with a single man, a former patient, is not defamatory).

Only allegations or implications of "serious sexual misconduct" may give rise to defamatory meaning. *See* Restatement (Second) of Torts § 574 ("One who publishes a slander that imputes serious sexual misconduct to another is subject to liability without proof of special harm.") (emphasis added). However, the phrase "linked romantically" does not support an inference that Plaintiff had sexual intercourse with these men, let alone an accusation that Plaintiff engaged in "serious sexual misconduct." Nowhere does the Column state or imply that Ms. Benz was engaged in any sexual "misconduct" such as an extramarital affair (she is not married, nor does the Column or the Complaint state or imply that any of the named men are married). Even if the Column did allege that Plaintiff engaged in sexual intercourse with a man with whom she was romantically involved, such an allegation of sex between two consenting adults in 2005 in the major metropolitan area of Washington, D.C. cannot be considered so egregious as to make one of those consenting adults appear "odious, infamous, or ridiculous." Courts regularly adjust the threshold of defamatory meaning to keep pace with contemporary mores. "Whether language has that tendency [to be defamatory] depends, among other factors, upon the temper of the times [and] the current of contemporary public opinion." *Mencher v.*

*Chesley*, 297 N.Y. 94, 100 (1947). *See Albright v. Morton*, 321 F. Supp. 2d 130, 136-9 & n.7 (D. Mass. 2004) (accusation of "private, consensual" homosexual conduct between adults is not defamatory *per se*, noting that, although courts in the past have held that an accusation of homosexuality is defamatory per se, "… in this day and age, I cannot conclude that identifying someone as a homosexual discredits him … .").

Plaintiff also objects to the Column's statement that she has "hooked up … with porn king Mark Kulkis." Again, Mr. Kulkis is a single man and Plaintiff is a single woman. A statement that they have "hooked up" – *i.e.*, that they have met on a social basis[6] – is not capable of a defamatory meaning, as it does not allege "serious sexual misconduct." Mr. Kulkis' status as a "porn king" does not change the analysis that the statement is not capable of a defamatory meaning. Mr. Kulkis is called a "porn king" in the Column because he is the president of a company that produces legal pornography. Nowhere does the Column state or imply that Plaintiff is involved in pornography – she met him doing an interview for CNN. Nor would any social involvement with Mr. Kulkis suggest to a reasonable reader her involvement in his business. *See, e.g., Romaine v. Kallinger*, 109 N.J. 282, 289 (N.J. 1988) (where, at most, "the sentence can be read to imply that the plaintiff knew a junkie," statement not capable of defamatory meaning, because "the mere allegation that plaintiff knows a criminal is not defamatory as a matter of law"); *Rose v. Daily Mirror, Inc.*, 284 N.Y. 335, 337 (1941) (plaintiffs not defamed by mistakenly being described as the widow and children of a mobster). The

---

[6] To "hook up" means "to become associated especially in a working or social relationship." Merriam-Webster's Collegiate Dictionary, 11th ed. (2003), p. 598. Even as contemporary slang, "hooking up" can mean everything from a kiss to sexual intercourse, none of which is defamatory as between two consenting single adults. *See* http://www.urbandictionary.com/define.php?term=hook+up (visited Nov. 2, 2005) (slang definitions include "to make out with someone," "to have sex with someone," and to "get together with someone (as a date).").

professions of the other men with whom Plaintiff was said to have been romantically involved (venture capitalist, basketball coach, actor, etc.) were given in the Column, and no reasonable reader would think that Plaintiff was involved, for example, in the basketball industry merely because she once dated Terps coach Gary Williams. In any case, the Column goes on to state that Mr. Kulkis is a "millionaire entrepreneur," an "honorary chairman" of the National Republican Congressional Committee's Business Advisory Council, and had attended a dinner with President Bush and lunch with Deputy Chief of Staff Karl Rove – being publicly associated with Mark Kulkis was apparently <u>not</u> "odious" as far as the White House was concerned.

### B. Column and Correction Not Capable of Bearing Implied Defamatory Meaning That Plaintiff Misused Her Professional Position

Defamation-by-implication "stems not from what is literally stated, but from what is implied." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). However, the D.C. and other Circuits have cautioned that: "[i]n entertaining claims of defamation by implication, courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *Id.* at 519. *Accord Chapin v. Knight-Ridder*, 993 F.2d 1087, 1092-93 (4th Cir. 1993) (language must be "reasonably read to impart the false innuendo").

