IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KATHLEEN A. BENZ | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05cv1760 (EGS) |
| | ) | |
| THE WASHINGTON NEWSPAPER | ) | |
| PUBLISHING COMPANY, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN F. BISNEY | ) | |
| | ) | |
| Defendants. | ) | |

### MOTION OF DEFENDANT JOHN F. BISNEY
### TO DISMISS CLAIMS ONE, TWO, THREE, AND
### FOUR OF THE COMPLAINT

Defendant John F. Bisney moves this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Claims One, Two, Three, and Four of the Complaint for failure to state a claim upon which relief can be granted. Defendant is filing a Memorandum of Points and Authorities in Support of Motion of Defendant John F. Bisney to Dismiss Claims One, Two, Three, and Four of the Complaint along with this Motion.

        Respectfully submitted,

        */s/ Larry S. Gondelman*
        Larry S. Gondelman (D.C. Bar No. 950691)
        1875 Eye Street, NW
        12th Floor
        Washington, DC 20006
        202.466.6550
        202.785.1756 (fax)
        larry.gondelman@ppsv.com

        Counsel for Defendant John F. Bisney

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served electronically, by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF), this the 8th day of November, 2005, upon the following:

    William Alden McDaniel, Jr.
    LAW OFFICES OF WILLIAM ALDEN MCDANIEL, JR.
    118 W. Mulberry Street
    Baltimore, MD 21201
    Counsel for Plaintiff Kathleen A. Benz

    Laura R. Handman
    DAVIS WRIGHT TREMAINE LLP
    1500 K Street, N.W., Suite 450
    Washington, D.C. 20005
    Counsel for Defendant The Washington Newspaper
    Publishing Company, LLC

        */s/ Larry S. Gondelman*
        Larry S. Gondelman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHLEEN A. BENZ )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>THE WASHINGTON NEWSPAPER )<br>PUBLISHING COMPANY, LLC )<br>)<br>and )<br>)<br>JOHN F. BISNEY )<br>)<br>Defendants. )<br>_____) | Civil Action No. 1:05cv1760 (EGS) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT JOHN F. BISNEY TO DISMISS CLAIMS ONE, TWO, THREE, AND <u>FOUR OF THE COMPLAINT</u>

Defendant John F. Bisney submits this Memorandum in support of his Motion to Dismiss four of the five claims asserted in Plaintiff's Amended Complaint—Claim One: Defamation; Claim Two: Invasion of Privacy, Intrusion upon Seclusion; Claim Three: Invasion of Privacy, Public Disclosure of Private Facts; and Claim Four: False Light Invasion of Privacy.[1] All four of these claims fail to state a claim upon which relief can be granted and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Defendant is not moving at this time to dismiss Claim Five: Intentional Infliction of Emotional Distress.

Plaintiff's claims are based on a series of alleged actions by Defendant beginning in or about March 2004 and continuing through the present. According to the Complaint,

---

[1] Plaintiff's Complaint also contains a separate claim for injunctive relief. The parties have already consented to a Preliminary Injunction.

1

Plaintiff and Defendant have been friends since at least November 2002. They both worked at CNN. Although Defendant made it clear to Plaintiff that he desired a relationship beyond mere friendship, Plaintiff alleges that she rebuffed any efforts by Defendant in this regard. Plaintiff admits in her Complaint that she lived beyond her means (¶ 48) and that during the course of their friendship, Defendant bought Plaintiff many gifts, provided her with money, and took her on expensive vacations.

The relationship came to an end after Plaintiff and Defendant took a week-long vacation together in Puerto Rico. Upon her return, Plaintiff alleges that she learned that Defendant had established two websites that used her name in the web address. Ultimately, on or about June 1, 2005, Plaintiff filed a complaint against Defendant in Superior Court in the District of Columbia ("Superior Court Complaint"). That Complaint sought a Civil Protective Order and Injunctive Relief. Virtually all of the allegations of the Superior Court Complaint are realleged in the instant Complaint. The allegations involved:

1. the creation by Defendant of several websites utilizing Plaintiff's name (i.e. www.kathy-benz.net and www.kathy-benz.com);[2]

2. approaching and staring at Plaintiff at an event that both Plaintiff and Defendant attended for work;[3] and

3. leaving a birthday card for her at her building.[4]

On June 8, 2005, Judge Henry F. Greene of the Superior Court of the District of Columbia entered a Temporary Restraining Order enjoining Defendant "from creating or

---

[2] This allegation is contained in ¶ 5-8, 10 and 12 of the June 1, 2005 Complaint and ¶ 69-80 and 84-94 of the instant Complaint.
[3] This allegation is contained in ¶ 11 of the June 1, 2005 Complaint and ¶ 82 of the instant Complaint.
[4] This allegation is contained in ¶ 15 of the June 1, 2005 Complaint and ¶ 102 of the instant Complaint.

