IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHLEEN A. BENZ )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>THE WASHINGTON NEWSPAPER )<br>PUBLISHING COMPANY, LLC )<br>)<br>and )<br>)<br>JOHN F. BISNEY )<br>)<br>    Defendants. )<br>_____ ) | Civil Action No. 1:05cv1760 (EGS) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION
OF DEFENDANT JOHN F. BISNEY TO DISMISS CLAIMS
ONE, TWO, THREE, AND FOUR OF THE COMPLAINT**

**I.    Plaintiff's Defamation Claim**

In order to overcome the deficiencies of the Amended Complaint, Plaintiff in her Opposition to Motion of Defendant John F. Bisney to Dismiss Claims One, Two, Three, and Four of the Complaint ("Plaintiff's Opposition to Bisney Motion") rewrites the articles that are at issue in this case. Plaintiff's rewritten version of the article attributes statements to Defendant Bisney that simply do not appear in the articles. The following examples illustrate the significance of Plaintiff's revisionism:

1.    Plaintiff claims that Defendant "Bisney stated that Ms. Benz was having sexual relations with a producer of pornographic movies." (Plaintiff's Opposition to Bisney Motion, p. 1). However, there is not a single article that makes such a claim. In fact, the

articles merely describe Plaintiff as a "love interest" of Mark Kulkis, a producer of pornographic movies.

2.      Plaintiff claims that Defendant Bisney stated that Ms. Benz "used her job to further her desire to enter into romantic and sexual relationships with older men." (Plaintiff's Opposition to Bisney Motion, p. 1).  No such statement was ever made by Mr. Bisney.  The only statement in any of the articles that relates to Plaintiff's job and any relationship with any men is a denial by Plaintiff that she was cozying up to one man, Kulkis, to get a scoop for CNN.  The articles make no connection at all between Plaintiff's job and any other men.  Furthermore, the article does not in any way identify any man as "older."

3.      Plaintiff claims that Defendant Bisney stated that Ms. Benz "was having sexual relationships with a wide variety of older men, most of whom she has never met." (Plaintiff's Opposition to Bisney Motion, pp. 1-2).  No such statement was ever made by Mr. Bisney.  Again, nobody is identified as "older" and most significantly there are no references to sexual relationships.  The only term used was "regular companion."  Such a description is a far cry from "sexual relationship."

4.      Plaintiff claims that Defendant Bisney sent an electronic mail message "stating Ms. Benz was having an affair with Representative Pete Sessions." (Plaintiff's Opposition to Bisney Motion, pp. 11, 20).  No such statement was ever made by Mr. Bisney.  The article in question does not state in any way, shape or form that Plaintiff and Representative Sessions were having an affair.  The contacts alleged in the article between Plaintiff and Representative Sessions are limited to exchanging personal e-mail

addresses and cell phone numbers, having dinner, making phone calls in the "wee hours" of the morning, and meeting in the Capitol when Plaintiff is there for work.

5.  Plaintiff claims that Defendant Bisney sent an electronic mail message "stating…that Ms. Benz was having a romantic and sexual relationship with Kinky Friedman." (Plaintiff's Opposition to Bisney Motion, pp. 11, 20). No such statement was ever made by Mr. Bisney. The only reference to Mr. Friedman in the article is that he is a frequent visitor of Plaintiff's when he is in Washington. There is a world of difference between frequently visiting someone and having a romantic and sexual relationship.

6.  Plaintiff claims that Defendant Bisney made a "statement that Ms. Benz was engaging in a romantic relationship with Kulkis for the purpose of 'getting a scoop" for CNN." (Plaintiff's Opposition to Bisney Motion, p. 19). No such statement was ever made by Mr. Bisney. The only statement about this issue was a denial by Plaintiff that she was "cozying up" to Mr. Kulkis to get a scoop. The article does not allege in any way that Plaintiff was cozying up with Mr. Kulkis to get a scoop.

7.  Plaintiff claims that the articles authored by Defendant Bisney constitute allegations of "serious sexual misconduct." Plaintiff then cites the definition of serious sexual misconduct as involving "specific acts of adultery, fornication or any other form of sexual intercourse with a man other than her husband, as well as to general chares of unchaste conduct." (Plaintiff's Opposition to Bisney Motion, p. 19). Mr. Bisney made no statement that alleged that Ms. Benz engaged in adultery, fornication or any other form of sexual intercourse or unchaste conduct with anyone.

