IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHLEEN A. BENZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:05CV01760 EGS |
| ) | |
| THE WASHINGTON NEWSPAPER ) | |
| PUBLISHING COMPANY, LLC, *et al*., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF, KATHLEEN A. BENZ, IN OPPOSITION TO MOTION OF DEFENDANT JOHN F. BISNEY TO DISMISS CLAIM TWO OF THE SECOND AMENDED COMPLAINT**

On September 29, 2006, this Court dismissed without prejudice Claim Two of the First Amended Complaint filed by Ms. Benz alleging a claim of intrusion upon seclusion against defendant John F. Bisney, stating that Ms. Benz had not "explain[ed] whether Bisney learned of [the fact that Ms. Benz suffered from a form of herpes] by physical intrusion into a place where [Ms. Benz] secluded herself." *Memorandum Opinion,* September 29, 2006, at 23. This Court granted Ms. Benz ten days in which to file an appropriate pleading remedying the defects the Court had identified in that claim.

Ms. Benz accordingly filed a Second Amended Complaint October 16, 2006, adding allegations in support of that claim against defendant Bisney. Bisney has again moved to dismiss that claim, on three grounds: (1) the claim is barred by a prior settlement agreement

between the parties; (2) Ms. Benz's allegations consist of mere speculation; and (3) the article cannot be read to allege that Ms. Benz suffers from herpes.

None of these arguments hold any merit.  First, defendant Bisney fraudulently induced Ms. Benz to enter into the settlement agreement:  at the time defendant Bisney entered into the settlement agreement, defendant Bisney had no intention of honoring any of its provisions, as he proved by launching his campaign of character assassination within eight days of signing the settlement agreement.  Second, Ms. Benz has pleaded sufficient facts to permit her to conduct discovery on this issue.  Third, only defendant Bisney, with his warped sense of what it is appropriate to say about another person's private life, could argue that, as a matter of law, no reasonable juror could read Bisney's reference to "happy herpes" in the context as anything other than a reference to Ms. Benz.  This Court should deny defendant Bisney's motion to dismiss.

## I. SECOND AMENDED COMPLAINT

The Second Amended Complaint filed by Ms. Benz October 16, 2006, added the following allegations of fact in support of Ms. Benz's claim for intrusion upon seclusion against defendant Bisney.

Ms. Benz suffers from a form of herpes, a sexually transmitted disease.  Second Amended Complaint ¶ 28.  Ms. Benz never told defendant Bisney that she suffered from this disease.  *Id.* ¶ 29.  The only other individuals that know that Ms. Benz suffers from a form of herpes are her mother and her treating physicians.  *Id.* ¶ 30.  Ms. Benz's mother never told defendant Bisney that Ms. Benz suffered from a form of herpes and Ms. Benz never authorized her mother or any of her physicians to disclose the fact that she suffers from a form of herpes to defendant Bisney.  *Id.* ¶ 31-32.  Defendant Bisney disclosed the fact that Ms. Benz suffered

2

from a form of herpes in a posting on the Internet website **www.dailysexreview.com**, in which defendant Bisney wrote in part, "Finally, a relationship in which Kulkis isn't the sluttier one. Happy herpes!"  *Id*. ¶ 33.  A complete and accurate photocopy of the article from **www.dailysexreview.com** is attached to the original Complaint in this case as Exhibit 7 and is incorporated herein by reference.  Defendant Bisney has looked into Ms. Benz's private papers on numerous occasions, including but not limited to accessing Ms. Benz's electronic mail account and reading electronic mail messages sent and received by Ms. Benz.  *Id*. ¶ 34.

In or around May, 2004, Ms. Benz and defendant Bisney took a vacation to the island of Jamaica.  *Id*. ¶ 35.  On this trip, Ms. Benz took with her a letter from her treating physician stating that Ms. Benz suffers from Mollaret's meningitis, a rare syndrome characterized by recurrent episodes of severe headaches, meningismus, and fever.  *Id*. ¶ 36.  Ms. Benz kept this letter with her personal papers and never showed it to defendant Bisney.  *Id*. ¶ 37.  The letter was readily available to any person who looked through the personal papers of Ms. Benz.  *Id*. ¶ 38.

The herpes simplex type-2 virus is the most commonly associated etiologic agent of Mollaret's meningitis.  *Id*. ¶ 39.  Defendant Bisney, on information and belief, learned that Ms. Benz suffered or probably suffered from herpes by improperly and without authorization reading the private correspondence from Ms. Benz's treating physicians.  *Id*. ¶ 40.  Ms. Benz never authorized or consented to the disclosure by defendant Bisney of the fact that Ms. Benz suffers from a form of herpes.  *Id*. ¶ 41.

## II.     MOTION TO DISMISS

Under FED. RULE CIV. PRO. 12(b)(6), "a complaint should not be dismissed for failure to support a claim unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This "straight-forward principle enunciated by the Supreme Court in *Conley* has been reaffirmed and applied in numerous cases in every quadrant of the federal judicial system." 5B C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 3D § 1357, at 571 (2004) (hereinafter referred to as "WRIGHT & MILLER").

