## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KATHLEEN A. BENZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:05cv1760 (EGS) (JMF)** |
| | ) | |
| **THE WASHINGTON NEWSPAPER** | ) | |
| **PUBLISHING COMPANY, LLC** | ) | |
| **and** | ) | |
| **JOHN F. BISNEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANT THE WASHINGTON EXAMINER'S MOTION TO COMPEL

Pursuant to Rule 37(a)(2) of the Federal Rules of Civil Procedure, Defendant The Washington Newspaper Publishing Company, LLC, publisher of the Washington Examiner ("The Examiner" or "Defendant"), by undersigned counsel, respectfully moves the Court to grant an order compelling Plaintiff's response to Defendant's Request for Production of Documents and Interrogatories. As more fully set forth in the accompanying memorandum, Defendant requests an order rejecting Plaintiff's relevance objection to producing discovery. Specifically, Defendant asks that Plaintiff be compelled to produce (1) medical and psychological records that relate directly to her claims of "mental anguish" and exacerbating of a pre-existing medical condition and (2) income tax records that relate directly to her claims of injury to reputation.

Pursuant to Fed. R. Civ. P. 37(a)(2)(B) and Local Rule 7(m), Defendant's counsel conferred with counsel for Plaintiff prior to filing this Motion but counsel have been unable to resolve these disputes. Defendant has agreed that any sensitive records produced will be subject to a protective order.

Dated this 14th day of February, 2007.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: ___/s/  Laura R. Handman_____
    Laura R. Handman (D.C. Bar No. 444386)
    Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

Attorneys for Defendant The Washington
Newspaper Publishing Company, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KATHLEEN A. BENZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05cv1760 (EGS) |
| | ) | |
| THE WASHINGTON NEWSPAPER | ) | |
| PUBLISHING COMPANY, LLC | ) | |
| and | ) | |
| JOHN F. BISNEY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT THE WASHINGTON EXAMINER'S MEMORANDUM OF**
**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL**

Defendant The Washington Newspaper Publishing Company, LLC, publisher of the

Washington Examiner ("The Examiner") hereby submits this Memorandum of Points and

Authorities in support of its Motion to Compel, subject to a protective order, medical,

psychological and financial records directly relevant to Plaintiff's claims for financial loss, injury

to reputation, mental anguish and exacerbation of a pre-existing medical condition.

**BACKGROUND**

Plaintiff seeks $30 million in compensatory and punitive damages claiming defamation

and invasion of privacy for reporting that she "was linked romantically" with various single men.

The Second Amended Complaint (Am. Compl.)[1] alleges that Plaintiff Kathleen Benz ("Benz")

and Defendant John B. Bisney ("Bisney") "developed a social friendship" in November 2002

which ended in May 2005, after Plaintiff learned that Bisney had obtained access to her e-mail,

established and maintained websites in Plaintiff's name, and posted personal and private

information about Benz on the World Wide Web.  Am. Compl. at ¶¶ 15-17.

---

[1] Plaintiff's Second Amended Complaint was filed on October 16, 2006.

On or about July 19, 2005, articles began to be posted on a number of Internet sites, stating that Plaintiff was dating various wealthy and well-known men.  Plaintiff admits having dated some of the men, but denies dating or being "romantically or sexually involved" with any of the other men.  Plaintiff attributes these Internet articles to John Bisney.  *Id.* ¶¶ 78-82, 123. These articles appeared on websites such as a blog entitled "What's Happening at CNN," the Philadelphia Inquirer's website, and a website entitled "Watching the Watchers."

The Examiner has published a thrice-weekly gossip column by a freelance columnist, Karen Feld, entitled "The Buzz."  On or about August 16, 2005, Ms. Feld received an email from "julie.bowen@latimes.com" transmitting one of the articles plaintiff has attributed to Bisney. Ms. Feld's August 19, 2005 gossip column (the "Column") bore the headline "Controversial love for CNN producer" and indicated that Ms. Benz was "linked romantically" to a number of men referenced in the article forwarded to Ms. Feld.  Neither Ms. Feld nor The Examiner knew or spoke with Bisney – and Plaintiff does not allege that they did.  After this action was filed, on September 30, 2005, The Examiner published in "The Buzz" column a correction of its previous article ("Correction").  *Id.* ¶ 194 and Exhibit 19.

