**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATHLEEN A. BENZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:05cv1760 (EGS) (JMF) |
| | ) |
| THE WASHINGTON NEWSPAPER | ) |
| PUBLISHING COMPANY, LLC | ) |
| and | ) |
| JOHN F. BISNEY, | ) |
| | ) |
|     Defendants. | ) |

**DECLARATION OF AMBER L. HUSBANDS IN SUPPORT OF**
**DEFENDANT THE EXAMINER'S MOTION TO COMPEL**

I, Amber L. Husbands, declare as follows:

1. I am a attorney in the law firm of Davis Wright Tremaine LLP, and I represent Defendant The Washington Newspaper Publishing Company, LLC ("The Examiner") in this action.

2. On December 20, 2006, Plaintiff served her Response to Defendant The Examiner's Interrogatories to Plaintiff. Attached hereto as Exhibit 1 is a true and accurate copy of her response (with Plaintiff's social security number and date of birth redacted).

3. On December 11, 2006, Plaintiff served her Response to Defendant The Examiner's Request for Production of Documents to Plaintiff. Attached hereto as Exhibit 2 is a true and accurate copy of her response.

4. On Thursday, January 25, 2007, the day after the court-ordered settlement conference, we contacted counsel for Plaintiff to schedule a time to meet and confer regarding discovery requests. William McDaniel, counsel for Plaintiff, suggested that counsel speak by

telephone on Monday, January 27, 2007, and the time was confirmed for 3:30p.m. Mr. McDaniel suggested that counsel for Defendant send him an email outlining the issues to be discussed in advance of the meeting.

5. On January 29, 2007, at 12:45pm, I sent an email to counsel for Plaintiff outlining the issues to be discussed. At 1:15pm the same day, Bassel Bakhos, counsel for Plaintiff, advised by email that he would provide a written response to my email and that the telephone conference was no longer necessary.

6. On Tuesday, January 30, at 4:28pm, in response to my 3:56pm email query, Mr. Bakhos sent an email advising that he would send the response shortly.

7. On Thursday, February 1, at 7:03pm, in response to my 10:02am email query, Mr. Bakhos sent an email advising that we would receive his response the next day (February 2).

8. Attached hereto as Exhibit 3 is a true and accurate copy of the emails described above.

9. On February 6, after we had not received any response to our email for over a week, I contacted counsel for Plaintiff to request a telephone conference on February 7 in order to discuss the issues with counsel before filing a Motion to Compel. Attached hereto as Exhibit 4 is a true and accurate copy of that email.

10. On February 7, counsel for Plaintiff responded by letter to my January 29 email regarding discovery responses. In this letter, counsel contended that this Court held at the November 21, 2006 Scheduling Conference that Defendant "would not be entitled to delve into the medical and psychological history and records of Ms. Benz" and that Plaintiff would therefore stand on her objection with respect to the medical and psychological records. With regard to the income tax records, counsel responded that "you enquire whether Ms. Benz's

objection to the relevance of providing her income tax records is a concession that Ms. Benz will not be seeking damages for financial loss, injury to reputation, and loss of current and future business opportunities. Ms. Benz is not making such a concession." Counsel contended, however, that income tax records were irrelevant to those damage claims. Attached hereto as Exhibit 5 is a true and accurate copy of that letter.

      11.    I responded by email the same day, on February 7, 2007, providing caselaw in support of Defendant's position that the income tax records are relevant to claims of damage for financial loss, injury to reputation, and loss of current and future business opportunities. I also noted that The Examiner would be amenable to a protective order in this case that would cover any information deemed confidential by the parties. Attached hereto as Exhibit 6 is a true and accurate copy of my email.

      12.    On February 9, 2007, counsel for Plaintiff, William McDaniel, responded by email, saying that Plaintiff "is not seeking in this case any financial loss or loss of current or future business opportunities," contrary to the earlier position taken by Mr. Bakhos. Mr. McDaniel continued to assert that income tax records are not relevant to Plaintiff's claim for injury to reputation. Attached hereto as Exhibit 7 is a true and accurate copy of that email.

      13.    I responded on February 12, 2007, asking Mr. McDaniel to confirm, in view of the contradictory record, that Plaintiff will not be seeking damages for financial loss or loss of current or future business opportunities, and providing caselaw in support of Defendant's position that Plaintiff's income tax returns are relevant to her claim for injury to reputation, even if damages for financial loss were no longer being claimed. I also provided a copy of the transcript of the November 21, 2006 scheduling conference, which shows that the court did not address the issue of medical or psychological records, contrary to Mr. Bakhos's February 7

3

letter. I requested a response by noon on February 13. Attached hereto as Exhibit 8 is a true and accurate copy of my email.

      14. As of the time Defendant's Motion to Compel was filed on February 14, Plaintiff's counsel had not responded to my February 12 email.

      15. Attached hereto as Exhibit 9 is a true and accurate copy of the transcript of the November 21, 2006 Initial Status Conference in this case. There were no discovery motions before the Court. The transcript shows that the Court discussed the possibility of obtaining an independent medical examination ("IME") in this case. However, the Court did not rule on the issue, nor did it address the issue of medical and psychological records in any way:

> It may well be that this is a case that requires independent medical examination by a psychiatrist, but also that's used as a big tool to dissuade people from filing legitimate claims requesting damages for emotional distress. So it's not as a matter of course that psychiatric examinations are allowed. In fact, it's rare that this court will ever order a psychiatric examination when a plaintiff raises a claim for emotional distress. Now, having said that, if the plaintiff is indeed relying on experts to support her claim, that's something different. If that's the case, you may well be entitled to an IME, but we'll cross that bridge when we come to it.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed:    Washington, D.C.
               February 14, 2007

                                                  /s/ Amber L. Husbands
                                           Amber L. Husbands