# EXHIBIT 9

1

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

KATHLEEN A. BENZ,                   .
                                    .
        Plaintiff,                  .
                                    .   CA No. 05-1760 (EGS)
    v.                              .
                                    .   Washington, D.C.
WASHINGTON NEWSPAPER                .   Tuesday, November 21, 2006
PUBLISHING CO., LLC, et al,         .   12:17 a.m.
                                    .
        Defendants.                 .
                                    .
. . . . . . . . . . . . . . .

                    INITIAL STATUS CONFERENCE
           BEFORE THE HONORABLE EMMET G. SULLIVAN
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        BASSEL BAKHOS, ESQ.
                          Law Offices of
                          William Alden McDaniel, Jr.
                          118 West Mulberry Street
                          Baltimore, Maryland 21201
                          410-685-3810


For the Defendants:       LAURA R. HANDMAN, ESQ.
                          Davis Wright Tremaine, LLP
                          1500 K Street, NW
                          Suite 450
                          Washington, D.C. 20005-1272
                          202-508-6699

                          LARRY S. GONDELMAN, ESQ.
                          Powers, Pyles, Sutter & Verville, PC
                          1875 Eye Street, NW
                          12th Floor
                          Washington, D.C. 20006-5409
                          202-466-6550

Court Reporter:           BRYAN A. WAYNE, RPR, CRR
                          Official Court Reporter
                          U.S. Courthouse, Room 4808-B
                          333 Constitution Avenue, NW
                          Washington, D.C. 20001
                          202-216-0313
```

