# EXHIBIT A

## Gondelman, Larry

| | |
|---|---|
| **From:** | Bassel Bakhos [bb@wamcd.com] |
| **Sent:** | Monday, January 29, 2007 3:22 PM |
| **To:** | Gondelman, Larry; Husbands, Amber; William McDaniel |
| **Cc:** | Handman, Laura |
| **Subject:** | RE: Benz v. Examiner: Meet and confer topics |

Larry:

We will address the issues you raised in writing by the end of the day.  Let us know if you wish to have a telephone conference tomorrow afternoon after receiving our written response.


Bassel Bakhos
Law Offices of William Alden McDaniel, Jr.
118 West Mulberry Street
Baltimore, MD 21201
410.685.3810 (phone)
410.685.0203 (fax)
443.668.3811 (mobile)
This message contains information that is privileged, confidential, and exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by collect telephone at 410.685.3810; return the original message to us at 118 West Mulberry Street, Balt., MD 21201 via the U.S. Postal Service; and please do not permit any dissemination or distribution of this communication other than to the intended recipient. Thank you.


---

**From:** Gondelman, Larry [mailto:Larry.Gondelman@ppsv.com]
**Sent:** Monday, January 29, 2007 3:16 PM
**To:** Husbands, Amber; William McDaniel; Bassel Bakhos
**Cc:** Handman, Laura
**Subject:** RE: Benz v. Examiner: Meet and confer topics

Bill and Bassel:
In addition to the items identified by Amber, which I adopt, I have the following comments:

1.    Interrogatories 4 and 5 and Document Requests 2, 3, 6 and 7.  These seek financial records that relate to Plaintiff's allegation that her expenses exceed her income.  (paragraph 62 of the complaint).  Plaintiff made these allegations in the context of explaining her acceptance of money from Mr. Bisney.  Thus, they are relevant.  We cannot be expected to simply accept the fact that her expenses exceed her income as true simply because she says so.  Moreover, the extent to which the expenses exceed her income is relevant as a possible explanation for her conduct with Mr. Bisney.

2.    Interrogatories 3 and 10.  Plaintiff has put the issue of herpes and her sexual conduct in issue by alleging that she is not a slut and that only her mother and doctor know that she has herpes.  These interrogatories seek information relevant to assessing the veracity of her allegations.

3.    Interrogatories 6 and 9 and Document Request 12.  These interrogatories and document request seek information about gifts and vacations.  Plaintiff alleges that she received many gifts from Mr. Bisney and that she took vacations with him at his expense.  She also alleges that they were merely friends and that there was not a romantic relationship.  These allegations warrant questions about whether she accepts gifts and money from and vacations with other men with whom she is not romantically involved.

In addition, I am waiting for a response from Bassel to my letter of last Friday about the production of documents and the scheduling of a photographer to photograph the gifts that Mr. Bisney gave to Ms. Benz.

Thank you.

Larry

**Larry S. Gondelman**
**Powers Pyles Sutter & Verville, PC**
**1875 Eye Street, NW**
**12th Floor**
**Washington, DC  20006**
**202.872.6723**

---

**From:** Husbands, Amber [mailto:amberhusbands@dwt.com]
**Sent:** Monday, January 29, 2007 12:45 PM
**To:** William McDaniel; Bassel Bakhos
**Cc:** Handman, Laura; Gondelman, Larry
**Subject:** Benz v. Examiner: Meet and confer topics

Bill and Bassel:

In preparation for our meet and confer this afternoon, here is a list of items we would like to discuss:

Underline_First, there are a number of requests that you objected to as irrelevant.  Please explain why these requests are irrelevant, as we believe they are directly relevant to Plaintiff's damage claims:

- Medical and psychological records (document requests 32 through 35, and interrogatories 2 and 3): Plaintiff claims damages for mental anguish in her Amended Complaint and in her interrogatory responses (nos. 9 and 10).  She identifies physical symptoms of her mental anguish and exacerbation of past illness.  Medical and psychological records - both before and after the Column - are relevant to her damage claims.

- Income tax records (document requests 5 through 7):  Plaintiff claims damages for financial loss, injury to reputation, as well as loss of current and future business opportunities.  Is Plaintiff conceding that she will not seek damages for these claimed losses?

- Disability benefits (document request 8): this is relevant to Plaintiff's claims that she has suffered physical symptoms of mental anguish and exacerbation of past illness.

Second, there are discovery requests to which you did not fully respond:

- Interrogatories relating to damage claim (9 through 12): there is no itemized list of damages claimed by Plaintiff, or calculation of how Plaintiff arrived at her claimed damage amount.

1/29/2007

- Documents related to Ms. Benz's subscription to JDate (document request no. 20): these documents are in Ms. Benz's possession, as no one else can access her profile.  Please provide us with a copy of her JDate profile.

- Documents related to Plaintiff's calendar, phone records, and credit card receipts (doc requests 19, 22, 24): please confirm that Ms. Benz has no documents related to these requests.

- Emails with Mr. Bisney (document request no. 18): Plaintiff did not produce emails she sent to Mr. Bisney, only those received from him.  Does she possess the emails sent by her to Mr. Bisney?

- Pictures (document request no. 10): We are aware of other pictures of Ms. Benz with Mr. Bisney or taken by Mr. Bisney that have not been produced.  Is Ms. Benz in possession of any other pictures that are responsive to this request?


<u>Third</u>, you do not provide a privilege log for those documents for which you claim attorney-client or work-product privilege.  Please produce this privilege log.  Alternatively, we may agree that requests on both sides be deemed to exclude all attorney client privilege or work product post-complaint.

We look forward to speaking with you at 3:30 today.

Amber L. Husbands
Davis Wright Tremaine LLP
1500 K Street N.W., Suite 450
Washington, D.C. 20005
(202) 508-6619
(202) 508-6699 (fax)

1/29/2007

# EXHIBIT B

LAW OFFICES OF
# WILLIAM ALDEN McDANIEL, JR.
118 WEST MULBERRY STREET
BALTIMORE, MARYLAND 21201-3606

WILLIAM ALDEN McDANIEL, JR.†
BASSEL BAKHOS†♦

†ALSO ADMITTED IN
  THE DISTRICT OF COLUMBIA

♦ALSO ADMITTED IN NEW JERSEY

AREA CODE 410
685-3810
TELECOPIER
685-0203

E-MAIL:
wam@wamcd.com
bb@wamcd.com

February 7, 2007

**BY ELECTRONIC TRANSMISSION .pdf**
**Larry.Gondelman@ppsv.com**

Larry S. Gondelman, Esquire
Powers, Pyles, Sutter & Verville, P.C.
Twelfth Floor
1875 Eye Street, N.W.
Washington, D.C. 20006-5409

Re:    *Kathleen A. Benz v. The Washington Newspaper Publishing Company,*
       *and John F. Bisney*, Civil Action No. 1:05cv01760 (DDC)(Sullivan, J.)