Plaintiff contends that the Column and the Correction implied that Plaintiff misused her position at CNN to obtain dates. The plain meaning of the statement that Plaintiff "uses her position" to meet the "right people" is that Plaintiff is a CNN producer who, by definition, must "use her position" as a CNN producer to meet the "right" people – *i.e.*, those in a position to supply her with information for interviews – exactly what a journalist doing her job should do. Alternatively, it could be interpreted to mean that Plaintiff has met men through her position at CNN whom she later has seen on a social basis – hardly a statement that would damage her

11

reputation or make others consider her "odious, infamous, or ridiculous." In Washington, D.C.,

journalists often socialize with politicians, businesspeople and local celebrities whom they might

have met through their work. The ultimate "power couple," in Washington, NBC's Andrea

Mitchell and the Federal Reserve's Chairman Alan Greenspan, is an oft-cited example. CNN's

award-winning Chief International Correspondent, Christiane Amanpour, married James Rubin,

who had been the spokesman for the State Department. *New York Times* White House

correspondent Todd Purdum married former Clinton press secretary Dee Dee Myers. In

California, NBC's Maria Shriver and her husband, movie star turned California Governor Arnold

Schwarzenegger are the most prominent "power couple." Given this common fraternization

among journalists and subjects, a statement that Plaintiff later socialized with a subject of one of

her news reports is not capable of injuring Plaintiff in her profession.

In her Amended Complaint, Plaintiff alleges that the Correction "again published the

false and defamatory allegation" that Plaintiff "used her position at CNN to obtain romantic

relationships with 'Gary Williams, Paul Bosserman and John Daggett.'" Complaint ¶ 180. But

Plaintiff only partially quotes the Correction and the language she quotes underscores how

strained the implication is. She derives the allegation of misuse of her position from the

Correction's language that the original Column "discussed several contacts made by Kathy Benz,

an assignment editor at CNN" – a factually accurate, totally neutral reference to the original

story. What Plaintiff omits is the Correction's express disavowal of the implication Plaintiff

urges: "We did not intend to suggest any improper relationship or misuse of her position at

CNN." Thus, even if the language of the Correction could be construed – and it cannot – to

support the implication of misuse of her position, the express disavowal conclusively negates

that implication. *See White*, 909 F.2d at 526 (although defendant "reported true facts from which

a reader might infer that [plaintiff] used drugs," libel claim was dismissed because it would not

be "reasonable for a reader to conclude that [defendant] intended the defamatory inference");

*Thomas v. Los Angeles Times Communications*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002)

(although reasonable reader might infer that plaintiff had lied, libel claim was dismissed because

"no reasonable juror could find that Defendants intended to convey that impression"), *aff'd,* 30

Media L. Rep. (BNA) 2438, 2002 WL 31007420 (9th Cir. 2002), *cert. denied*, 537 U.S. 1172

(2003).

Plaintiff also contends that the Column's statement that she has "hooked up … with porn

king Mark Kulkis" implied that she had done so for the purpose of obtaining information about a

lunch Kulkis had with Karl Rove, an adviser to President George W. Bush.  Am. Compl. ¶ 164.

However, the Column is not capable of the defamatory implication Plaintiff urges, as the Column

merely states that Plaintiff and Mr. Kulkis first met when Plaintiff interviewed him for CNN and

then goes on to describe Mr. Kulkis' involvement with the National Republican Congressional

Committee, ending with the wholly innocuous statement, "Wouldn't you have liked to be a fly

on that wall?" in reference to a lunch Mr. Kulkis attended with Karl Rove.  Simply stating that

Plaintiff met Mr. Kulkis while interviewing him for CNN does not support a meaning that she

had a relationship with him in order to obtain information about a lunch with Karl Rove. [7]

Plaintiff's attempt to coax out of the language of the Column and Correction the

implication she urges is much like the strained meaning urged and rejected in *Klayman v. Segal*,

783 A.2d 607.  In that case, Larry Klayman, then head of conservative advocacy group Judicial

Watch, argued that the article's speculation, "If there were a school shooting, he'd say 'So what?