2

maintaining, directly or through a third party, any Internet website referring in any way to plaintiff" and from blogging or participating in any Internet chat rooms regarding plaintiff. The Temporary Restraining Order expired by its own terms on June 18, 2005. Plaintiff made no attempt to renew the TRO and no preliminary or other injunction was issued. Instead, the parties entered into a settlement on July 11, 2005 by which they mutually released one another from all claims of any nature that they had or may have had against each other through the date of the agreement. In that agreement, Plaintiff acknowledged that "there was nothing tortious or illegal with the use of Plaintiff's name in domain names created and maintained by Defendant."[5]

CNN fired the Defendant, based largely on the information furnished to CNN by Plaintiff.

The essence of Plaintiff's present complaint is that Defendant "has engaged in a campaign of harassment, identity-theft, Internet stalking, and defamation to destroy the health, reputation, and well-being of plaintiff." (Complaint, ¶ 108). The actions involve the publication of an allegedly defamatory article about Plaintiff on various websites and in the Washington Examiner, the direction of various people to those websites, and the impersonation of Plaintiff by responding to various sexual ads on the Internet.

However, the first four causes of action alleged in the Complaint fail to state a cause of action upon which relief can be granted. Therefore, Claims One, Two, Three, and Four must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[5] This admission in essence conceded that there was no basis for that part of the TRO that enjoined Defendant from maintaining a website referring to Plaintiff. The portion of the TRO that enjoined Defendant from "blogging" or participating in chat rooms regarding Plaintiff was a blatant infringement on Defendant's First Amendment rights.

3

### I.  Motion to Dismiss Claim One: Defamation for Failure to State a Claim on Which Relief Can Be Granted

The Defendant Washington Newspaper Publishing Company, LLC ("The Washington Examiner") has filed a motion to dismiss the defamation claim. That motion explains why the article published by the Washington Examiner is not defamatory. Defendant Bisney adopts that motion and incorporates it herein.

Prior to the publication of the article in the Washington Examiner, a somewhat similar article appeared on a number websites. With one exception, the Internet articles were virtually the same on all of the websites. They contained the following statements:

1. Mark Kulkis, described as an "X-rated video mogul," has found a new love interest, Kathy Benz.

2. Kathy Benz is a "Washington powerdater."

3. Mr. Kulkis and Ms.Benz met during an interview while Mr. Kulkis was in Washington for the national Republican Congressional Committee's annual President's dinner.

4. Ms. Benz denies she's cozying up to Mr. Kulkis to get a scoop for CNN about a private lunch that Mr. Kulkis had with Karl Rove.

5. Ms. Benz has told girlfriends that "Mark's a wonderful guy and I think this could be the real thing."

6. Ms. Benz is known in Washington power circles for dating figures such as Jonathan Ledecky and Gary Williams.

7. Ms. Benz spent time last August with Mel Karmazin at his Hamptons home.

8.  Ms. Benz' regular companions include Rep. Pete Sessions, John Sununu, Sr., Mark Ein, John McDonough and Julien Epstein.

9.  Ms. Benz was engaged to John Daggett.

As noted in the motion of the Washington Examiner, defamation claims must be carefully scrutinized at the outset of the case to ensure that protected speech is not inhibited. *See, e.g. Coles v. Washington Free Weekly*, 881 F. Supp. 26, 30 (D.D.C. 1995). When confronted with a defamation claim, the Court must determine, **as a matter of law,** whether the statements at issue are reasonably capable of a defamatory meaning. *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001). The standard against which the statement must be measured is whether it makes the plaintiff appear "odious, infamous, or ridiculous." *Klayman v. Segal*, 783 A.2d 607, 618 (D.C. 2001).