8.  Plaintiff claims that in one version of the article, Defendant Bisney "stated that as the 'sluttier' one of the couple, Ms. Benz would transmit herpes to Kulkis." (Plaintiff's Opposition to Bisney Motion, p. 21). No such statement was ever made by Mr. Bisney. This misrepresentation is repeated on page 21 when Plaintiff claims that "Defendant Bisney has disclosed the private fact that Ms. Benz has herpes." It is significant to note that Plaintiff's Complaint does not contain any allegation about the fact that she has herpes or that she told Defendant Bisney that she had herpes. Plaintiff's insertion of this alleged fact at this stage of the proceedings is entirely inappropriate and cannot be used to defeat a motion to dismiss. Moreover, if she in fact has herpes, the disclosure of that fact cannot be defamatory.

Defendant submits that the misrepresentations listed above are not minor differences of opinion of about the meaning of a word or statement. No reasonable person could read the articles in question and conclude that Defendant Bisney was contending that Plaintiff had engaged in serious sexual misconduct as represented by Plaintiff.

The reason that Plaintiff must rewrite the articles in question is simple. The articles are not defamatory. In his motion to dismiss, Defendant Bisney analyzed each statement of the articles. (Bisney Motion to Dismiss, pp. 4-7). This analysis amply demonstrated why none of the statements was defamatory. Plaintiff implicitly acknowledges the accuracy of Defendant's analysis in her Opposition when she complains that "Bisney does not analyze the various articles as a whole, however, but isolates nine statements and argues that none of them is defamatory." (Plaintiff's

4

Opposition to Bisney Motion at p. 18). Interestingly, all but one of the articles only contains seven sentences.

Plaintiff's argument is that anyone who learns that Ms. Benz, a producer at CNN, is a powerdater who is the love interest of a producer of pornography and has numerous regular male companions must reasonably conclude that she is sleeping with all of these older men to further her career. This leap in reasoning is as faulty as the misrepresentations used to support it.

Plaintiff also complains that Defendant Bisney's analysis of the defamation claim ignores:

1. the e-mail claiming the Plaintiff was having a sexual affair with Representative Sessions and Kinky Friedman;

2. Defendant's impersonation of Plaintiff in responding to advertisements seeking sex;

3. Defendant's actions in "sending phone email messages to her employer and to the members of the board of a charity Ms. Benz works for regarding the fake articles about Kulkis."

Defendant did not ignore these allegations in his motion. He did not mention them because they clearly do not bear mentioning.

Defendant has already addressed above the Plaintiff's misrepresentation about the email regarding Representative Sessions and Mr. Friedman. No such statements appear in the e-mail article.

5

With respect to the impersonation of the Plaintiff by Defendant, Plaintiff attaches two exhibits to her Complaint that allegedly contain the fake responses posted by Defendant Bisney. Neither of these responses is defamatory. The first response states: "i'm at work  call 202-898-7911  kathy." There is nothing about this e-mail that is defamatory. Indeed, there is nothing about it that identifies the person who is allegedly responding to the advertisement as Kathy Benz.

The second fake response appears by the subject line of the e-mail to relate to an advertisement by someone seeking sex in an upscale hotel. The fake response simply stated: "I work just two blocks from union station—swf, 27, thin, cute. Call me at work anytime after 10:30 am  515-2290  kathy." Again, there is nothing about the response that identifies the sender as Kathy Benz. Moreover, there was only one recipient of the response, i.e. the person who placed the ad and was seeking sex in an upscale hotel. It seems clear that such a person would not view the respondent to his ad as "odious, infamous or ridiculous." Therefore, this statement cannot be defamatory.

This is especially so in light of the entirety of Exhibit 15 to the Complaint. The exhibit includes an e-mail from the person who placed the ad and who read her purported response. He stated: "Kathy, I am really sorry you have been put in this situation. Here is the response I received. Its [sic] a fake email as any mail to it gets bounced back. Good luck! Dave." Thus, it is abundantly clear that Plaintiff was not defamed by her purported response as the only person who read the response immediately learned that the real Kathy Benz was not interested in having sex in a hotel with him.

Finally, the fact that the articles in question were sent to Plaintiff's employer or board members of a charity does not change the fact that the articles themselves are not defamatory.