The test here, then, is whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief" under the law of the District of Columbia governing her substantive claim. *Conley, supra,* 355 U.S. at 45-46. Under the familiar RULE 12(b)(6) standards, this Court must view the facts presented in the pleadings and all inferences drawn therefrom in a light most favorable to Ms. Benz. *Edwards v. City of Goldsboro*, 178 F.3d 231, 248 (C.A.4 1999). In this analysis, "all of the well pleaded factual allegations in [Claim Two of the Second Amended Complaint] are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C WRIGHT & MILLER § 1368, at 230; *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (C.A.4 1993).

Under FED. RULE CIV. PRO. 8(f), "[a]ll pleadings shall be so construed as to do substantial justice." "A complaint is generally sufficient so long as it … provides 'adequate notice' to the defendant regarding the essential elements of the plaintiff's claim." *Smith-Berch, Inc. v. Baltimore County, Maryland*, 68 F.Supp.2d 602, 625-626 (D.Md. 1999). Measured by these standards, Claim Two "state[s] a legally cognizable claim for relief" under District of Columbia law.

### III.    SETTLEMENT AGREEMENT

After learning that defendant Bisney had created several internet sites bearing her name and likeness without her authorization, Second Amended Complaint ¶¶ 83-112, and

4

asking defendant Bisney to cease from contacting her, *id*. ¶¶ 113-115, Ms. Benz brought a civil action in the Superior Court of the District of Columbia styled *Benz v. Bisney*, Case No. CA-05-4205 (hereinafter referred to as "the D.C. Superior Court Case").  On July 11, 2005, Ms. Benz and defendant Bisney entered into a "Binding Settlement Agreement and Release" regarding the D.C. Superior Court Case.  A complete and accurate photocopy of the Binding Settlement Agreement and Release is attached to the original Complaint in this case as Exhibit 5 and is incorporated herein by reference.  Paragraph 2 of this Binding Settlement Agreement and Release provides that "[t]he parties agree that they will not intentionally contact or communicate with each other."

        Defendant Bisney argues that "the alleged tortious conduct [forming the basis of Claim Two], i.e. the act of physical intrusion, is alleged to have occurred in May 2004" and this is "well before the parties entered into a Settlement Agreement whereby Plaintiff released Defendant Bisney from any act that had occurred before July 11, 2005." *Defendant's Memorandum*, at 3.  Defendant Bisney asserts that the "Settlement Agreement precludes utilizing an alleged act of reading a letter in 2004 to support a claim of Intrusion upon Seclusion." *Id*. at 4.  Defendant Bisney argues that "Plaintiff is taking the position that **the disclosure** of this previously learned fact occurred after the settlement and that it is **the disclosure** that constitutes the tort of Intrusion upon Seclusion." *Ibid*. (emphasis in original).  Defendant Bisney misconstrues Ms. Benz's position.

        When defendant Bisney entered into the Binding Settlement Agreement and Release he had no intention of abiding by its terms and conditions.  Within a mere eight days of executing the Binding Settlement Agreement and Release defendant Bisney re-launched his campaign of defamation and harassment against Ms. Benz.  On July 19, 2005, defendant

5

Bisney posted a fake news article entitled "Politics And Porn Stars."  Second Amended Complaint ¶ 123.  This fake news article stated that Ms. Benz was dating Mark Kulkis, the president and CEO of a company that produces pornographic films.  *Id*. ¶ 124.  Defendant later modified this fake news article July 31, 2005.  *Id*. ¶ 127.  Defendant Bisney, since July, 2005, has sent electronic mail messages to Ms. Benz's family directing them to pornographic websites where the fake articles about Ms. Benz are available.  *Id*. ¶ 148.  On or about August 22, 2005, defendant Bisney sent a fake electronic mail message to Ms. Benz purporting to be from Mr. Phil Kent, Ms. Benz's superior at CNN.  *Id*. ¶ 153.  On July 31, 2005, defendant Bisney sent a fake electronic mail message to Ms. Benz purporting to be from Dr. Sanjay Gupta, a colleague of Ms. Benz's at CNN.  *Id*. ¶ 155.  Furthermore, since on or about August 25, 2005, defendant Bisney has impersonated Ms. Benz by posting sexually explicit personal advertisements on the internet site www.craigslist.com.  *Id*. ¶ 156.

       Defendant Bisney waited only eight days after signing the Binding Settlement Agreement and Release before restarting his campaign of harassment against Ms. Benz.  Such impatience and impudence is typical of defendant Bisney.  Defendant Bisney's actions immediately after executing the Binding Settlement Agreement and Release show that defendant Bisney had no intention of abiding by its terms and conditions.  Defendant Bisney's actions furnish a sufficient basis for a jury to conclude that he fraudulently induced Ms. Benz to enter into the Binding Settlement Agreement and Release and that it should serve as no bar to Claim Two of the Second Amended Complaint.