In her Amended Complaint, Plaintiff brings three claims against The Examiner for the August 19, 2005 Column and September 30, 2005 Correction: for defamation (Claim One), invasion of privacy (public disclosure of private facts) (Claim Three), and false light invasion of privacy (Claim Four).  *Id.* at ¶¶ 205-217, 237-259.  Defendant Bisney is sued on these claims, as well as intentional infliction of emotional distress and intrusion upon seclusion.  In her Amended Complaint, Plaintiff claims that she "has suffered, is suffering, and will continue to suffer actual damages in the form of financial loss, injury to reputation, mental anguish, and loss of current and future business, and is entitled to presumed damages as well."  *Id.* at ¶ 245.  She claims

compensatory and presumed damages in excess of ten million dollars as well as punitive damages in excess of twenty million dollars.  *Id.* at ¶¶ 217, 246, 259.

On November 8, 2005, The Examiner filed a Motion to Dismiss the three claims against The Examiner.  On September 29, 2006, the court granted the motion to dismiss with respect to Plaintiff's claims arising out of the Correction, but denied the motion with respect to the original Column as to defamation and false light claims.  While the Court dismissed the intimate private facts claim as to liaisons which were allegedly false, it allowed the claim to go forward as to the liaisons that plaintiff conceded were true.  On October 20, 2006, defendant The Examiner answered the Amended Complaint, including, among its defenses, that The Examiner was a victim of fraud and misrepresentation by Bisney.  Answer at 7.

Defendant The Examiner served its Request for Production of Documents and Interrogatories to Plaintiff on November 8, 2006, the earliest date permitted under this court's Local Rules.  Plaintiff served her responses to the document requests on December 11, 2006 and her responses to the interrogatories on December 20, 2006.  While detailing her claims of "mental anguish" and exacerbation of a pre-existing medical condition, she nonetheless refused to produce any medical, psychological or financial records, claiming such records were "not relevant."  Declaration of Amber L. Husbands ("Husbands Decl.") at Exhibits 1, 2.  Counsel for The Examiner scheduled a meet and confer immediately following the court-ordered settlement conference on January 24, 2007 and, at Plaintiff's counsel's request, provided on January 29, 2007 an outline of outstanding issues in advance of the conference.  *Id.* at ¶¶ 4, 5.  Plaintiff's counsel then cancelled the meet and confer telephone conference.  *Id.* at ¶ 5.  After numerous inquiries and offers to confer by The Examiner's counsel, counsel for Plaintiff responded in writing on February 7, 2007, contending as the only ground that this Court held at the November

21, 2006 Scheduling Conference that Defendant "would not be entitled to delve into the medical and psychological history and records of Ms. Benz" and that Plaintiff would therefore stand on her objection with respect to the medical and psychological records.  Husbands Decl. at Exh. 5. However, the transcript of that conference, which has been provided to Plaintiff's counsel, flatly contradicts counsel's contention.   The Court did not address discovery of medical and psychological records and made no ruling on the issue; no ruling was required since this was simply a scheduling conference with no discovery motions before the Court.  Husbands Decl. at Exh. 9.  Nonetheless, Plaintiff's counsel have not retracted their position and continue to refuse to produce the medical and psychological records (Point A).

With regard to the income tax records, counsel first indicated Plaintiff was not abandoning her claim for financial loss and, then, in a subsequent e-mail, appeared to reverse course.  In any event, Plaintiff is not abandoning her claim for injury to reputation.  As to that claim, Defendant is entitled to Plaintiff's financial records to show she did not suffer any financial loss, evidence highly probative of lack of injury to reputation (Point B).