```
 1                      P R O C E E D I N G S
 2          THE DEPUTY CLERK:  Civil case No. 05-1760.  This is in
 3   the matter of Kathleen Benz versus Washington Newspaper
 4   Publishing Company, et al.  Would the parties please stand and
 5   announce yourselves for the record.
 6          MR. BAKHOS:  Bassel Bakhos for Ms. Benz.
 7          THE COURT:  All right.
 8          MS. HANDMAN:  Laura Handman for Washington Newspaper
 9   Publishing.
10          THE COURT:  Good afternoon.
11          MR. GONDELMAN:  Larry Gondelman on behalf of
12   John Bisney, Your Honor.
13          THE COURT:  All right.  Let me invite principal
14   counsel to the podium.  Let me ask a question about this
15   Count 2.  Is it Benz's claim that something occurred in May 2004
16   or prior to 2004?
17          MR. BAKHOS:  In May 2004, Your Honor.
18          THE COURT:  Why isn't it barred by the settlement
19   agreement?
20          MR. BAKHOS:  Well, it's our claim that Mr. Bisney has
21   violated the settlement agreement.
22          THE COURT:  Well, that's an action that she can file
23   in Superior Court, isn't it?
24          MR. BAKHOS:  Yes, it is.
25          THE COURT:  All right.  Well, that count is dismissed.
```

1    MR. BAKHOS: Okay.

2    THE COURT: All right. What about settlement, another
3    settlement? I really don't understand what's going on in this
4    case. Seems like the parties ought to be before a mediator
5    somewhere. You were able to settle a very serious case and very
6    serious allegations, and it wasn't easy, I'm sure. Now you're
7    back in federal court now with a new case. Is the same mediator
8    around who settled the first case?

9    MR. GONDELMAN: We didn't have a mediator.

10    THE COURT: You settled on your own.

11    MR. GONDELMAN: Yes. Ms. Benz was represented by
12    different counsel at that time, Your Honor. I'm not blaming it
13    on counsel, by the way. I just thought I'd --

14    THE COURT: Is there something I can do to put this
15    case in a posture -- we've had one lawsuit that's been settled,
16    you had an action before me, there's been one opinion issued,
17    you're back -- that's fine, you're welcome here -- but at what
18    point are the parties going to be able to achieve some finality
19    here?

20    MR. GONDELMAN: It's certainly Mr. Bisney's very
21    strong desire to get this behind him. We did have preliminary
22    discussions that didn't go anywhere.

23    THE COURT: Do you need --

24    MR. GONDELMAN: We're ready to go to a mediator from
25    this courtroom.

1      THE COURT: What about Ms. Benz?

2      MR. BAKHOS: Your Honor, we did engage in settlement
3 discussions with Mr. Bisney. Turns out we were very far apart
4 on any kind of figure for settlement. And as we said in our
5 papers, it's our position that given the limited amount of
6 discovery we've gotten from Mr. Bisney, and we have no discovery
7 from the newspaper, we would like to engage in some discovery to
8 find out the extent of Mr. Bisney's actions and the extent of
9 the newspaper's investigation into this story: what they did,
10 what they didn't do.

11     We know nothing about their relationship with the reporter:
12 who wrote the story, how she got it, did she know Mr. Bisney,
13 did Mr. Bisney know her, who contacted who. And we're always
14 willing to engage in settlement discussions, and we're more than
15 happy to. And I think in our papers we said, after a couple
16 months of discovery here and there, we'd be more than willing to
17 engage in any kind of negotiations.

18     THE COURT: You just don't think that by engaging in
19 settlement discussions now that those discussions would tend to
20 be fruitful, you don't think.

21     MR. BAKHOS: Not at all.

22     MS. HANDMAN: Your Honor, speaking on behalf of the
23 newspaper, and we were not involved in the Superior Court
24 action, we are prepared to go forward with settlement
25 discussions now. We think there will be extensive and expensive

1    discovery if necessary, and we don't see the point --

2            THE COURT: That's why I always ask these questions up

3    front, because I know; I recognize that. Once you start

4    spending money for discovery, the battle lines become deeper in

5    the sand. It becomes more difficult to get parties to sit down

6    and talk about settlement.

7            MR. BAKHOS: I don't mean to say this against any of

8    the attorneys here, but the defendants have already served their

9    discovery on Ms. Benz. On the one hand, they're saying they

10   don't want to engage in discovery, and yet to go into --

11           THE COURT: Have you already provided them with

12   discovery?

13           MR. BAKHOS: I think that we have a couple more weeks

14   to respond.

15           MS. HANDMAN: We served, after the meet-and-confer,

16   interrogatories and document requests, but of course there's

17   deposition, there's third-party discovery, and she's claiming

18   $30 million in damages: financial loss, reputational harm,

19   mental anguish. There will be obviously a need for a

20   psychiatric examination, and so we do anticipate extensive

21   discovery. This has obviously --

22           THE COURT: Why do you say obviously there will be a

23   need for psychiatrics just because a person raises a claim of

24   emotional distress? Why does there have to be a psychiatric

25   examination?

1    MS. HANDMAN: Your Honor, if she does claim mental
2 distress, and she does in her own complaint list a number of
3 medical and other issues, and so obviously, what distress is
4 caused by the article versus what distress may have pre-existed
5 would be standard fare, I think, for a claim such as this.
6    THE COURT: Well, it may be. It may be. It just
7 amazes me when attorneys come in and say that in cases in which
8 plaintiffs have alleged emotional distress, there's always a
9 need for a psychiatric examination. That simply is not the
10 case, and it's not supported by the law either.
11    It may well be that this is a case that requires
12 independent medical examination by a psychiatrist, but also
13 that's used as a big tool to dissuade people from filing
14 legitimate claims requesting damages for emotional distress.
15    So it's not as a matter of course that psychiatric
16 examinations are allowed. In fact, it's rare that this court
17 will ever order a psychiatric examination when a plaintiff
18 raises a claim for emotional distress.
19    Now, having said that, if the plaintiff is indeed relying
20 upon experts to support her claim, that's something different.
21 If that's the case, you may well be entitled to an IME, but
22 we'll cross that bridge when we come to it.
23    Now, the reason why I was throwing this question out is
24 because if there's a chance to -- and there certainly is a
25 chance because we have some excellent magistrate judges

1  available who can at least attempt to broker a deal between the
2  parties. If there's a possibility of a settlement, the parties
3  ought to explore it anyway. It doesn't cost you anything. You
4  ought to explore it before you start spending that money,
5  because once you do, it's very difficult to get people to sit
6  down and start talking dollars and cents. If you don't think
7  it's going to serve any purpose, we'll move on to the next
8  phase, start spending money.
9        MR. BAKHOS: Respectfully, Your Honor, we don't feel
10 it's going to serve any purpose right now.
11       THE COURT: All right. That's fine. I'm going to
12 assign the case to a magistrate judge for purposes of settlement
13 discussions should the mood strike anyone to have settlement
14 discussions. At least there will be a person in place, and I'm
15 going to assign Magistrate Judge Facciola to preside over any
16 settlement discussions that the parties wish to initiate.
17       Now, what's reasonable for discovery? You have this
18 discovery period: experts, rebuttal experts. Seems to me what
19 the Court should do is to just determine discovery will conclude
20 by the end of July, period. Fact witness, expert witness,
21 period. And that's it. July 30. I'm not going to extend the
22 time to do that.
23       Plaintiffs are going to have to designate any experts by,
24 say, April 1, and defendants will have to designate any experts
25 that they rely on by May 1. I'll put all this in a scheduling

1  order. The discovery's going to close actually end of July,
2  July 30.
3       I'm not going to pick a pretrial date today; I'm certainly
4  not going to pick a trial date today. We're going to focus on
5  discovery. At the end of discovery, we will talk again about
6  whether or not there are issues that can be resolved on summary
7  judgment grounds.
8       So what I'll do is schedule a status hearing for those
9  discussions shortly after Labor Day of next year. I'm going to
10 just throw out a date, September 5 at noon, for the status
11 hearing. We'll talk about potentially dispositive motions.
12 We'll talk about pretrial requirements. We'll talk about
13 whether or not it's realistic to believe at that time that
14 there's a need for trial on all or some of the issues in this
15 case.
16      And basically, that's all I have to say today. I'll
17 entertain any additional requests of counsel, but I'm not going
18 to give you a pretrial date or a trial date today. I'm just not
19 going to do that. Yes?
20          MS. HANDMAN: Your Honor, one question. We anticipate
21 that we might likely want to move for summary judgment at the
22 close of discovery. Is that something you wish us to wait until
23 we've had the conference --
24          THE COURT: Yeah, let's talk about that because I want
25 to know just how viable those claims are at that point. Let's

1  just wait and talk about that in September, and if there are
2  issues that can, on a good-faith basis, be addressed on summary
3  judgment grounds, then I'll entertain them. If we're talking
4  about questions involving intent and motive and things of that
5  nature, sometimes summary judgment's appropriate, sometimes it's
6  not.
7      So I'd like to at least listen to counsel to determine just
8  what claims counsel believe are really capable of being resolved
9  on summary judgment grounds or leads counsel to believe they are
10 capable of being resolved on summary judgment grounds, and if
11 not, get on with the trial in this case and give some finality
12 in this court.
13     What about that other matter that was resolved in Superior
14 Court? Is that final? Is there litigation there? That's not
15 part and parcel of this case at all, is it?
16         MR. BAKHOS: No, Your Honor.
17         THE COURT: All right. Anything else we need to talk
18 about today? No chance for settlement. Although this side of
19 the courtroom wants to talk about settlement, you don't want to
20 talk about settlement. You sure?
21         MR. BAKHOS: Not yet.
22         THE COURT: Can't do anything to entice you to sit
23 down and talk? It doesn't cost you anything.
24         MR. BAKHOS: I mean, we don't have a problem engaging
25 in informal discussions.