Dear Mr. Gondelman:

        This letter responds to your January 29, 2007, electronic mail message regarding
certain alleged deficiencies in Ms. Benz's responses to your client's interrogatories and requests
for production of documents.

        You first argue that Interrogatory Nos. 4 and 5 and Request For Production Nos.
2, 3, 6, and 7 seeking Ms. Benz's financial records are relevant because you "cannot be expected
to simply accept the fact that her expenses exceed her income as true simply because she says
so," and "the extent to which the expenses exceed her income is relevant as a possible
explanation for her conduct with Mr. Bisney." First, these requests are vague and overbroad.
Second, Ms. Benz does not understand what you mean by "a possible explanation for her
conduct with Mr. Bisney." There does not seem to be any relevance of evidence regarding this
matter to any claim or defense in this case.

        You next argue that Interrogatory Nos. 3 and 10, seeking information regarding
Ms. Benz's contraction of herpes and every individual she has engaged in sexual intercourse,
oral sexual contact, or any form of sexual or genital touching are relevant to assessing the
veracity of Ms. Benz's allegations that she is not a slut and that only her mother and doctor know
that Ms. Benz has herpes. You claim that Ms. Benz placed the issue of her herpes and sexual

LAW OFFICES OF
WILLIAM ALDEN MCDANIEL, JR.

Larry S. Gondelman, Esquire
February 7, 2007
Page 2

conduct in issue by alleging she is not a slut and that only her mother and doctor know Ms. Benz
has herpes.

    As an initial matter, the allegations relating to Ms. Benz's contraction of herpes
were related only to Ms. Benz's claim for Invasion Of Privacy—Intrusion Upon Seclusion,
Claim Two of the Second Amended Complaint, against Mr. Bisney. Judge Sullivan dismissed
this claim November 21, 2006, in open court. Therefore, whether or not Ms. Benz has herpes
has no relevance to the subject matter of the claim or defense of any party to this case.

    Interrogatory No. 10, requesting Ms. Benz's sexual history since 1998, is a blatant
attempt to embarrass and humiliate Ms. Benz in the hopes that she will drop her claims against
Mr. Bisney. Ms. Benz included the averment that she is not a slut in response to Mr. Bisney
posting on the World Wide Web in which Mr. Bisney commented on Ms. Benz's alleged
relationship with Mr. Kulkis as follows: "Finally, a relationship in which Kulkis isn't the sluttier
one." Second Amended Complaint ¶ 131. In the Answer Of Defendant John F. Bisney To
Second Amended Complaint, Mr. Bisney denies posting this comment. Mr. Bisney has not
interposed the defense of truth to this allegation and therefore Ms. Benz's sexual encounters have
no relevance to the subject matter of the claim or defense of any party to this case.

    You next argue that Interrogatory Nos. 6 and 9 and Request For Production No.
12, seeking information regarding gifts Ms. Benz has received and vacations Ms. Benz has taken,
are relevant to probe whether Ms. Benz accepts gifts and vacations from other men with whom
she is not romantically involved. Whether Ms. Benz has accepted gifts or taken vacations with
other men with whom she is not romantically involved has no relevance to any claim or defense
in this case.

                          Very truly yours,

                          /s/ *Bassel Bakhos*

                          Bassel Bakhos

BB/mmi
cc:   Laura R. Handman, Esquire (by electronic transmission .pdf laurahandman@dwt.com)
      Amber L. Husbands, Esquire (by electronic transmission .pdf amberhusbands@dwt.com)
Gondelman L11.doc

**EXHIBIT C**

**POWERS**
**PYLES**
**SUTTER &**
**VERVILLE PC**
ATTORNEYS AT LAW

1875 EYE STREET, NW
TWELFTH FLOOR
WASHINGTON, DC 20006

PHONE 202.466.6550
FAX 202.785.1756
www.ppsv.com

LARRY S. GONDELMAN

DIRECT: 202.872.6723
larry.gondelman@ppsv.com

February 20, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Bassel Bakhos
Law Offices of William Alden McDaniel
118 West Mulberry Street
Baltimore, MD 21201

      Re:  Benz v. The Washington Newspaper Publishing Company and John F.
          Bisney

Dear Mr. Bakhos:

      I am writing in response to your letter of February 7, 2007 regarding the
deficiencies in Ms. Benz's responses to my client's interrogatories and document
requests.  I would like to clarify for you the relevance of our requests in an attempt to
resolve these issues without the necessity of filing a motion to compel.

      The first area of dispute involves Revised Interrogatory No. 1 and Request for
Production of Documents No. 1.  These discovery requests seek information about your
client's medical conditions.  I adopt all of the arguments contained in the Motion to
Compel filed by the Washington Examiner.  However, Mr. Bisney has an additional basis
for seeking this information.  Ms. Benz claims in paragraph 47 of the Second Amended
Complaint that she told Mr. Bisney that stress exacerbates her various medical
conditions.  In addition, paragraph 268 alleges that "[w]hen he committed the acts and
omissions attributed to him…, defendant John F. Bisney knew that plaintiff, Kathleen A.
Benz, by virtue of her illness, was peculiarly susceptible to emotional distress."  She has
also sued Mr. Bisney for intentional infliction of emotional distress.  It can reasonably be
expected that plaintiff will argue that Mr. Bisney's actions were intended to and did
exacerbate her medical conditions.  Indeed, plaintiff seeks punitive damages from Mr.
Bisney for these actions.  Therefore, Mr. Bisney is entitled to explore the nature and
extent of her medical conditions before and after the acts that form the basis of her
complaint.

POWERS, PYLES, SUTTER & VERVILLE PC

Bassel Bakhos
February 20, 2007
Page 2 of 3

The second area of dispute involves Revised Interrogatories Nos. 4 and 5 and Requests for Production of Documents Nos. 2, 3, 6, and 7. This discovery is directed at plaintiff's monthly income and expenses and her assets. These are issues that plaintiff has put into issue in the Second Amended Complaint. Paragraph 62 specifically states that plaintiff's income and assets were insufficient to meet her expenses. She offers this statement as justification for accepting Mr. Bisney's offer to help her pay her expenses (paragraphs 63 and 67). On this ground alone, Mr. Bisney is entitled to discover the basis for her statements as it relates to her credibility. In addition, it relates to the essence of plaintiff's complaint about the Internet article and the article in the Washington Examiner. Plaintiff complains that these articles portray her as a woman who dates older men for their money. If plaintiff's statement about her income being insufficient to meet her expenses is true, we are certainly entitled to discovery on the issue as it suggests that she does indeed have a motivation to date wealthy men.