_____

[7] Plaintiff might be confusing the Column with one of the Internet articles.  *See* Am. Complaint at Exhibits 11, 12 ("Benz denies she's cozying up to Kulkis to get a scoop for CNN about the private lunch he and Carey had with White House Chief of Staff Karl Rove.")  No such statement about a "scoop for CNN" appeared in the Examiner Column.

We're doing important things around here,'" accused him of insensitivity to the murder of children.  Affirming the grant of The Washington Post's Motion to Dismiss, the District of Columbia Court of Appeals held that the article "centered on Klayman's 'drive for publicity'" and could "not be reasonably read to accuse him of insensitivity to tragic events of the day, including the murder of innocent children."  While being accused of being a publicity hound – just like being a "power dater" here – "could perhaps be viewed as unpleasant and offensive from Mr. Klayman's perspective,  . . . such perceived unpleasantness and offensiveness are not sufficient to sustain an allegation that material is reasonably capable of a defamatory meaning." *Klayman*, 783 A.2d at 618.

Plaintiff's implication claim also fails to meet an additional requirement: in order for Plaintiff to prevail on a defamation by implication claim, the Column "by the particular manner or language" must also supply "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that meaning."  *White*, 909 F.2d at 520 (emphasis in original).  Plaintiff has pointed to no such evidence in the Column or the Correction that such an implication was intended or endorsed by the Examiner – none exists.  *See, e.g., White*, 909 F.2d at 520 (communication must supply "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference") (emphasis in original); *Chapin*, 993 F.2d at 1093 ("the language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference"); *Abadian v. Lee*, 117 F. Supp. 2d 481, 488 (D. Md. 2000) (granting motion to dismiss defamation claim where author wrote nothing to suggest, "let alone intend or endorse," the alleged defamatory meaning).

14

**C.    The Column and Correction Do Not Make an Actionable Statement of Fact As to Plaintiff's Motives**

Even if the Column's statement that Plaintiff "uses her position to meet all the 'right' people" were capable of a defamatory implication and that implication was endorsed by the Column – neither of which is the case here – the claim would still fail, because a defamation claim can only be based on statements of objective fact, and cannot be based merely on an expression of opinion.   The First Amendment to the United States Constitution holds that statements that do not "contain a provably false factual connotation" are not actionable. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990); *see also White*, 909 F.2d at 522 ("the question is whether the person has made an assertion that can reasonably be understood as implying provable facts").   Whether this statement in issue is fact or opinion is a threshold question of law for the Court and is a routine basis for a pre-discovery dismissal based on an examination of the entire text and its context.  *E.g.*, *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) (affirming 12(b)(6) dismissal of defamation case because letter suggesting attorney was "attempting to extort money" was protected opinion); *Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997) (affirming 12(b)(6) dismissal of defamation action because statements charging plaintiff with cowardice and involvement in deaths of two victims were protected opinion); *Jenkins v. Snyder*, 2001 WL 755818 (E.D. Va. 2001) (granting 12(b)(6) motion to dismiss because statements that groundskeepers were "trying to kill the players with their crappy fields" are non-actionable opinions).   In making this determination, courts look to the language, the whole article, the context and tone.  *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984) (emphasizing consideration of the "the broader context or setting in which the statement appears," for "[d]ifferent types of writing have … widely varying social conventions which signal to the reader the likelihood of a statement's being either fact or opinion").

Speculation as to motive – here, Plaintiff's motives in contacting or dating certain men – is not a statement of objective fact capable of being proven true or false. *See, e.g., Weyrich v. New Republic, Inc.*, 235 F.3d at 625 (affirming in part grant of motion to dismiss, holding that statement that plaintiff "suffered bouts of . . . paranoia" while "certainly perjorative," was "neither verifiable nor does it imply specific defamatory facts about plaintiff"); *Immuno AG v. Moor-Jankowski*, 74 N.Y.2d 548 (N.Y. 1989) ("Speculations as to the motivations ... of proposed conduct generally are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel") (citing *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369 (N.Y. 1977)). *Cf. Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1304 (8th Cir. 1986) ("the singling out of impermissible motive is a subtle and slippery enterprise").