By any reasonable interpretation, none of the nine statements listed above make plaintiff appear "odious, infamous, or ridiculous." The first statement, in fact, only mentions Plaintiff as a "new love interest" of Mr. Kulkis. This hardly rises to the level of defamation, even if Mr. Kulkis is an "X-rated video mogul." Similarly, the description of Plaintiff as a "powerdater" falls far short of the level of outrageousness required to support a claim of defamation.

The third statement, that Kulkis and Plaintiff met during an interview, is true and therefore cannot be defamatory.

The fourth statement involves a denial by Plaintiff that she is cozying up to Kulkis to get a scoop. There is no assertion by the author of the article that Plaintiff was dating or cozying up to Kulkis simply to get a scoop. In fact, the article is written to make it

appear as if the denial by the Plaintiff was in response to a question from the author of the article. Indeed, the entire context of the article is that this was a real relationship ("Mark's a wonderful guy and I think this could be the real thing."). Therefore, the statement that Plaintiff denied that she was dating Mr. Kulkis in order to get a scoop cannot reasonably be construed as defamatory.

The fifth statement has two parts: Mark's a wonderful guy and their relationship could be the real thing. It is difficult to imagine how this "invented" quote could possibly make Plaintiff appear "odious." All it does is attribute to her a statement about Mr. Kulkis being a wonderful guy and that she believes that their relationship could be "real." These are hardly statements that rise to the level of defamation.

The sixth statement is equally benign. Ms. Benz did in fact date Gary Williams. Even if she did not date Mr. Ledecky, the statement that she did has no negative connotations at all. The same is true of the statement about spending time at Mr. Karmazin's Hampton home and the statement about her regular "companions." Finally, it is true that she was engaged to John Daggett. Indeed, Plaintiff does not allege that that statement is false.

Therefore, there is nothing remotely defamatory about these versions of the story.

There is one version of the article in a column in www.dailysexreview.com that is markedly different from the rest.[6] This column includes the comment at the end: "Finally, a relationship in which Kulkis isn't the sluttier one. Happy herpes!"

The D.C. Circuit has declared that "if it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming

---

[6] Indeed, the difference between the dailysexreview. com article and the other versions of the story strongly suggests that the dailysexreview article was authored by a different person than the other stories. Indeed, that version of the article was not authored by Defendant.

to be in possession of objectively verifiable facts, the statement is not actionable." *Guilford Transportation Industries, Inc.*, 760 A.2d 580, 596-597 (D.C.App. 2000), citing *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993); *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994), *cert denied*, 513 U.S. 875. In order to leave room for imaginative expression and rhetorical hyperbole, the law makes clear that an opinion is actionable only if it has an explicit or implicit factual foundation and therefore is objectively verifiable. *Washington v. Smith*, 80 F.3d 555, 556, (D.C. Cir.1996).

In this case, any statement related to the sexual promiscuity of the Plaintiff can only be described as the subjective view of the writer of the gossip column. This is especially true when the author is comparing the relative promiscuity of the Plaintiff and another person. The writer makes no claim that the statements are based on objectively verifiable facts. Since the definition of "slut" is a subjective term relating to a tendency to engage in sexual activity, the relative level of the Plaintiff's promiscuity versus another person is also a subjective statement. Since one person's opinion of what constitutes a slut could greatly vary from another's, the statement is necessarily a subjective assessment. Although the subjective statement may not be positive, it is nonetheless protected speech and cannot be actionable defamation.

The closing comment "Happy herpes" is also not actionable. There is no suggestion that either Mr. Kulkis or the Plaintiff has herpes.

II.   **Motion to Dismiss Claim Two: Invasion of Privacy – Intrusion on Seclusion, for Failure to State a Claim on Which Relief Can Be Granted**

To sustain a claim of Invasion of Privacy – Intrusion on Seclusion in the District of Columbia, a plaintiff must demonstrate an (1) invasion or interference by **physical**

7

**intrusion**, by use of defendant's sense of sight or hearing, or by use of some other form of investigation or examination (2) into a place where the plaintiff has secluded herself, or into her private or secret concerns (3) that would be highly offensive to an ordinary person. *Danai v. Canal Square Associates*, 862 A.2d 395, 400 (D.C.App. 2004).

According to D.C. law, "the types of invasion intrinsic in the tort of intrusion on seclusion are those such as harassment; peeping through windows or into some other locations in which a plaintiff has chosen to seclude himself; opening personal mail; eavesdropping on private conversations; entering a plaintiff's home without permission or searching his or her belongings; examining a plaintiff's private bank account; or other invasion of that nature. *Id.* at 400, citing *Wolf v. Regardie,* 553 A.2d 1213, 1217-18 (D.C.App. 1989).