## II.     Plaintiff's False Light Invasion of Privacy Claim

One thing that all of the parties seem to agree upon is that the False Light Invasion of Privacy Claim stands or falls with the Defamation Claim. As explained above, the statements at issue are not defamatory and therefore are insufficient to support a False Light Invasion of Privacy Claim.

## III.    Plaintiff's Intrusion Upon Seclusion Claim

Plaintiff's response to the Defendant's Motion to Dismiss the Intrusion upon Seclusion Claim reveals how utterly without merit that claim is. Plaintiff admits that the law is clear that a plaintiff must allege an invasion or interference by "physical intrusion, by use of the defendant's sense of sight or hearing, or by use of some other form of investigation or examination into a place where the plaintiff has secluded himself [or herself], or into his [or her] private or secret concerns." (Plaintiff's Opposition to Bisney Motion, pp. 20-21). Plaintiff does not dispute at all that the Amended Complaint fails to allege any action by Defendant Bisney that would constitute an intrusion upon seclusion.

Instead, Plaintiff herself brings to the public's attention the fact that she has herpes. Since it is not part of the Complaint, this fact cannot be considered by the Court in ruling on the Motion to Dismiss. However, even if the Court were to consider this fact, there is nothing about it that brings it within the ambit of the tort of intrusion upon seclusion. Plaintiff does not allege that Defendant Bisney learned this fact by physical intrusion into a place where she had secluded herself. In fact, Plaintiff claims that Mr.

Bisney learned of her condition because he was a close friend. Since she has adamantly denied that she had any physical relationship with Mr. Bisney, the only conclusion is that she told him about her condition. If she told him, then she can hardly claim he intruded into a place where she had secluded herself.

### IV.   Plaintiff's Public Disclosure of Private Facts Claim

Plaintiff's attempt to salvage the Public Disclosure of Private Facts Claim is equally without merit. Once again, Plaintiff has injected a fact that is not pleaded in the Complaint into these proceedings, i.e. that she has herpes. Moreover, she has again misrepresented a statement that appeared in one of the articles on the Internet. The article closed with the subjective observation: "Finally, a relationship in which Kulkis isn't the sluttier one. Happy herpes!" In Plaintiff's world, this becomes "Bisney stated that as the 'sluttier' one of the couple, Ms. Benz would transmit herpes to Kulkis." There is a world of difference between these two statements. The "happy herpes" phrase is not tantamount to announcing to the world that Plaintiff has herpes.

Moreover, even if the phrase could reasonably be understood as revealing Plaintiff's condition, there is no basis for concluding that Plaintiff had any right of privacy with respect to this fact. Plaintiff admits in her Opposition that she revealed her condition to "a few of her close friends." Clearly, it was not a private fact.

Finally, Plaintiff admits that the other facts that were revealed by Defendant Bisney (telephone numbers, home address and e-mail address) were publicly available. (Plaintiff's Opposition to Bisney Motion, p. 22). However, she attempts to cloak her publicly available contact information within the protection of the tort of public disclosure of private facts by creating a new tort that prohibits public disclosure of

publicly available facts when the public facts are directed to a targeted group of persons. (Plaintiff's Opposition to Bisney Motion, p. 22).  No support for this newly created tort is cited because none exists.  The tort requires publicity of "private facts."  The facts of which Plaintiff complains are admittedly public.  Therefore, the claim must be dismissed.

Wherefore, Defendant Bisney respectfully requests that the Court dismiss Claims One, Two, Three, and Four.

Respectfully submitted,

Larry S. Gondelman (D.C. Bar No. 950691)
1875 Eye Street, NW
12th Floor
Washington, DC  20006
202.466.6550
202.785.1756 (fax)
larry.gondelman@ppsv.com

Counsel for Defendant John F. Bisney

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served electronically, by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF), this the 30th day of December, 2005, upon the following:

    William Alden McDaniel, Jr.
    LAW OFFICES OF WILLIAM ALDEN MCDANIEL, JR.
    118 W. Mulberry Street
    Baltimore, MD 21201
    Counsel for Plaintiff Kathleen A. Benz

    Laura R. Handman
    DAVIS WRIGHT TREMAINE LLP
    1500 K Street, N.W., Suite 450
    Washington, D.C. 20005
    Counsel for Defendant The Washington Newspaper
    Publishing Company, LLC

                                    Larry S. Gondelman