### IV.    RANK SPECULATION

       Defendant Bisney argues that the factual allegations of the Second Amended Complaint "are insufficient to support a claim that Bisney intruded upon Plaintiff's seclusion,"

and that "[t]hey constitute nothing more than rank speculation." *Defendant's Memorandum*, at 3.  Referring to the factual allegations in support of Claim Two, defendant Bisney states, "[w]hat remains unalleged in this fairy tale is that Bisney must have looked up Mollaret's meningitis, discovered that it is commonly caused by herpes, and concluded that Benz must have herpes." *Ibid*.  This argument has no merit.

Ms. Benz alleged that defendant Bisney read the private papers from her physician indicating Ms. Benz suffered from Mollaret's meningitis and concluded from this that she suffered or probably suffered from a form of herpes.  Based on the allegations of the Second Amended Complaint, which this Court must accept as true at this stage, the only individual who would have revealed that Ms. Benz suffered from a form of herpes was defendant Bisney.  Only Ms. Benz's mother and Ms. Benz's physicians knew that she suffered from a form of herpes and neither Ms. Benz nor her mother ever told defendant Bisney that Ms. Benz suffered from herpes.  Ms. Benz never authorized her physicians to disclose this fact to defendant Bisney.

Rummaging through the private papers of Ms. Benz and then revealing the sensitive information he procured on the internet is precisely the type of despicable act that Bisney has engaged in throughout his campaign of harassment and defamation against Ms. Benz.  The Second Amended Complaint documents these despicable acts and shows that defendant Bisney has no decency and will stop at nothing to get revenge on Ms. Benz because she refused his romantic and sexual advances.  As noted above, at the motion to dismiss stage, this Court must take all well-pled allegations in the Second Amended Complaint as true and all contravening assertions in defendant Bisney's motion as false.  Measured by this standard, the

factual allegations supporting Claim Two of the Second Amended Complaint sufficiently state a claim of intrusion upon seclusion against defendant Bisney.

The Court should deny defendant Bisney's motion to dismiss.

## V.   REASONABLE INFERENCE

Defendant Bisney argues that "the article upon which Plaintiff relies to impute knowledge by Defendant Bisney of her affliction cannot reasonably be read as a proclamation that Plaintiff has herpes." *Defendant's Memorandum*, at 3.  This is the type of argument this Court found unpersuasive in denying defendant Bisney's first motion to dismiss.  The article defendant posted on www.dailysexreview.com ends with the following sentences:  "Finally, a relationship in which Kulkis isn't the sluttier one.  Happy herpes!"  Exhibit 7 to the original Complaint.  Defendant Bisney argues that "[t]he reference to herpes hardly amounts to a statement that Plaintiff has herpes." *Defendant's Memorandum*, at 3.  Notwithstanding defendant Bisney's interpretation, the meaning of the statements posted by defendant Bisney is that Ms. Benz is sluttier than a male who produces pornographic films.  A "slut" is commonly understood to be a promiscuous woman and a promiscuous woman is more likely to contract a sexually transmitted disease such as herpes.  Furthermore, as defendant Bisney correctly concedes, "the act of disclosure has nothing to do with the tort of Intrusion upon Seclusion." *Defendant's Memorandum*, at 4.  The fact that defendant Bisney chose to post these statements on the internet is further proof that he has no decency and intruded into Ms. Benz's private papers and affairs.

Defendant Bisney argues that "[g]iven the innocuous nature of this expression, it is not a sufficient basis upon which to base the conclusion that Defendant Bisney surreptitiously obtained a letter from Plaintiff's doctor that makes no mention of herpes and

8

realized that herpes is an etiologic cause of her meningitis." *Defendant's Memorandum*, at 3. As noted above, Ms. Benz alleged that defendant Bisney intruded upon her seclusion by looking through her private papers and concluded that she suffered from a form of herpes. By taking this well-pled allegation as true and drawing all inferences from it in Ms. Benz's favor it is clear that Ms. Benz has sufficiently pled a claim for intrusion upon seclusion against defendant Bisney.

### VI. CONCLUSION

The Court should deny the Motion Of Defendant John F. Bisney To Dismiss Claim Two Of The Second Amended Complaint.

Respectfully submitted,

LAW OFFICES OF
  WILLIAM ALDEN MCDANIEL, JR.

/s/
William Alden McDaniel, Jr.
Bar No. 7152

/s/
Bassel Bakhos
Bar No. 489697

118 West Mulberry Street
Baltimore, Maryland 21201
Tel.: 410.685.3810
Fax: 410.685.0203
wam@wamcd.com
bb@wamcd.com

*Lawyers for Plaintiff, Kathleen A. Benz*

MPA Opp Bisney MTD Sec Amend Comp.doc