In sum, Plaintiff's counsel has not agreed to provide information or documents related to medical and psychological records or financial tax records, despite Defendant's offer to make any confidential documents subject to a protective order and despite the fact that Plaintiff continues to seek ten million dollars in compensatory damages, including damages for mental anguish, exacerbation of a pre-existing medical condition and injury to reputation.  Am. Compl. ¶ 245.  While the area of disagreement has been narrowed, The Examiner now moves this court for an order compelling Plaintiff to produce the records or immediately execute the required releases to allow counsel to obtain the records.

**ARGUMENT**

**I.    PLAINTIFF'S REFUSAL TO PRODUCE DOCUMENTS AND ANSWER
         INTERROGATORIES RELEVANT TO THE LAWSUIT SHOULD BE
         REJECTED**

It is black letter law that in response to its adversary's interrogatories and document

requests, a party is obligated to disclose all requested information reasonably likely to lead to the

discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  The term "relevance" is broadly

construed, and "relevant information need not be admissible at trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence."  *Id.*; *Food Lion, Inc. v.*

*United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).  Thus,

"[r]elevance, for purposes of discovery, is an extremely broad concept."  *Condit v. Dunne*, 225

F.R.D. 100, 105 (S.D.N.Y. 2004) (defamation claim).  "When the discovery sought appears

relevant, the party resisting the discovery has the burden to establish the lack of relevance by

demonstrating that the requested discovery either does not come within the broad scope of

relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the

potential harm occasioned by discovery would outweigh the ordinary presumption in favor of

broad disclosure."  *Moore v. Chertoff*, 2006 U.S. Dist. LEXIS 31391, *7 (D.D.C. May 22, 2006)

(Roberts, J.) (citations and quotations omitted).

Plaintiff should be directed to provide responses to the following document requests and

interrogatories:

### A.    Medical and Psychological Records

Document Request No. 32:    All records relating to Plaintiff's mental health, including examinations, notes, reports, treatment notes, test reports from any mental health care professional who has treated Plaintiff since January 1, 1987.

Document Request No. 33:    All documents relating to medications prescribed by a mental or medical health care professional since January 1, 2000, including but not limited to prescription receipts from pharmacies or pharmaceutical companies.

Document Request No. 34:    All records relating to Plaintiff's physical health, including records, examination notes, reports, treatment notes and test reports from any medical health care professional who has ever treated Plaintiff since January 1, 1987.

Document Request No. 35:    All documents concerning the treatment or counseling of Plaintiff, either medical or nonmedical, for any mental, emotional or physical injury, illness or condition allegedly caused in whole or in part by the conduct of any of the Defendants in this action, including but not limited to any reports, examination notes, treatment notes, invoices, test results, prescriptions, and pharmacy records.

Interrogatory No. 2:    Identify any person or health care service that has provided medical care and/or mental health services to Plaintiff during the period January 1, 1987 to present.

Interrogatory No. 3:    Identify any pharmacies where prescriptions have been filled for Plaintiff during the period January 1, 2000 to present.

Plaintiff first objected to these discovery requests on the basis that they sought documents and information not relevant to the subject matter of the claim or defense of any party to this action. However, it is Plaintiff who has explicitly placed her mental and medical health in issue by claiming damages for "mental anguish" and exacerbation of a pre-existing medical condition. In her Amended Complaint, Plaintiff claims that she "has suffered, is suffering, and will continue to suffer actual damages in the form of … mental anguish … ." Am. Compl. at ¶ 245. Further, in response to Interrogatory No. 9, Plaintiff contends "I have suffered severe mental anguish as a result of the publication of the article … This mental anguish has caused me to experience anxiety attacks, nightmares, insomnia, loss of appetite, vomiting, increased seizures, and migraines. This mental anguish has led me to experience bouts of depression during which I do

[sic] leave my home or see or speak to anyone, including my friends and family, for extended periods of time." Pl.'s Resp. to Interrogatories (attached as Exh. 1 to Husbands Decl.); *see also* response to Interrogatory No. 10 ("… I have suffered from anxiety attacks, nightmares, insomnia, loss of appetite, vomiting, increased seizures, and migraines …I am in a constant state of discomfort … I have lost twenty (20) pounds as a result of worrying …").