```
 1            THE COURT:  No, you need a third party.  You need
 2   someone else.  Those informal talks aren't going to do it, I'm
 3   telling you.  They really aren't.  You have an excellent
 4   magistrate judge, Judge Facciola.  You should seriously think
 5   about picking up the phone and calling him and talking to him.
 6   But it takes the three of you.  You can't just go in and talk to
 7   him yourself.
 8            I'll sign the order putting in place the discovery.  You
 9   can talk and let discovery go on.  At least let the magistrate
10   judge know what you're seeking, what's the basis for your claim.
11   These aren't frivolous claims.  These are very serious
12   allegations here.
13            There's been a lot of litigation in this court up to
14   this point, and there's going to be a lot more litigation,
15   and I'm sure it's very expensive litigation.  So I'm just trying
16   to suggest some reasons why people want to sit down and say
17   "time out" for 30 days and let's talk and see if we can settle
18   the case.  Any flexibility in that $30 million addendum?
19            MR. BAKHOS:  I'm sure there is some flexibility, of
20   course.
21            THE COURT:  Sure, there is.  Sure, there is.
22            MR. BAKHOS:  I can discuss with counsel and can see
23   whether --
24            THE COURT:  All right.  You have an excellent judge in
25   place.  All you need to do is telephone him and carve out some
```

time to sit down and talk with him and see how far you get. If you settle the case, you would be the first one to say, you know, Judge, I never thought we could settle this case. People say that all the time. If you want some discovery too, I can appreciate that as well.

All right. I'll see you folks next year sometime.

MR. GONDELMAN: Thank you, Your Honor.

MR. BAKHOS: Thank you, Your Honor.

THE COURT: Is there a need to schedule another status hearing earlier than September? Maybe there is. There's been a lot of litigation. Maybe I should bring you back. I don't want you to get too far away from me. Let me bring you back in March or so. By that time, you'll have some discovery, and we can at least talk about where the case is, whether or not there's a change in attitude about settlement.

You know, it doesn't have to be a magistrate judge. We have some excellent lawyers who participate in the ADR programs. They settle cases all the time. Maybe there's someone out there whom you all can agree on if you want to try to mediate this case. That's fine.

I'm going to be in an extended trial just about every day for the month of March, so I'm going to just pick a date. March 14 at 12:30, just for a status hearing, brief status hearing. We'll talk about what's taking place.

MR. GONDELMAN: March 14, Your Honor?

```
 1          THE COURT:  March 14 at 12:30.  Is that a bad date or
 2   a bad time for anybody?
 3          MS. HANDMAN:  That's fine, Your Honor.
 4          THE COURT:  Let's come back the 21st of March the
 5   following week.  I'm still going to be in trial.  12:30 on the
 6   21st of March?  Is that all right?
 7          MR. GONDELMAN:  That's fine.
 8          THE COURT:  All right.  Good luck.  Good to see
 9   everyone.  We'll talk again in March.  Keep the date on
10   September, though.  Keep that date on your calendar because
11   that's when we're going to come back and talk about where the
12   case goes from at that point.  All right.
13       I'm not referring any discovery disputes to anyone; I'm
14   going to resolve them myself.  I'm just making the magistrate
15   judge available for settlement discussions.  That's all I'm
16   doing.  All right.  Thank you.
17          (Proceedings adjourned at 12:31 p.m.)
```

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

_____
BRYAN A. WAYNE

Bryan A. Wayne, RPR, CRR
Official Court Reporter