The third area of dispute involves Revised Interrogatories Nos. 6 and 9 and Request for Production of Documents No. 12. These items seek information about gifts given to plaintiff and vacations plaintiff has taken with other men. Again, plaintiff has herself put these facts at issue in her Second Amended Complaint. Paragraph 20 of the Complaint alleges that Ms. Benz accepted gifts from Mr. Bisney "as she would from any other person whom she considered a friend." On this basis alone, the information is relevant. If Ms. Benz has not accepted such gifts (including cash and paid vacations) from other men with whom she is not romantically involved, her credibility would be undermined. Moreover, if she has only accepted such gifts in the course of "romantic" relationships, it would undermine her credibility when she asserts that her relationship with Mr. Bisney was not romantic.

The final dispute relates to Ms. Benz's sexual history. Contrary to your assertion, Mr. Bisney is not seeking this information to embarrass and humiliate Ms. Benz. Ms. Benz has asserted that one of the articles claims that she is a slut. She has affirmatively declared in paragraph 132 of the Second Amended Complaint that she is not a slut. While it is true that Mr. Bisney denies that he authored that article, that does not end the matter. Mr. Bisney specifically denied knowledge in his Answer of whether Ms. Benz is a slut or not. Without such knowledge, he cannot offer the affirmative defense of the truth of the statement. Therefore, he is clearly entitled to discover whether the statement is true or not in order to make the determination of whether he can also assert truth as a defense.

With respect to all of this information, we of course remain willing to enter into an appropriate Protective Order. In addition, I am willing to entertain any proposals on

# POWERS, PYLES, SUTTER & VERVILLE PC

Bassel Bakhos
February 20, 2007
Page 3 of 3

narrowing the scope of these requests.  Please let me know of your position on these matters as soon as possible.

Sincerely,

Larry S. Gondelman

cc:  Laura R. Handman
     Amber Husbands

# EXHIBIT D

**POWERS PYLES SUTTER & VERVILLE PC**
ATTORNEYS AT LAW

1875 EYE STREET, NW
TWELFTH FLOOR
WASHINGTON, DC 20006

PHONE 202.466.6550
FAX 202.785.1756
www.ppsv.com

LARRY S. GONDELMAN

DIRECT: 202.872.6723
larry.gondelman@ppsv.com

February 20, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Bassel Bakhos
Law Offices of William Alden McDaniel
118 West Mulberry Street
Baltimore, MD 21201

> Re: Benz v. The Washington Newspaper Publishing Company and John F.
> Bisney

Dear Mr. Bakhos:

I am writing to you about two discovery issues. As you know, I wrote you a letter on February 20, 2007 advising you of our position on several inadequate responses by your client to our discovery requests. I informed you that I needed a response in order to assess the necessity of filing a motion to compel.

As you also know, the Washington Examiner has already filed a motion to compel, and a briefing schedule has been set by the Court. Since the Court will soon be addressing discovery disputes, I am anxious to file any necessary motion as soon as possible. Unfortunately, your lack of a response prevents me from certifying that we have conferred on the issues that I have raised. As this is not the first time that your office has delayed responding to defendants' attempts to discuss discovery disputes, I am forced to take the position that your lack of a response indicates that you do not agree with our position and that, accordingly, I can certify that we have been unable to resolve the disputes. If I am mistaken in this regard, please advise me immediately.

The second issue relates to the Notice of Deposition served by the Washington Examiner for your client's deposition. Under Rule 30, there is a limit of seven hours for a deposition. This rule applies in multi-defendant cases. The advisory committee notes that "[i]n multi-party cases, the need for each party to examine the witness may warrant additional time..." The advisory committee also notes that "in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the

POWERS, PYLES, SUTTER & VERVILLE PC

Bassel Bakhos
February 23, 2007
Page 2 of 2

court."  Given the very different issues presented by the claims against the Washington Examiner and Mr. Bisney, it can reasonably be expected that seven hours will not be sufficient for each defendant to examine Ms. Benz.  I have conferred with the attorneys for the Washington Examiner and we believe that each defendant will need one seven hour day.  We would like to know of your position on this issue as soon as possible so that it can be addressed at the same time as the other discovery disputes if necessary.

Sincerely,

Larry S. Gondelman

cc: Laura R. Handman
Amber Husbands

**EXHIBIT E**

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

KATHLEEN A. BENZ,                          )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )
                                           )      Civil Action No. 1:05-cv-1760 (EGS/JMF)
THE WASHINGTON NEWSPAPER                   )      Settlement Conference January 24, 2007
PUBLISHING COMPANY, *et al.,*              )
                                           )
                Defendants.                )
_____  )

**RESPONSE OF PLAINTIFF, KATHLEEN A. BENZ, TO
DEFENDANT JOHN BISNEY'S REVISED FIRST SET OF INTERROGATORIES**

        Plaintiff, Kathleen A. Benz, responds as follows to Defendant John Bisney's

Revised First Set Of Interrogatories.

        **GENERAL RESPONSE**:  The specific wording in the following responses is

that of counsel for plaintiff.

        Plaintiff objects to the Interrogatories to the extent that the Interrogatories attempt

to impose on plaintiff obligations that differ from those imposed by the FEDERAL RULES OF CIVIL

PROCEDURE on a party responding to interrogatories.

        Plaintiffs object to providing privileged information or information subject to

protection as trial preparation material in response to defendant's Interrogatories.

## RESPONSES

**INTERROGATORY NO. 1**: Identify all medical personnel from whom you have sought treatment for the various conditions identified in the First Amended Complaint for the period of January 1, 2000 through the date of your response to these Interrogatories and set forth the nature of the treatment sought from each person identified.

**ANSWER TO NO. 1**: I object to this Interrogatory on the ground that it seeks information not relevant to the subject matter of the claim or defense of any party to this action.

**INTERROGATORY NO. 2**: Identify all occasions when Defendant Bisney observed you suffer seizures as alleged in paragraph 45, 47, 48, 49, 50, 56, 57, and 58 of the Second Amended Complaint.

**ANSWER TO NO. 2**: Mr. Bisney was aware that I suffered from seizures because I told Mr. Bisney in 2002 that I suffered from seizures, and Mr. Bisney saw me have seizures on several occasions at my apartment and in public. I cannot recall the specific dates and times of all of these occasions. I do recall the following occasions when Mr. Bisney witnessed me suffer seizures.

On March 27, 2004, Mr. Bisney and I were on vacation in Miami, Florida, and I had a seizure in my hotel room. Mr. Bisney witnessed this seizure and accompanied me to Avenutura Hospital And Medical Center, 20900 Biscayne Boulevard, Aventura, Florida 33180, 1.305.682.7000.

In late 2004, Mr. Bisney took me to Holy Cross Hospital, 1500 Forest Glen Road, Silver Spring, Maryland 20910, 1.301.754.7000, after I suffered a seizure. In or around June, 2004, Mr. Bisney brought my sister-in-law, Diana Benz, and my niece and nephew to Holy Cross Hospital to visit me after I suffered a seizure. In addition, I was having dinner with Mr. Bisney and my mother at Filamena's in Georgetown when I suffered a seizure. I cannot recall

2

the date of this incident.  In 2005, Mr. Bisney saw me suffer a seizure while we were having

dinner at the Capital Grille in Washington, D.C.