The context and tone here – a gossip item – make it even less likely that the reference would be understood as making a serious allegation of unprofessional conduct. *See, e.g., Moldea v. New York Times Co.*, 22 F.3d 310, 315 (D.C. Cir. 1994) (emphasizing that allegedly defamatory statements appeared in the context of a book review column, where readers expect reviewer to express opinions); *Ollman*, 750 F.2d at 985 (the fact that the column was on Op-Ed page suggests that statements would be understood by reasonable reader as opinion). A gossip column entitled "The Buzz" in which the columnist writes breathlessly about social events and Washington celebrities, with prominent names in boldface, hardly suggests serious investigative journalism of the kind that would seek to expose professional misconduct on the part of journalists. *See, e.g., Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) ("breezy" tone of article suggests that it reflects writer's subjective opinion).

### III.  FALSE LIGHT INVASION OF PRIVACY CLAIM (CLAIM FOUR) MUST ALSO BE DISMISSED BECAUSE COLUMN DOES NOT PLACE PLAINTIFF IN A HIGHLY OFFENSIVE FALSE LIGHT

When reviewing a 12(b)(6) motion to dismiss a false light invasion of privacy claim, the court must "satisfy itself that the statement does not arguably place [plaintiff] in 'highly offensive' false light." *Weyrich v. New Republic, Inc.*, 235 F.3d at 628.  In this case, the claim of false light invasion of privacy must be dismissed because the statements in the Column, even if false, would not be "highly offensive to a reasonable person." *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 40 (D.D.C. 2002) (citing *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999)). The "standard is an objective one, based upon the reaction that a reasonable person would have if he or she were the subject" of the Column. *Lane v. Random House, Inc.*, 985 F. Supp. 141, 148 (D.D.C. 1995) (citation omitted).  Plaintiff "may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion." *Klayman v. Segal*, 783 A.2d at 619 (affirming trial court's 12(b)(6) dismissal of false light claim "for the same reasons" it affirmed dismissal of defamation claim; namely, that statement did not make plaintiff appear "odious, infamous, or ridiculous").  In order to sustain a false light claim, the Column must accuse Plaintiff of "repugnant conduct." *Lane*, 985 F. Supp. at 148.

Courts have routinely dismissed false light cases because the statements in question did not satisfy the "highly offensive to a reasonable person" requirement of D.C. law. *See, e.g., id.*, 985 F. Supp. at 149 (dismissing false light claim because statement which plaintiff claimed suggested "that he has been intellectually dishonest with the American people" did not "objectively cross the 'highly offensive' threshold"); *Polsby v. Spruill*, 25 Media L. Rep. 2259 (D.D.C. 1997) (dismissing privacy counts in case where plaintiff alleged her life was basis for novel and the protagonist engaged in activities including an unethical doctor/patient relationship

because "[i]t is clear that none of these activities would be highly offensive to a reasonable person."); *Ostrzenski v. Seigel*, 3 F. Supp. 2d 648, 653 (D. Md. 1998) (granting 12(b)(6) motion to dismiss in case because "Plaintiff can prove no set of facts that would satisfy false light's requirement of a highly offensive falsehood"); *Klayman*, 783 A.2d at 619 (statement about being publicity driven "did not place Mr. Klayman in 'highly offensive' false light"); *Kitt*, 742 A.2d at 860 (dismissing false light claim in case where plaintiff alleged that actor portraying him did a "flawed impersonation," because the "facts alleged by [plaintiff] are insufficient to satisfy the 'highly offensive to a reasonable person' requirement"); *see also Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433, 442 (1982) (affirming dismissal of false light claim for failure to state a claim in case where plaintiff's picture (a black man in a suit crossing the street) was used without his permission to illustrate story about black middle class abandoning their roots because "by no means does this case measure up" to a "highly offensive level").

Plaintiff's claim for false light invasion of privacy must be dismissed because the statements complained of do not accuse her of "repugnant conduct," nor are they "highly offensive." For the same reasons they are not capable of a defamatory meaning, statements that Plaintiff was "romantically linked" with several men, including a social or even sexual friendship with Mr. Kulkis, and that she met the men through her job are no more "highly offensive" than they are "odious, infamous, or ridiculous."