There are no allegations that, subsequent to the Settlement Agreement between Defendant and the Plaintiff, Defendant has engaged in any activity that can be characterized as an invasion of or interference by physical intrusion of Plaintiff's seclusion. The only actions alleged that could fall within the scope of the tort of Invasion of Privacy—Intrusion on Seclusion occurred prior to July 11, i.e. the allegations that Defendant read Plaintiff's e-mail (¶ 58),[7] that he entered her apartment building and slipped a card under her door (¶ 102),[8] and that he overheard a telephone conversation between Plaintiff and Mel Karmazin's son Craig (¶ 127).[9] Of course, given the Settlement Agreement, any claim that Plaintiff may have had for these actions has been fully released.

---

[7] This is alleged to have occurred "in or about March 2004."
[8] This is alleged to have occurred "on or about May 25, 2005."
[9] This is alleged to have occurred "on an occasion in 2005." From the context of this allegation in the Complaint, it is clear that this alleged event occurred prior to July 11, 2005.

8

Other than those allegations, the Plaintiff has not alleged that Defendant has engaged in any sort of invasion, investigation or examination of the type contemplated by the Court in *Danai*. While the Plaintiff alleges Defendant engaged in such activities as posting fake news articles on the Internet, sending unsolicited emails to the Plaintiff's family, impersonating the Plaintiff and others in e-mail communications, and impersonating the Plaintiff in an on-line personal posting, these allegations do not constitute the type of activity that constitute an invasion, investigation or examination of any of her possessions. (Complaint, ¶¶ 109, 110, 112, 113, 115, 117, 119, 120, 132, 133, 134, 137-143, 146, 148, 149, 150, 153, 154, 161). As a result, this claim must be dismissed.

**III.    Motion to Dismiss Claim Three: Invasion of Privacy – Public Disclosure of Private Facts, for Failure to State a Claim on Which Relief Can Be Granted**

To sustain a claim of Invasion of Privacy – Public Disclosure of Private Facts in the District of Columbia, a plaintiff must prove the (1) publicity, (2) absent any waiver or privilege (3) given to private facts (4) in which the public has no legitimate concern (5) and which would be highly offensive to a reasonable person of ordinary sensibilities. *Wolf v. Regardie,* 553 A.2d 1213, 1220 (D.C.App. 1989). The protection afforded to the Plaintiff's interest in her privacy must be relative to customs of time and place, to occupation of plaintiff, and to habits of neighbors and fellow citizens. *Vassiliades v. Garfinkel's*, 492 A.2d 580, 588 (D.C.App. 1985); *citing* Restatement (Second) of Torts § 652D, comment c (1977).

Most of the focus of Plaintiff's Complaint revolves around the false information that Defendant allegedly published. Obviously, this information cannot form the basis

9

for a claim of Invasion of Privacy—Public Disclosure of Private **Facts** since, by their very nature, the statements are not facts. The only private facts that Plaintiff alleges were publicly disclosed by Defendant following the July 11, 2005 Settlement Agreement involved the disclosure of the Plaintiff's contact information and the names of men that she actually dated.[10]

As a producer of news for CNN, the Plaintiff has placed herself before the public and must reasonably expect to be contacted at work by the public. Undoubtedly, the Plaintiff's employer, CNN, would want the Plaintiff available to the public. In fact, a simple internet search yielded the Plaintiff's work telephone and email address. *See e.g.* www.masnet.org/takeaction.asp?id=1854 (last viewed October 20, 2005). Moreover, her home address and home phone number are listed in the telephone directory. Neither facts obtained from examination of public records nor matters released in media circulation can be considered private. *Wolf,* 553 A.2d at 1219. As a result, there could have been no disclosure of private facts in the posting of the Plaintiff's contact information.