Defendant is entitled to Plaintiff's medical and psychological records in order to determine whether the evidence supports or contradicts Plaintiff's allegations of damage due to emotional distress and exacerbation of a pre-existing medical condition. *See Moore v. Chertoff*, 2006 U.S. Dist. LEXIS 31391, *10 (D.D.C. May 22, 2006) (Roberts, J.) ("Here, plaintiffs allege emotional distress manifested in psychological trauma and physical symptoms. The defendant, then, may properly seek discovery of plaintiffs' relevant medical records."); *see also, e.g., Cotton v. AT&T Operations, Inc.*, 2007 U.S. Dist. LEXIS 9042, *4 (E.D. Mo. Feb. 8, 2007) (ordering production of medical records where plaintiff "placed her medical history at issue" by seeking damages for emotional distress and mental anguish); *Owens v. Spirit/United Mgmt. Co.*, 221 F.R.D. 657, 659-660 (D. Kan. 2004) (ordering production of information and records relating to medical providers where plaintiff claimed damages for mental anguish and emotional pain); *Riisna v. ABC, Inc.*, 2002 U.S. Dist. LEXIS 810, *1 (S.D.N.Y. Jan. 18, 2002) (defendant in defamation case is entitled to medical records where plaintiff claimed to have suffered emotional distress).

In addition, although she attributes her symptoms to the actions of Defendant, Plaintiff alleged in her complaint that, for some time <u>before</u> the events at issue, she suffered from epilepsy, migraines, and "related problems," suffering "seizures, severe and debilitating headaches, nausea, and other symptoms." Am. Comp. ¶¶ 44-48. As one federal court noted, "it

is reasonable to conclude … that a person who experiences emotional distress at any given time of his or her life may have already been experiencing such distress due to other life events." *Hawkins v. Anheuser-Busch*, 2006 U.S. Dist. LEXIS 59217, *5-6 (S.D. Ohio June 19, 2006). Defendant is entitled to Plaintiff's medical and psychological records in order to determine whether and to what extent she had been suffering from the symptoms she attributes to Defendant's actions <u>before</u> the publication of the Column. *See Moore*, 2006 U.S. Dist. LEXIS 31391, *8 ("Where a plaintiff alleges emotional distress, a defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so."). Medical and psychological records – both before and after the publication of the Column – are relevant to Plaintiff's claims that she has suffered physical symptoms of her mental anguish that are attributable to the actions of Defendant and not to other stressors in her life.

As the sole ground for continuing to resist production of medical and psychological records, Plaintiff contended in their February 7 response that this Court held at the November 21, 2006 Scheduling Conference that Defendant "would not be entitled to delve into the medical and psychological history and records of Ms. Benz." Letter from B. Bakhos (attached as Exhibit 5 to Husbands Decl.). The transcript of that conference, provided to Plaintiff's counsel on February 12, flatly contradicts Plaintiff's counsel's assertion and sole ground for refusing to produce the records. There was <u>no</u> mention of discovery of medical or psychological records at the status conference. Transcript of Nov. 21, 2006 Initial Status Conference (attached as Exh. 9 to Husbands Decl.). The November 21 conference was strictly a scheduling conference with no discovery disputes before the Court. The transcript of that conference shows that the court did

not even discuss discovery of records, but only the possibility of obtaining an independent

medical examination ("IME") in this case.  Even as to that issue, the Court did not rule on the

issue, as there was no motion before the Court.