On both of my vacations to Jamaica with Mr. Bisney, in July, 2004, and in late

April, 2005, Mr. Bisney witnessed me have seizures in my hotel room.

On numerous occasions when we were together, Mr. Bisney told me that I was

having a seizure or that he thought I was having a seizure.  On most of these occasions I was not

having a seizure.  Mr. Bisney also told me on numerous occasions that he thought that stress was

increasing the frequency of my seizures and that I should try to relax and calm down.

**INTERROGATORY NO. 3**:  Identify the circumstances under which you
contracted herpes, including from whom you contracted it and when.

**ANSWER TO NO. 3**:  I object to this Interrogatory on the ground that it seeks

information not relevant to the subject matter of the claim or defense of any party to this action.

**INTERROGATORY NO. 4**:  List all month expenses you incurred and all
monthly income you received for the time period of January 1, 2000 through the date of your
response to these Interrogatories.

**ANSWER TO NO. 4**:  I object to this Interrogatory on the ground that it seeks

information not relevant to the subject matter of the claim or defense of any party to this action.

I further object to this Interrogatory on the ground that it is vague, overbroad, and burdensome in

that it requires me to list all the monthly expenses that I have incurred over the past six (6) years.

**INTERROGATORY NO. 5**:  List all assets that you owned individually or
jointly with any person for the time period of January 1, 2000 through the date of your response
to these Interrogatories.

**ANSWER TO NO. 5**:  I object to this interrogatory on the ground that it seeks

information not relevant to the subject matter of the claim or defense of any party to this action.

3

I further object to this Interrogatory on the ground that it is vague, overbroad, and burdensome in

that it requires me to list all assets that I have owned in the past six (6) years.

**INTERROGATORY NO. 6:** For the time period of January 1, 1990 to the date
that you respond to these Interrogatories, identify all persons from whom you have received gifts
with a value in excess of $100.00, including the nature of the gifts, the dates you received the
gifts and the value of said gifts.

**ANSWER TO NO. 6:** I object to this Interrogatory on the ground that it seeks

information not relevant to the subject matter of the claim or defense of any party to this action.

I further object to this Interrogatory on the ground that it is vague, overbroad, and burdensome in

that it requires me to identify all gifts that I have received valued at over One Hundred Dollars

($100.00) in the past sixteen (16) years. Subject to these objections, please see my response to

Interrogatory No. 8, which I incorporate herein by reference.

**INTERROGATORY NO. 7:** Identify all concerts, dinners, theater shows, and
vacations that you went to with [*sic*] Defendant Bisney.

**ANSWER TO NO. 7:** In or around 2000, I went to a Cher concert with Mr.

Bisney at the MCI Center (now the Verizon Center), 601 F Street, N.W., Washington, D.C.

20004, 1.202.628.3200. I do not recall attending any theater shows with Mr. Bisney. I have

gone out to dinner with Mr. Bisney on many occasions in the Washington, D.C. metropolitan

area, but I cannot recall the exact dates or locations of these dinners.

I went on vacation with Mr. Bisney four (4) times. In July, 2004, Mr. Bisney and

I spent three (3) to four (4) days in Round Hill, Jamaica, and two (2) to three (3) days in another

section of Jamaica. In late April, 2005, Mr. Bisney and I spent seven (7) days in Round Hill,

Jamaica. Mr. Bisney and I traveled to Mexico over Christmas and New Years, 2003 through

2004.  Mr. Bisney and I spent traveled to Miami, Florida March 25, 2004, through March 28, 2004.

**INTERROGATORY NO. 8**:  Identify all gifts that you have received from Defendant Bisney.

**ANSWER TO NO. 8**:  I have received the following gifts from Mr. Bisney:

One pink mini-skirt, one teal mini-skirt, one black pleated skirt, and one white t-shirt from Heart Moon Star;

One Rafaella orange sweater;

One Karen Kane pink "ragged" shirt;

One pair of Wright Style white gauze pants;

One white gauze long-sleeved shirt, one pair of white gauze pants, and one white gauze tank top from Eloge;

One Karma-Highway white "tie-at-waist" blouse;

One pair of white pants with flowers, one pink sweater, and one pink and beige sweater from Sigrid Olsen;

One Casual Corner white pinstripe pant suit (pants and jacket);

One BCBG Maxazria black furry poncho;

One large green and tan tie-dyed scarf;

One globe paperweight and one silver earring and necklace set from Tiffany & Company;

One gold and silver chain necklace and matching hoop earrings from David Yurman;

One Louis Vuitton handbag;

One silver ring with diamond;

One silver necklace with ball;

One acrylic necklace with matching earrings;

One pink and orange bead necklace;

One choker necklace;

One green quartz and peridot necklace;

One bottle of Hugo Deep Red perfume; and

One Louis Vuitton scarf.

**INTERROGATORY NO. 9:** For the time period of January 1, 1990 to the date that you respond to these Interrogatories, identify all persons with whom you have gone on a vacation, describing where you went, how much the vacation cost, and who paid your expenses of the vacation.

**ANSWER TO NO. 9:** I object to this interrogatory on the ground that it seeks

information not relevant to the subject matter of the claim or defense of any party to this action.

Without waiving this objection, please see my response to Interrogatory No. 7, which I

incorporate herein by reference.

**INTERROGATORY NO. 10:** For the time period of January 1, 1998 through the date that you respond to these Interrogatories, state the number of individuals with whom you have engaged in sexual intercourse, oral sexual contact, or any form of sexual or genital touching.

**ANSWER TO NO. 10:** I object to this Interrogatory on the ground that it seeks

information not relevant to the subject matter of the claim or defense of any party to this action.

**INTERROGATORY NO. 11:** Describe in detail the nature of your relationship with Gary Williams, including the time period during which you date Mr. Williams, the circumstances under which you first met him, the frequency of your social interaction with him, the activities that you and Mr. Williams engaged in, and the reason that you and Mr. Williams ceased dating one another.

**ANSWER TO NO. 11**:  I met Gary Williams in the fall of 2000.  Bob Novak,

Gary Williams, and I were riding in an elevator at CNN in Washington, D.C., and Mr. Novak

introduced me to Mr. Williams.  Mr. Williams gave me his business card, and we developed a

friendship.  Mr. Williams and I dated on and off from 2001 through 2004.  I saw Mr. Williams

approximately twenty (20) times over these three (3) years.  Most of the time we spent together

was going out to dinner.  I also attended several University Of Maryland men's basketball games

to show support for Mr. Williams.  Mr. Williams and I stopped seeing each other in 2004

because we grew apart and I began to realize that he did not have time to be involved in a serious

relationship.

**INTERROGATORY NO. 12**:  Describe in detail the nature of your relationship
with Paul Bosserman, including the time period during which you dated Mr. Bosserman, the
circumstances under which you first met him, the frequency of your social interaction with him,
the activities that you and Mr. Bosserman engaged in, and the reason that you and Mr.
Bosserman ceased dating one another.