## IV.     PUBLIC DISCLOSURE OF PRIVATE FACTS CLAIM (CLAIM THREE) MUST ALSO BE DISMISSED

Finally, the claim of public disclosure of private facts must be dismissed with regard to the statements about Plaintiff because the statements in the Column do not satisfy the required elements for a claim of publication of private facts; namely, "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts, (4) in which the public has no legitimate concern, and (5)

which would be highly offensive to a reasonable person of ordinary sensibilities." *Nix v. Hoke*, 139 F. Supp. 2d 125, 134 n.8 (D.D.C. 2001) (citing *Wolf v. Regardie*, 553 A.2d 1213, 1220 (D.C. 1989)).

First, with regard to the facts which Plaintiff maintains are false, Plaintiff cannot bring a private facts invasion of privacy claim. The *sine qua non* of this claim is that the facts are intimate, private and true. *See* Restatement (Second) of Torts § 625(d) (publicity given to private life claim involves "damages for publicity given to true statements of fact") (emphasis added); Robert D. Sack, Sack on Defamation § 12.4.1 (3d ed. 2005) ("unwarranted publication of the truth is the gravamen of the [private facts invasion of privacy] tort") (emphasis added); *Doe v. U.S.*, 83 F. Supp. 2d 833, 842 (S.D. Tex. 2000) (private facts tort is "designed to redress reputational injuries made all the more painful because the public revelations about deeply private and intimate matters are undeniably true").

Second, the claim must be dismissed because the only statements in the Column which Plaintiff contends are true – namely, that Plaintiff dated Gary Williams, Paul Bosserman, and John Daggitt – are not "highly offensive to a reasonable person of ordinary sensibilities." *Wolf*, 553 A.2d at 1220. "Anyone who is not a hermit must accept the more or less casual observation of his neighbors and the passing public as to what he is and does, and some reporting of his daily activities." *Wolf*, 553 A.2d at 1220 n. 12 (citing W. Prosser, Handbook on the Law of Torts § 117, at 811-12 (4th ed. 1971)). Plaintiff is hardly a hermit – she has admitted dating three of the prominent men named in the Column. Am. Complaint ¶ 66. She is a 35-year-old journalist working in a major metropolitan area. A statement that Plaintiff, a journalist, was "romantically linked" with several prominent men cannot be held to be "highly offensive" to a professional single woman in Washington, D.C. in 2005. *See* Restatement (Second) of Torts § 652(d) cmt c

("The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens."). For the same reasons that the claims of defamation and false light must be dismissed, the private facts claim must be dismissed because the statements in the Column are not "highly offensive to a reasonable person."

Third, Plaintiff's private facts claim also fails because the facts here – dating – are not of the "intimate" nature the claim is meant to address. *See Shewmaker v. Minchew*, 504 F. Supp. 156, 163 (D.D.C. 1980) (invasion of privacy tort is meant to protect "private, intimate affairs"); *Dasey v. Anderson*, 304 F.3d 148, 154 (1st Cir. 2002) (allegedly private facts must be of a "personal or intimate nature"). Because the fact that Plaintiff dated these three men cannot be considered a "private fact," the claim must be dismissed on that basis. *See Wolf*, 553 A.2d at 1221 (dismissing private facts claim where "none of the facts at issue in either of the [defendant's] articles can be termed private").

Fourth, the allegedly "private facts" were not private by the time the Examiner reported them, since as Plaintiff alleges in the Amended Complaint, they had been widely circulated on the Internet. Am. Compl. ¶¶ 65, 112, 120, 132, 133. *See* Robert D. Sack, Sack on Defamation § 12.4.4 (3d ed. 2005) (no claim where "the facts in question were already known in the community" and "the facts were on the public record"); Restatement (Second) of Torts § 652(d) cmt c ("merely giving further publicity to information about the plaintiff which is already public" does not support a claim); *Wolf*, 553 A.2d at 1221 ("it is widely recognized that the interests in privacy fade when the information published already appears on the public record") (citations and internal quotations omitted).

20

Therefore, because the true facts in the Column are neither private, intimate, nor highly offensive, the claim for publication of private facts must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the court grant its motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6), and dismiss the Complaint with prejudice against Defendant The Washington Newspaper Publishing Company, LLC.

Dated this 8th day of November, 2005.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _____
Laura R. Handman (D.C. Bar No. 444386)
Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

Attorneys for Defendant The Washington
Newspaper Publishing Company, LLC

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 8, 2005, I caused the foregoing to be served

electronically on counsel of record by the U.S. District Court for the District of Columbia

Electronic Document Filing System (ECF).


Amber L. Husbands
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600

1