Invasion of Privacy also requires that the Plaintiff has suffered an unreasonable and serious interference with protected interests. *Vassiliades*, 492 A.2d at 588 *citing Jackson v. District of Columbia*, 412 A.2d 948, 954 (D.C. 1980). The posting of a phone number or the identification of the names of people a person has dated cannot reasonably be considered an unreasonable interference with a protected interest. Indeed, millions of Americans readily post their home and work contact information in phone books and other directories each year. Dating a famous person must certainly be recognized as carrying a risk that the fact of the relationship will appear in print. In *Wolf v. Regardie*,

---

[10] It is not clear from the Complaint whether Plaintiff considers that any of the information contained in the websites created by Defendant to be either facts or private. Given the Settlement Agreement, nothing contained in the websites can used as a basis for recovery in this lawsuit.

the D.C. Court of Appeals determined that a magazine's publication of the details of an attorney's wealth and business dealings based on information taken from public sources was not considered to be a disclosure of private facts. 553 A.2d at 1220-21. ("There is no protected privacy interest in preventing the further publicity of what appellant [herself] left open to the public eye)." *Harrison v. Wansington Post Co.*, 391 A.2d 781, 784 (D.C.App. 1978) *citing* Restatement (Second) of Torts § 652D (comment b) (1977). Instead, the type of public disclosure that is actionable under the tort of Invasion of Privacy—Public Disclosure of Private Facts is illustrated in *Vassiliades v. Garfinkel's*, 492 A.2d at 585, where the defendant doctor displayed before and after plastic surgery pictures of a former patient for commercial purposes without the patient's consent.

    Other than the allegations about publication of contact information and the names of men that Plaintiff dated, the allegations in the Complaint that occurred after the July 11 Settlement date involve only the disclosure of false information. They are therefore not facts. The Plaintiff alleges that the Defendant issued fake news articles to media outlets, posted fake news articles on the internet, subsequently modified said newsletters with more false information, and sent e-mails under false identities. Since, as the Plaintiff claims in her Complaint that "[t]he acts and omissions of defendant John F. Bisney, as alleged in this Complaint, were done with knowledge that the statements he made about plaintiff, Kathleen A. Benz, were false or with reckless disregard for whether they were false," (Complaint, ¶ 154) these actions cannot, as a matter of law, be considered disclosure of private **facts**. If all of Defendant's alleged actions consisted of either the publication or republication of contact information, information about famous men that

the Plaintiff dated or the publication of non-facts, the claim of Public Disclosure of Private Facts cannot be sustained as a matter of law and Claim Three must be dismissed.

IV.  **Motion to Dismiss Claim Four: Invasion of Privacy – False Light, for Failure to State a Claim on Which Relief Can Be Granted**

The legal analysis of the sufficiency of the claim for Invasion of Privacy—False Light is the same as that for the defamation claim. The analysis of the two claims must go hand in hand, because the two torts are so similar. Indeed, '[a] plaintiff may only recover on one of the two theories based on a single publication, but is free to plead them in the alternative.'" *Weyrich* 235 F.3d at 628 *citing Moldea v. New York Times Co.I*, 15 F.3d 1137 (D.C. Cir. 1994). Due to the similarity of the claims of defamation and Invasion of Privacy—False Light, the court may dispose of both claims using the same analysis. *See Harrison v. Washington Post Co.*, 391 A.2d 781, 784 (D.C.App. 1978).

Therefore, the analysis of the statements that are the basis of the defamation claim also applies to a claim for Invasion of Privacy—False Light. The statements at issue must place the Plaintiff in a highly offensive false light in order to be actionable. As explained in the defamation section of this Memorandum and the Memorandum submitted by the Washington Examiner, the statements in the various articles do not meet this exacting standard.

Wherefore, Defendant Bisney respectfully requests that the Court dismiss Claims One, Two, Three, and Four.

                Respectfully submitted,

                */s/ Larry S. Gondelman*
                Larry S. Gondelman (D.C. Bar No. 950691)
                1875 Eye Street, NW
                12th Floor
                Washington, DC 20006
                202.466.6550
                202.785.1756 (fax)
                larry.gondelman@ppsv.com

                Counsel for Defendant John F. Bisney

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served electronically, by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF), this the 8th day of November, 2005, upon the following:

    William Alden McDaniel, Jr.
    LAW OFFICES OF WILLIAM ALDEN MCDANIEL, JR.
    118 W. Mulberry Street
    Baltimore, MD 21201
    Counsel for Plaintiff Kathleen A. Benz

    Laura R. Handman
    DAVIS WRIGHT TREMAINE LLP
    1500 K Street, N.W., Suite 450
    Washington, D.C. 20005
    Counsel for Defendant The Washington Newspaper
    Publishing Company, LLC

                */s/ Larry S. Gondelman*
                Larry S. Gondelman