> It may well be that this is a case that requires independent medical examination by
> a psychiatrist, but also that's used as a big tool to dissuade people from filing
> legitimate claims requesting damages for emotional distress.  So it's not as a
> matter of course that psychiatric examinations are allowed.  In fact, it's rare that
> this court will ever order a psychiatric examination when a plaintiff raises a claim
> for emotional distress.  Now, having said that, if the plaintiff is indeed relying on
> experts to support her claim, that's something different.  If that's the case, you
> may well be entitled to an IME, but we'll cross that bridge when we come to it.

Husbands Decl. Exh. 9.[2]  Notwithstanding this undisputable transcript which Plaintiff's counsel

has had for 48 hours, Plaintiff still has refused to produce the clearly discoverable medical and

psychological records, necessitating this motion.

Plaintiff's statement that she is "not seeking compensation for medical treatment,"  Pl.'s

Resp. to Interrogatories at 11 (attached as Exh. 1 to Husbands Decl.), is not sufficient to render

medical and psychological records irrelevant when she continues to seek damages for mental

anguish which she claims has physical symptoms.  *See Moore*, 2006 U.S. Dist. LEXIS 31391

("Having claimed emotional distress, plaintiffs may not shield discovery of their medical records

by vowing to forego at trial testimony of medical providers or experts.").  If Plaintiff continues to

refuse to produce these records, she should be precluded from bringing a claim for damages for

mental anguish.  *See Riisna v. ABC, Inc.*, 2002 U.S. Dist. LEXIS 810, *1-2 (S.D.N.Y. Jan. 18,

2002)  ("plaintiff is precluded from making any claim against ABC for damages for emotional

distress unless plaintiff … provides ABC with executed consents to the release of records" from

seven mental health care providers).

---

[2] Defendant is now moving only for access to medical and psychological records; the issue of an
IME is not before the Court since, until these records are examined, Defendant is not in a
position to seek an IME.

### B.      Income Tax Records

Document Request No. 5:      All income tax returns filed, individually or jointly by Plaintiff (local, state, and federal), from January 1, 1996 to the present.

Document Request No. 6:      All income tax returns filed by any person on which Plaintiff is claimed as a dependent from January 1, 1996 to the present.

Document Request No. 7:      All W-2 or 1099 federal income tax forms received by Plaintiff from January 1, 1996 to the present.

Plaintiff's claim that documents related to income taxes are irrelevant is utterly baseless, as Plaintiff alleges in her complaint that she "has suffered, is suffering, and will continue to suffer actual damages in the form of financial loss, injury to reputation, … and loss of current and future business."  Am. Compl. at ¶ 245.  On February 7, counsel for Plaintiff refused to concede that Plaintiff would "not be seeking damages for financial loss, injury to reputation, and loss of current and future business opportunities.  Ms. Benz is not making such a concession." Notwithstanding the refusal to forego such claims, counsel contended that income tax records were irrelevant to those damage claims.  Husbands Decl. Exh. 5.  On February 9, counsel for Plaintiff appeared to reverse course, stating that Plaintiff "is not seeking in this case any financial loss or loss of current or future business opportunities," contrary to the earlier position taken by counsel, but nonetheless continued to assert that income tax records are not relevant to Plaintiff's claim for injury to reputation.  Husbands Decl. Exh. 7.[3]  If Plaintiff is seeking damages for financial loss or loss of current or future business opportunities, the tax returns are indisputably relevant.  But even if Plaintiff concedes that she is not seeking those damages, the income tax information is just as relevant to her claim of loss of reputation.

---

[3] Given this contradictory record, counsel for The Examiner attempted to confirm that Plaintiff will not be seeking damages for financial loss or loss of current or future business opportunities, but received no response from counsel for Plaintiff.  Husbands Decl. Exh. 8 and ¶ 14.