**ANSWER TO NO. 12**:  I met Mr. Bosserman in approximately during the Spring

of 2004, when we both were on jury duty.  Mr. Bosserman told me he was a hair stylist and

encouraged me to make an appointment at his salon in Georgetown.  Several months after

meeting Mr. Bosserman I made an appointment to get my hair done at his salon.  Mr. Bosserman

and I briefly dated for three (3) months.  Over that time period I saw Mr. Bosserman

approximately thirty (30) times.  We went out to dinner, went to the movie theater, attended an

art show, and entertained guests at his home.  Mr. Bosserman and I broke up when I suggested

that Mr. Bosserman might need to get help for a drinking problem.  Mr. Bosserman and I still

talk by telephone once every couple of months.

**INTERROGATORY NO. 13**:  Describe in detail the nature of your relationship with Julian Epstein, including the time period during which you dated Mr. Epstein, the circumstances under which you first met him, the frequency of your social interaction with him, the activities that you and Mr. Epstein engaged in, and the reason that you and Mr. Epstein ceased dating one another.

**ANSWER TO NO. 13**:  I met Mr. Epstein in 1993 while working as deputy press secretary for Congressman Packard's office.  Congressman Packard's press secretary was dating Mr. Epstein at the time.  Mr. Epstein and I dated for a couple of months in 1995.  I saw Mr. Epstein approximately ten (10) times during this period and on each of those occasions we went out to dinner.  We both decided to end our relationship because we felt that we were better off as friends.  I still talk to Mr. Epstein frequently as he is a frequent guest on various CNN news programs.

**INTERROGATORY NO. 14**:  Describe in detail the nature of your relationship with John Daggitt, including the time period during which you dated Mr. Daggitt, the circumstances under which you first met him, the frequency of your social interaction with him, the activities that you and Mr. Daggitt engaged in, and the reason that you and Mr. Daggitt ceased dating one another.

**ANSWER TO NO. 14**:  I met Mr. Daggitt at his 40th birthday party in or around January, 1999.  I was introduced to Mr. Daggitt by a mutual friend, Jeff Hosley.  In or around February, 1999, Mr. Daggitt called me, and we began to date.  Mr. Daggitt and I dated for approximately six (6) months.  We saw each other two (2) to three (3) times during the week and on most weekends.  Mr. Daggitt and I would go out to dinner, go to the movies, and/or walk his dog.  Mr. Daggitt and I went to New Orleans, Louisiana for my birthday in May 1999, and to Lake Powell, Arizona in the fall of 1999.  Mr. Daggitt and I broke up because he decided to go back to his ex-girlfriend.  I do not see or speak to Mr. Daggitt anymore.

**INTERROGATORY NO. 15**: State whether you have ever met Mark Ein and, if so, describe the circumstances under which you met him and the nature and frequency of any interaction you had with him subsequent to meeting him.

**ANSWER TO NO. 15**: I met Mr. Ein in or around January, 2003, at an airport while waiting for a connecting flight back to Reagan National Airport. I was returning from a trip to Mystique, a private island off the coast of Barbados. I cannot recall the name of the airport where I met Mr. Ein. Mr. Ein and I started talking in the airport and exchanged contact information. My flight was delayed so I cancelled the driver I had previously arranged to take me from the airport to my home. Mr. Ein lived a couple of blocks from my home and I accepted Mr. Ein's offer to have his driver take me back to my home. Mr. Ein and I developed a friendship but have never been involved beyond that. I went to a dinner at the Kennedy Center with Mr. Ein in 2003 and also to a Washington Wizards basketball game and dinner. I still see Mr. Ein at functions for the Hoop Dreams Scholarship Fund but otherwise do not see or speak to him.

**INTERROGATORY NO. 16**: State whether you have ever met Congressman Pete Sessions and, if so, describe the circumstances under which you met him and the nature and frequency of any interaction you had with him subsequent to meeting him.

**ANSWER TO NO. 16**: I met Representative Sessions approximately six (6) years ago in 2000. I was introduced to Representative Sessions by a former press secretary who used to work for Representative Sessions. Representative Sessions is a friend of mine. We have dinner every couple of months.

**INTERROGATORY NO. 17**: State whether you have ever met John Sunnunnu [*sic*], Sr. and, if so, describe the circumstances under which you met him and the nature and frequency of any interaction you had with him subsequent to meeting him.

**ANSWER TO NO. 17**: I met Mr. Sununu in 1998 when he hosted the nightly debate program *Crossfire*. I performed all of Mr. Sununu's research assignments at CNN. After Mr. Sununu left CNN, I continued to assist him with research projects. Mr. Sununu and I developed a friendship through our working relationship. Mr. Sununu and I meet for dinner every couple of months.

**INTERROGATORY NO. 18**: State whether you have ever met Jonathan Ledecky and, if so, describe the circumstances under which you met him and the nature and frequency of any interaction you had with him subsequent to meeting him.

**ANSWER TO NO. 18**: I met Mr. Ledecky in 2003 at the Kennedy Center in Washington, D.C. I was having dinner with Mark Ein at the time. Mr. Ledecky and I volunteer for Hoop Dreams Scholarship Fund. I occasionally see Mr. Ledecky at Hoop Dreams functions but do not have any other interaction with him.

**INTERROGATORY NO. 19**: State whether you have ever met Kinky Friedman and, if so, describe the circumstances under which you met him and the nature and frequency of any interaction you had with him subsequent to meeting him.

**ANSWER TO NO. 19**: I met Kinky Friedman at a Merle Haggard concert May 28, 2004. I have not seen Mr. Friedman since that initial meeting.

**INTERROGATORY NO. 20**: If you have ever been a party to a court action, civil or criminal, provide a complete description of the nature of the action, the name and caption of the case, the court in which the case was filed, the case number assigned to the case, and the disposition of the case.

**ANSWER TO NO. 20**: On or about June 1, 2005, I filed a Complaint for a civil protection order and injunctive relief and Plaintiff's Emergency Motion For Temporary Restraining Order And Preliminary Injunction against John F. Bisney in the Superior Court For The District Of Columbia. The case was styled *Benz v. Bisney*, Case No. CA-05-4205. On June

8, 2005, Judge Henry F. Greene of the Superior Court For The District Of Columbia entered a Temporary Restraining Order against Mr. Bisney enjoining Mr. Bisney "from creating or maintaining, directly or through a third party, any internet website referring in any way to [me]." The Court further enjoined Mr. Bisney from blogging or participating in internet chat rooms regarding me. I entered into a Binding Settlement Agreement And Release with Mr. Bisney July 11, 2005.

My attorney in the case above, Mark Chalpin, Esquire, filed a small-claims action against me alleging that I owed him One Thousand Dollars ($1,000.00) in legal fees. Mr. Chalpin withdrew his complaint the day after filing it. I do not recall the case number or any other information regarding this case.