Injury to reputation is measured by, among other things, los of income.  The flip side is, of course, that the lack of injury to reputation is measured by the lack of loss of income.  *See, e.g., Tavoulareas v. Piro*, 93 F.R.D. 11, 22 (D.D.C. 1981) (ordering production of salary and income records where defamation plaintiff claimed injury to business and to reputation); *Pino v. The Prudential Ins. Co. of Am.*, 1987 U.S. Dist. LEXIS 11399, *6 (E.D. Pa. Dec. 8, 1987) (in defamation case where plaintiff claimed harm to business reputation, "if plaintiff's income did not decrease after the defamatory statement was made, defendant might offer evidence of plaintiff's income to rebut allegations of injury"); *Low v. Sears, Roebuck & Co.*, 1988 U.S. Dist. LEXIS 2322, *3-4 (D. Ore. Mar. 17, 1988) (ordering production of tax returns in defamation action where plaintiff had claimed general damages for injury to personal and professional reputations).  Tax returns are the "best source of competent information" as to any loss of income Plaintiff has sustained since the publication of the Column – or, in this case, the absence of any loss in income.  *American Air Filter Co. v. Kannapell*, 1990 U.S. Dist. LEXIS 11842, *10 (D.D.C. Sept. 10, 1990) ("where the income of a party to the litigation is in issue, income tax returns provide what may be the best source of competent information as to that party's income") (citation omitted).

Plaintiff claims in her interrogatory responses that she does not need to provide any specific proof of damages regarding injury to her reputation in order to maintain her claim. Husbands Decl. Exh. 1 ("each of the statements published by the defendants in this case constitutes defamation *per se* not requiring specific proof of damages regarding injury to my reputation").  While that may be so in certain circumstances, Defendant is entitled to rebut any claim of presumed damages to show that Plaintiff's reputation was, in fact, not harmed.  *See, e.g., Stamathis v. Flying J, Inc.*, 389 F.3d 429, 440 (4th Cir. 2004) (even in a case involving

defamation *per se*, defendants may introduce evidence to show "diminution of damages").  If

Plaintiff will still not produce her income tax records, she should be precluded from claiming

damages for injury to reputation (or financial loss/loss of business, if she continues to assert

those claims).  *See, e.g., Autofacts, Inc. v. Price Book and Forms, Inc.*, 1992 U.S. Dist. LEXIS

8023, *1-2 (E.D. Pa. June 2, 1992) ("Defendant will not be permitted to proceed on its

counterclaim asserting damages for injury to its reputation … unless, before trial commences,

defendant discloses to plaintiff's counsel relevant portions of defendant's income tax returns …

or otherwise satisfactorily establishes a valid basis for comparison of defendant's pre- and post-

injury revenues").

Plaintiff must produce the tax returns, as well as medical and psychological records, even

if she does not currently possess them.  Fed. R. Civ. P. 34(a) makes discoverable any documents

within a party's "possession, custody or control."  "Control" has been interpreted as "the legal

right to obtain a document on demand."  *Jones v. Prince George's Cty.*, 2001 U.S. Dist. LEXIS

25733, at *9 (D.D.C. Oct. 29, 2001) (citing cases).  Because Plaintiff has the right to obtain her

income tax returns, she may be ordered to produce tax returns not in her actual possession.  *Id.*

(ordering production of income tax records).  The same would apply to her medical and

psychological records.[4]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court grant its motion and

enter an order compelling Plaintiff to fully comply with the Interrogatories and Requests and

---

[4] Alternatively, to the extent Plaintiff does not currently have possession of these records, the Court may order Plaintiff, after she has identified her health care providers, to execute release forms for the medical and psychological records so that Defendant may obtain copies of the records from the providers directly.  It may also order Plaintiff to execute a release form for her income tax records.

produce all medical and psychological records and income tax returns, W-2 forms and 1099s, as

requested, subject to a Protective Order.

      Dated this 14th day of February, 2007.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:    /s/  Laura R. Handman
     Laura R. Handman (D.C. Bar No. 444386)
     Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

Attorneys for Defendant The Washington
Newspaper Publishing Company, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2007, I caused the foregoing to be served

electronically on counsel of record by the U.S. District Court for the District of Columbia

Electronic Document Filing System (ECF).


/s/  Amber L. Husbands
Amber L. Husbands
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C.  20005-1272
(202) 508-6600

1