I have never been a party to a criminal action.

**INTERROGATORY NO. 21:** Identify the date on and circumstances under which you learned of each action allegedly committed by defendant Bisney upon which you have based your Complaint.

**ANSWER TO NO. 21:** In or around March 2004, I saw Mr. Bisney looking through electronic mail messages on my Blackberry device without my permission.

In late 2004, Mr. Bisney sent me an electronic mail message containing a fake news "article" stating that I sought friendships with wealthy men for the purpose of procuring money from them. This fake "article" stated that I had sought friendships with Gary Williams, Mark Ein, Julian Epstein, Pete Sessions, Paul Bosserman, John Sununu, Sr., John Daggit, and John F. Bisney for this purpose.

In May, 2005, my father, James C. Benz, informed me that he had located two (2) Internet websites, www.kathy-benz.net and www.kathy-benz.com, about me containing links to other Internet sites that dealt with negative character traits such as narcissism, self-importance,

11

arrogance, and haughtiness.  On May 9, 2005, I contacted the Internet host of these two (2)

websites, GoDaddy.com, and learned that the domain names listed above were registered to Mr.

Bisney.

On or about May 14, 2005, I learned of the existence of a third website,

www.kathy-benz.org, containing personal information and a picture of me in a bikini.  This

picture of me in a bikini was taken by Mr. Bisney while we were on vacation.  I again contacted

the Internet host, GoDaddy.com, and was told by an employee of GoDaddy.com that this Internet

site was registered to Mr. Bisney.

On May 16, 2005, I covered a press conference for CNN and noticed Mr. Bisney

pacing back and forth behind me and staring at me in a hostile way.  This made me feel

uncomfortable, scared, and fearful for my safety.  Later that day, Mr. Bisney sent me an

electronic mail message commenting on my physical appearance at this press conference.

On or about May 25, 2005, I learned that Mr. Bisney had gained access to my

apartment building and slipped a card under my apartment door.  Mr. Bisney had done this after I

told him not to communicate with me in any way.  Mr. Bisney gained access to my building even

after I informed the security guards May 21, 2005, not to allow Mr. Bisney to enter the building.

On July 17, 2005, I learned Mr. Bisney posted fake articles on the World Wide

Web containing the same defamatory statements about me as contained in the electronic mail

message and fake "article" Mr. Bisney sent me in late 2004.  I learned about this after Mark

Kulkis sent me an electronic mail message referring me to some of these fake articles.  This was

the first that I learned of these postings on the World Wide Web.

In July 2005, I learned that Mr. Bisney sent electronic mail messages to members of my family directing them to pornographic websites containing various versions of the fake article Mr. Bisney sent to me by electronic mail message in late 2004.

On July 23, 2005, I learned that Mr. Bisney forwarded a version of the fake article about me posted at http://pinksins.com to Claire Brinberg, one of my colleagues at CNN.

On July 31, 2005, I learned that Mr. Bisney sent me an electronic mail message purporting to be from Dr. Sanjay Gupta, medical correspondent for CNN.

On August 9, 2005, I learned that Mr. Bisney forwarded a version of the fake article about me posted at http://portland.indymedia.org/en/2005/05/317721.shtml#181029 to Tim Burger of Time Magazine.

On or about August 22, 2005, I learned that Mr. Bisney sent me a fake electronic mail message purporting to be from Phil Kent, CEO of Turner Broadcasting.

I learned that Mr. Bisney had posted my personal contact information in personal ads on the Internet site www.craigslist.com after several individuals responded to these ads in a sexually explicit manner. I began receiving these telephone calls at my home and work and electronic mail messages in or around August, 2005.

I am still learning about all of the acts of harassment and intimidation Mr. Bisney has committed against me. For example, on December 12, 2005, Mr. Bisney sent me an electronic mail message purporting to be from Bram Weinstein, a local radio sports personality. This electronic mail message contained the text of an article about University Of Maryland Basketball coach Gary Williams. Mr. Weinstein told me that he never sent this electronic mail message and that earlier that summer he had received some pictures of me in a social setting.

In addition, please see the First Declaration Under Penalty Of Perjury Of

Kathleen A. Benz attached as Exhibit A to the Memorandum Of Points And Authorities In

Support Of The Motion For Temporary Restraining Order Pursuant To Fed. Rule Civ. Pro. 65(b)

Of Plaintiff, Kathleen A. Benz, which I incorporate herein by reference.

**INTERROGATORY NO. 22:**  Identify all private facts that you allege have
been published by Defendant Bisney.

**ANSWER TO NO. 22:**  Mr. Bisney published my personal contact information,

including my home and work addresses, telephone numbers, and electronic mail address in the

"personals" section of the website www.craigslist.com.  I never authorized Mr. Bisney to post

any of my personal information on www.craigslist.com, or any other website.  As a result of Mr.

Bisney posting my personal information on www.craigslist.com, I received many sexually

explicit phone calls and electronic mail messages at work and at home.

**INTERROGATORY NO. 23:**  Identify each of the "hundreds of acts of
harassment and intimidation" engaged in by Defendant Bisney as alleged in ¶ 279 of the Second
Amended Complaint.

**ANSWER TO NO. 23:**  The acts of harassment and intimidation described in the

Second Amended Complaint began when I rebuffed Mr. Bisney's sexual and romantic advances

in late 2004 when Mr. Bisney sent me an electronic mail message containing a fake "article"

stating that I sought friendships from wealthy men for the purpose of procuring money from

them.  Mr. Bisney threatened to send this "article" to several media outlets unless I paid him

money.

After my father discovered two (2) Internet sites about me and I learned that Mr.

Bisney was the registered owner of those sites, I decided to file for a civil protection order

against Mr. Bisney.  For a complete accounting of this matter please see my response to

Interrogatory No. 20, which I incorporate herein by reference. Mr. Bisney's campaign of

harassment and intimidation against me continued even after we entered into a Binding

Settlement Agreement And Release which provided in part that "[t]he parties agree that they will

not intentionally contact or communicate with each other."

Within a mere eight (8) days of executing the Binding Settlement Agreement and

Release, defendant Bisney re-launched his campaign of defamation and harassment against me.

On July 19, 2005, Mr. Bisney posted a fake news article entitled "Politics And Porn Stars."

This fake news article stated that I was dating Mark Kulkis, the president and CEO of a company

that produces pornographic films. Mr. Bisney later modified this fake news article July 31,

2005. Mr. Bisney, since July, 2005, has sent electronic mail messages to my family directing

them to pornographic websites where the fake articles about me are available. On or about

August 9, 2005, Mr. Bisney sent me a fake electronic mail message purporting to be from Adam

Levine, one of my supervisors at CNN, with a link to a fake article about me on the Internet site

www.mediabistro.com. On or about August 22, 2005, Mr. Bisney sent me a fake electronic mail

message purporting to be from Mr. Phil Kent, CEO of Turner Broadcasting. This fake electronic

mail message referred to the fake articles that Mr. Bisney had posted all over the World Wide

Web about me and warned me that the behavior was frowned upon by CNN.

On July 31, 2005, Mr. Bisney sent me a fake electronic mail message purporting

to be from Dr. Sanjay Gupta, one of my colleagues at CNN. In or around August, 2005, Mr.

Bisney sent a fake electronic mail message in the name of Susan Kay to members of the board of

directors of the Hoop Dreams Scholarship Fund, an organization for which I volunteer. That

fake electronic mail message directed the directors to fake news articles about me. Furthermore,

since on or about August 25, 2005, Mr. Bisney has impersonated me by posting sexually explicit personal advertisements on the internet site www.craigslist.com.

On or about August 26, 2005, Mr. Bisney sent an electronic mail message to a weblog that addresses matters relating to Texas politics. In that message, Mr. Bisney stated that I was having an affair with Texas Representative Pete Sessions. Mr. Bisney knows that I have a friendship with Representative Sessions but knows that my relationship with Representative Sessions is no more than a friendship. In that same electronic mail message, Mr. Bisney stated that I have a romantic and sexual relationship with Kinky Friedman. Mr. Bisney also knows that I met Mr. Friedman on only one occasion and have had no romantic or sexual relationship whatsoever with him.

In addition to the acts of harassment and intimidation detailed in the Second Amended Complaint, Mr. Bisney has contacted or attempted to contact me directly and indirectly several times after May 10, 2005, by telephone and electronic mail. These communications constitute harassment and intimidation because on or before May 10, 2005, I told Mr. Bisney not to communicate with me in any way because I discovered that Mr. Bisney had accessed my electronic mail account without my permission and read my electronic mail messages without my permission.

Please see the First Declaration Under Penalty Of Perjury Of Kathleen A. Benz attached as Exhibit A to the Memorandum Of Points And Authorities In Support Of The Motion For Temporary Restraining Order Pursuant To Fed. Rule Civ. Pro. 65(b) Of Plaintiff, Kathleen A. Benz, which I incorporate herein by reference.

In addition, please see my response to Interrogatory No. 21, which I incorporate herein by reference.

**INTERROGATORY NO. 24:** Identify all persons who have any information about or knowledge of any of the allegations contained in the Second Amended Complaint.

**ANSWER TO NO. 24:** Please see my responses to Interrogatory Nos. 5, 13, and 14 of The Washington Examiner's Interrogatories To Plaintiff, which I incorporate herein by reference.

Respectfully submitted,

LAW OFFICES OF
  WILLIAM ALDEN McDANIEL, JR.


_____/s/_____
William Alden McDaniel, Jr.




_____/s/_____
Bassel Bakhos

118 West Mulberry Street
Baltimore, Maryland 21201
Tel.:  410.685.3810
Fax:  410.685.0203
E-Mail:  wam@wamcd.com
E-Mail:  bb@wamcd.com

*Lawyers for Plaintiff, Kathleen A. Benz*

Date:  December 20, 2006

Response to REVISED ROGS - Bisney.doc

17

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 20, 2006.

_____/s/_____
KATHLEEN A. BENZ

(Counsel hereby certifies that an original signed copy of the foregoing document is available for inspection at any time by the court or a party to this action.)

28 U.S.C. § 1746(2).

**EXHIBIT F**

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

KATHLEEN A. BENZ,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )
                                     )   Civil Action No. 1:05-cv-1760 (EGS/JMF)
THE WASHINGTON NEWSPAPER             )   Settlement Conference January 24, 2007
PUBLISHING COMPANY, *et al.*,        )
                                     )
        Defendants.                  )
_____)

**RESPONSE OF PLAINTIFF, KATHLEEN A. BENZ,
TO DEFENDANT JOHN F. BISNEY'S FIRST REQUEST
FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS**

Plaintiff, Kathleen A. Benz, by her undersigned lawyers, responds as follows

pursuant to FEDERAL RULE OF CIVIL PROCEDURE 34 to Defendant John F. Bisney's Request For

Production Of Documents And Tangible Things.

GENERAL RESPONSE: Plaintiff objects to that portion of Defendant John F.

Bisney's Request For Production Of Documents And Tangible Things entitled "Definitions and

Instructions" to the extent that section attempts to impose obligations upon plaintiff in excess of

the obligations imposed by the applicable FEDERAL RULES OF CIVIL PROCEDURE.

Plaintiff also objects to producing any documents or parts thereof that are called

for by Defendant John F. Bisney's Request For Production Of Documents And Tangible

Things which are privileged or subject to protection as trial preparation materials. Specifically,

plaintiff objects to producing communications between plaintiff and her attorneys and to

producing memoranda, notes, and other documents made by or for plaintiff's attorneys, which are responsive to these document requests.

Plaintiff will produce all responsive documents that are in her possession, custody, or control that are neither privileged nor subject to protection as trial preparation material or otherwise objected to, by making those documents available for inspection and photocopying during business hours upon reasonable notice at the Law Offices of William Alden McDaniel, Jr., 118 West Mulberry Street, Baltimore, Maryland, 21201, or by photocopying the documents at the expense of defendant John F. Bisney and sending them, also at the expense of defendant, to defendant's counsel, expenses payable in advance.

## RESPONSES

**REQUEST NO. 1:** All medical records relating to the treatment of you for herpes, epilepsy, migraines and "related symptoms" or related problems" as alleged in the Second Amended Complaint for the time period of January 1, 2000 through the date of your response to these Document Requests.

**RESPONSE TO NO. 1:** Ms. Benz objects to this Request on the grounds that it seeks documents not relevant to the subject matter of the claim or defense of any party to this action. Ms. Benz further objects to this Request on the ground that the term "relating to" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.

**REQUEST NO. 2:** All documents from any banks or other financial institutions, including brokerage or investment companies, including statements of accounts, check registers, cancelled checks, concerning any account at any bank, brokerage, trust or partnership in which you have an interest during the time period of January 1, 2000, through the date of your response to these Document Requests.

**RESPONSE TO NO. 2:** Ms. Benz objects to this Request on the grounds that it seeks documents not relevant to the subject matter of the claim or defense of any party to this action.

**REQUEST NO. 3:** All federal and state tax returns for the tax years 2000 through 2005.

**RESPONSE TO NO. 3:** Ms. Benz objects to this Request on the ground that it seeks documents not relevant to the subject matter of the claim or defense of any party to this action.

**REQUEST NO. 4:** Any notes, diaries, calendars, or any other writings or documents that relate in any way to Defendant John Bisney or any of the claims that you have made in this case.

**RESPONSE TO NO. 4:** Ms. Benz objects to this Request on the ground that it seeks documents protected from disclosure by the attorney-client privilege and attorney work-product doctrine. Ms. Benz further objects to this Request on the ground that the terms "any other writings" and "relate in any way" are vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision. Subject to these objections, Ms. Benz will produce all non-privileged documents that refer to John Bisney or the claims Ms. Benz has made in this case in her possession, custody, or control in the manner described above.

**REQUEST NO. 5:** Any photographs or images in any format, including digital, of Defendant Bisney or that was taken on any vacation or other social event that you attended with Defendant Bisney.

**RESPONSE TO NO. 5:** Ms. Benz will produce all documents responsive to this Request in her possession, custody, or control in the manner described above.

**REQUEST NO. 6:**  All documents relating in any way to your lease of your apartment for the time period of January 1, 2000 through the date of your response to these Document Requests.

**RESPONSE TO NO. 6:**  Ms. Benz objects to this Request on the grounds that it seeks documents not relevant to the subject matter of the claim or defense of any party to this action.  Ms. Benz further objects to this Request on the ground that the term "relating in any way" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.

**REQUEST NO. 7:**  All documents relating in any way to your ownership or leasing of any automobile for the time period of January 1, 2000 through the date of your response to these Document Requests.

**RESPONSE TO NO. 7:**  Ms. Benz objects to this Request on the grounds that it seeks documents not relevant to the subject matter of the claim or defense of any party to this action.  Ms. Benz further objects to this Request on the ground that the term "relating in any way" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.

**REQUEST NO. 8:**  All documents that refer or relate to or evidence any communication, oral or written, between you and Defendant Bisney.

**RESPONSE TO NO. 8:**  Ms. Benz objects to this Request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege and attorney work-product doctrine.  Ms. Benz further objects to this Request on the ground that the term "relate to" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.  Subject to these objections, Ms. Benz will produce all non-privileged documents that evidence her communications with John Bisney in her possession, custody, or control in the manner described above.

4

**REQUEST NO. 9:**  All gifts of any type received from Defendant Bisney.

**RESPONSE TO NO. 9:**  Ms. Benz will produce all gifts of any type received from Defendant Bisney by making those gifts available for review and inspection during business hours upon reasonable notice at the Law Offices of William Alden McDaniel, Jr., 118 West Mulberry Street, Baltimore, Maryland, 21201.

**REQUEST NO. 10:**  All documents that refer or relate in any way to Defendant Bisney.

**RESPONSE TO NO. 10:**  Ms. Benz objects to this Request on the ground that it seeks documents protected from disclosure by the attorney-client privilege and attorney work-product doctrine.  Ms. Benz further objects to this Request on the ground that the term "relate in any way" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision  Subject to these objections, Ms. Benz will produce all non-privileged documents that refer to John Bisney in her possession, custody, or control in the manner described above.

**REQUEST NO. 11:**  All documents that refer or relate to or evidence in any way money that you received from Defendant Bisney for any purpose.

**RESPONSE TO NO. 11:**  Ms. Benz objects to this Request on the ground that it seeks documents protected from disclosure by the attorney-client privilege and attorney work-product doctrine.  Ms. Benz further objects to this Request on the ground the terms "relate to ... in any way" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.  Subject to these objections, Ms. Benz will produce all non-privileged documents evidencing money that she has received from John Bisney in her possession, custody, or control in the manner described above.

**REQUEST NO. 12:**  All documents that refer or relate to or evidence in any way money that you have received from individual [*sic*] other than an employer for any purpose.

**RESPONSE TO NO. 12:**  Ms. Benz objects to this Request on the ground that it seeks documents not relevant to the subject matter of the claim or defense of any party to this action.  Ms. Benz further objects to this Request on the grounds that the terms "relate to" and "evidence in any way" are vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.

**REQUEST NO. 13:**  All documents that refer or relate to or evidence any communication, oral or written, between you and any person other than your attorney regarding Defendant Bisney.

**RESPONSE TO NO. 13:**  Ms. Benz objects to this Request on the ground that it seeks documents protected from disclosure by the attorney work-product doctrine.  Ms. Benz further objects to this Request on the ground that the term "relate to" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.  Subject to these objections, Ms. Benz will produce all documents that evidence the requested communications in her possession, custody, or control in the manner described above.

**REQUEST NO. 14:**  All documents that refer or relate to the press conference referred to in ¶ 143 of the Second Amended Complaint.

**RESPONSE TO NO. 14:**  Ms. Benz objects to this Request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege and attorney work-product doctrine.  Ms. Benz further objects to this Request on the ground that the term "relate to" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.  Subject to these objections, Ms. Benz will produce all non-

privileged documents referring to the June 14, 2005, press conference give by Mary Carey in her possession, custody, or control in the manner described above.

**REQUEST NO. 15:**  All documents that refer to or relate to any communications you received as alleged in ¶ 157 of the Second Amended Complaint.

**RESPONSE TO NO. 15:**  Ms. Benz objects to this Request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege and attorney work-product doctrine.  Ms. Benz further objects to this Request on the ground that the term "relate to" is vague, overbroad, and burdensome in that it is not possible to identify such documents with any precision.  Subject to these objections, Ms. Benz will produce all non-privileged documents that evidence communications from individuals responding to personal ads posted in the name of Ms. Benz on www.craigslist.com in her possession, custody, or control in the manner described above.

Respectfully submitted,

LAW OFFICES OF
  WILLIAM ALDEN McDANIEL, JR.


*/s/ William Alden McDaniel, Jr.*
William Alden McDaniel, Jr.
Bar No. 7152

*/s/ Bassel Bakhos* _____
Bassel Bakhos
Bar No. 489697

118 West Mulberry Street
Baltimore, Maryland 21201
Tel.:  410.685.3810
Fax:  410.685.0203
E-Mail:  wam@wamcd.com
E-Mail:  bb@wamcd.com

*Lawyers for Plaintiff,*
  *Kathleen A. Benz*


Date:  December 11, 2006

Response to RFD - Bisney.doc

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHLEEN A. BENZ | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) |
| | ) |
| THE WASHINGTON NEWSPAPER | ) Civil Action No. 1:05cv1760(EGS)(JMF) |
| PUBLISHING COMPANY, LLC | ) |
| | ) Next Event: |
| and | ) Status Conference:  March 21, 2007 |
| | ) |
| JOHN F. BISNEY | ) |
| | ) |
| **Defendants.** | ) |

## [PROPOSED] ORDER

Upon consideration of Defendant John F. Bisney's Motion to Compel, the

memorandum in support thereof, and any opposition thereto, it is hereby:

**ORDERED** that Defendant's Motion to Compel is granted and Plaintiff is

ordered to fully respond to Defendant Bisney's Interrogatory Nos. 1, 4, 5, 6, 9 and 10 and

Defendant Bisney's Request for Production of Documents and Tangible Things Nos. 1, 2,

3, 6, 7, and 12.  Further, Plaintiff is ordered to execute releases, provided by Defendant,

for her medical records, income tax records, and banking and financial institution

records.

Dated: _____, 2007

_____
United States District Judge
Emmet G. Sullivan