**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATHLEEN A. BENZ | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE WASHINGTON NEWSPAPER | ) Civil Action No. 1:05cv1760(EGS)(JMF) |
| PUBLISHING COMPANY, LLC | ) |
| | ) Next Event: |
| and | ) Status Conference:  June 21, 2007 |
| | ) |
| JOHN F. BISNEY | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MOTION OF JOHN F. BISNEY TO DISMISS
THE CROSS-CLAIM OF DEFENDANT THE
WASHINGTON  NEWSPAPER PUBLISHING COMPANY, LLC**

Defendant John F. Bisney moves this Honorable Court pursuant to Federal Rule

of Civil Procedure 12(b) to dismiss the Cross-Claim filed against him by The Washington

Newspaper Publishing Company, LLC, for failure to state a claim upon which relief can

be granted.  Defendant is filing a Memorandum of Points and Authorities in Support of

Motion of John F. Bisney to Dismiss The Cross-Claim of Defendant The Washington

Newspaper Publishing Company, LLC, along with this Motion.

1

2

Respectfully submitted,

_____
/s/Larry S. Gondelman
(D.C. Bar No. 950691)
1501 M Street, NW
Suite 700
Washington, DC  20005
202.466.6550
202.785.1756 (fax)
larry.gondelman@ppsv.com

Counsel for Defendant John F. Bisney

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served electronically, by the

U.S. District Court for the District of Columbia Electronic Document Filing System

(ECF), this 23rd day of April, 2007, upon the following:

> William Alden McDaniel, Jr.
> LAW OFFICES OF WILLIAM ALDEN MCDANIEL, JR.
> 118 W. Mulberry Street
> Baltimore, MD  21201
> Counsel for Plaintiff Kathleen A. Benz
>
> Laura R. Handman
> DAVIS WRIGHT TREMAINE LLP
> 1919 Pennsylvania Avenue, NW
> Suite 200
> Washington, DC  20006
> Counsel for Defendant The Washington Newspaper
> Publishing Company, LLC

_____
/s/Larry S. Gondelman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHLEEN A. BENZ | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC | ) Civil Action No. 1:05cv1760(EGS)(JMF) |
| | ) |
| | ) Next Event: |
| and | ) Status Conference:  June 21, 2007 |
| | ) |
| JOHN F. BISNEY | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF JOHN F. BISNEY TO DISMISS THE CROSS-CLAIM OF DEFENDANT THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC

The defendant The Washington Newspaper Publishing Company, LLC ("The Examiner") has filed a Cross-Claim against defendant Bisney in which it claims that Bisney made fraudulent misrepresentations to it in an e-mail, and that it relied "in part" on those misrepresentations when it published its own article about Plaintiff in a gossip column.  The Examiner then claims that if Plaintiff prevails on her claims against The Examiner, defendant Bisney is liable for any damages awarded against The Examiner.  In essence, defendant The Examiner blames Bisney for the fact that it published an article that led to plaintiff suing it for libel.  In addition, it includes equitable claims for contribution and indemnification.[1]

---

[1] Defendant The Examiner has demanded a trial by jury.  Defendant Bisney notes that a jury trial is permissible for Claim One (fraudulent misrepresentation) only.  The claims for contribution and indemnification are equitable claims to be decided by the Court.

1

The Cross-Claim must be dismissed for failure to allege a cause of action as to all three claims.

## I.    FRAUDULENT MISREPRESENTATION

The elements of fraudulent misrepresentation are: "1) false representation of a material fact; 2) knowledge of its falsity, 3) intent to mislead another into relying on the representation; 4) reasonable reliance; and 5) injury as the result of reliance." *Ehlen v. Lewis*, 984 F.Supp. 5, 9 (D.D.C. 1997); *Redmond v. Birkel*, 933 F.Supp. 1, 3 (D.D.C. 1996). The claimant "must allege such facts as will reveal the existence of all the requisite elements of fraud." *Redmond v. Birkel*, 933 F. Supp. at 3. Failure to do so is fatal to the claim.

The Examiner's claim for false representation fails to allege two essential elements of the tort of false representation. The most obvious failure is lack of any allegation that either Ms. Feld or The Examiner **reasonably** relied on Mr. Bisney's false representations. Instead, The Examiner alleges simply that "Ms. Feld relied **in part** upon Bisney's false representation... when she wrote the Column" and that "The Examiner relied **in part** upon Bisney's false representation... when it published the Column." (Cross Claim, ¶¶ 23, 24). This failure to allege this essential element is fatal to the claim.

The reason for the omission of an allegation that its reliance was reasonable is obvious. It is not reasonable for a columnist or a newspaper to rely on an unsolicited e-mail with an attachment from the Internet as a basis for writing gossip about somebody without making some effort to verify the accuracy of the information it received. Yet, this is exactly what Ms. Feld and The Examiner did. While Mr. Bisney has admitted to

2

his role in forwarding the e-mail and his version of the article, that action does not amount to the tort of false misrepresentation.

The false representation claim of The Examiner also fails for the simple reason that the statements in its article that lie at the crux of plaintiff's libel claim (and by extension her false light invasion of privacy claim) differ substantially from the statements contained in Bisney's e-mailed article. In other words, The Examiner's libelous statements cannot be attributed to Bisney. In writing its own libelous statements, The Examiner cannot possibly claim that it relied on Bisney's statements. Indeed, it only alleges that Ms. Feld and The Examiner "relied in part" upon Bisney's false representations. It fails to identify upon which false representations it relied. Fraud must be pleaded with particularity. (Rule 9(b) of the Federal Rules of Civil Procedure). Therefore, the claim for false representation fails to state a cause of action.

In the portion of the Second Amended Complaint that details the acts and omissions of The Examiner, plaintiff focuses on two key statements in The Examiner's article. In ¶ 177, plaintiff claims that The Examiner "accused plaintiff, Kathleen A. Benz, of 'us[ing] her position to meet all the 'right' people."[2] In ¶ 178, plaintiff points to The Examiner's allegation that "Ms. Benz has 'hooked up...with porn king Mark Kulkis' and implied that she had done so for the purpose of obtaining information about a lunch Kulkis had with Karl Rove, an adviser to President George W. Bush."

It is clear from plaintiff's response to The Examiner's motion to dismiss the libel claim that the two critical statements are the use of the phrase "hooked up" and the notion

---

[2] Plaintiff also includes a reference to The Examiner's statement that plaintiff was romantically linked to several named 'power players,' including Jonathan Ledecky, Gary Williams, John McDonough, Mel Karmazin, Hugh O'Brien, John Bisney, Paul Bosserman, and John Daggitt, who was described as Ms. Benz's 'one-time fiance [sic].'" Such a listing is hardly libelous.

that plaintiff uses her position at CNN to meet all the right people. *See Memorandum of Points and Authorities of Plaintiff, Kathleen A. Benz, in Opposition to Defendant The Washington Examiner's Motion to Dismiss* at p. 1 ("Here, the defendant published a false story stating that the plaintiff, a single young woman, had 'hooked up'—that is engaged in sexual activity without emotional attachment—with a notorious producer of pornographic movies and otherwise used her professional position to cultivate romance and sexual liaisons with 'power players.'"). A similar focus on these two issues, i.e. hooking up and using her position to meet the right people, appears on pages 2, 3, 4, 6-7, 10-13.

The problem for The Examiner is that it was not John Bisney who said these things about Ms. Benz. Rather, it was The Examiner's gossip columnist who, without talking to anyone mentioned in the story (including the non-existent LA Times reporter who purportedly sent her the article) decided to embellish in a significant way the article that Bisney admittedly wrote. Bisney's article was tame by comparison. He did not use the term "hooked up." Instead, he merely described Ms. Benz as the love interest of Mr. Kulkis. In addition, he made no claim whatsoever that Ms. Benz used her position to meet all the right people. Indeed, as defendant Bisney explained in his Motion to Dismiss, his article contained only the following nine statements:

1.    Mark Kulkis, described as an "X-rated video mogul," has found a new love interest, Kathy Benz.

2.    Kathy Benz is a "Washington powerdater."

3.     Mr. Kulkis and Ms.Benz met during an interview while Mr. Kulkis was in Washington for the national Republican Congressional Committee's annual President's dinner.

4.     Ms. Benz denies she's cozying up to Mr. Kulkis to get a scoop for CNN about a private lunch that Mr. Kulkis had with Karl Rove.

5.     Ms. Benz has told girlfriends that "Mark's a wonderful guy and I think this could be the real thing."

6.     Ms. Benz is known in Washington power circles for dating figures such as Jonathan Ledecky and Gary Williams.

7.     Ms. Benz spent time last August with Mel Karmazin at his Hamptons home.

8.     Ms. Benz' regular companions include Rep. Pete Sessions, John Sununu, Sr., Mark Ein, John McDonough and Julien Epstein.

9.     Ms. Benz was engaged to John Daggett.

None of these statements comes close to suggesting that Plaintiff and Mr. Kulkis had "hooked up" or that Plaintiff uses her position at CNN to meet all the right people. Instead, those statements are the result of literary license taken by Ms. Feld and The Examiner. Thus, it is apparent that the wounds suffered by The Examiner are sufficiently self-inflicted that it cannot seek to shift the blame for these two statements to Mr. Bisney.

## II.     INDEMNIFICATION

In Claim Two, The Examiner asserts that, "[t]o the extent The Examiner is found liable to Plaintiff, The Examiner seeks equitable indemnification from Bisney pursuant to common law. The Defendants are not *in pari delicto,* and The Examiner was induced to

act by a misrepresentation on the part of Bisney, on which it justifiably relied." It further

claims that if Plaintiff prevails against The Examiner, Bisney is liable for all damages.

Given the fact that there is no contract, either express or implied, between Bisney

and The Examiner, an obligation to indemnify may be implied in law only in order to

achieve equitable results. *Quadrangle Development Corporation, QDC v. Otis Elevator*

*Company*, 748 A.2d 432, 434 (D.C. 2000); *East Penn Mfg. Co. v. Pineda*, 578 A.2d 1113,

1126 (D.C. 1990).

Indemnity is a shifting of responsibility from the shoulders of one person to
another, and the duty to indemnify has been recognized in cases where the equities have
supported it. A court's view of the equities may have been based on the relation of the
parties to one another, and the consequent duty owed; or it may be because of a
significant difference in the kind or quality of their conduct.

*Quadrangle Development Corporation, QDC v. Otis Elevator Company*, 748 A.2d at

435. Ultimately, it is limited to situations "where the indemnitee's conduct was not as

blameworthy as that of the indemnitor when based upon equitable principles." *Id.*

The Restatement (Second) of Torts, § 886B(2) lists six situations in which

indemnity has been granted for equitable reasons. Only one of them is relevant to this

case, i.e. where the indemnitee was induced to act by the misrepresentation on the part of

the indemnitor, upon which he justifiably relied. These are, in essence, the same as the

elements of the tort of false misrepresentation.

As explained in the analysis of the false misrepresentation claim, however, the

defamatory statements made by The Examiner are separate and distinct from the

statements made by defendant Bisney in the article that he forwarded to it. Bisney did

not induce The Examiner to publish the statement that plaintiff had "hooked up" with a

porn producer. Nor did Bisney induce The Examiner to claim that plaintiff used her

6

position at CNN to meet all the right people. These statements were written by Ms. Feld, not Mr. Bisney. Mr. Bisney has acknowledged responsibility for the statements that he made. However, he cannot be blamed for statements that he did not author.

## III.    CONTRIBUTION

The Examiner's claim for contribution is succinct: "[t]o the extent The Examiner is found liable to Plaintiff, and to the extent the Court rules that The Examiner is not entitled to indemnification from Bisney, The Examiner is entitled to contribution from Bisney." In this case, however, brevity is not a virtue. The Claim not only fails to adequately allege a claim for contribution, it is also unsupported by the law.

It is well-settled in the District of Columbia that "there is a right of equal contribution among joint tortfeasors." *District of Columbia v. Washington Hospital Center*, 722 A.2d 332, 336 (D.C. 1998). The rationale supporting this right is that "as each tort-feasor was at fault in bringing about the injury to the innocent party, then in justice each tort-feasor should share his part in the burden of making the injured party whole again." *Id. See Martello v. Hawley*, 300 F.2d 721, 723 (D.C. Cir. 1962).

An essential element to the claim for contribution "is that the parties be joint tortfeasors in the sense that their negligence concurred in causing the harm to the injured party." *District of Columbia v. Washington Hospital Center*, 722 A.2d at 336; *Washington v. Washington Hosp. Ctr.*, 579 A.2d 177, 187 (D.C. 1990).

The Examiner cannot possibly aver in its Cross-Claim that it and defendant Bisney are joint tortfeasors because it has affirmatively denied this allegation in its Answer to the Second Amended Complaint. Paragraphs 206 through 214 and paragraph 216 of the Second Amended Complaint allege that The Examiner and defendant Bisney

7

took various actions "jointly and severally." In its Answer, The Examiner denied each and every allegation to the extent that a response was required. Given this denial, The Examiner cannot now claim that it is a joint tortfeasor with defendant Bisney.

Indeed, The Examiner and Bisney are not joint tortfeasors. While defendants need not engage in concerted action to be liable as joint tortfeasors, their independent acts must combine to cause a single injury. "A party who is the sole legal cause of a plaintiff's injuries is not entitled to contribution." *District of Columbia v. Washington Hospital Center*, 722 A.2d at 337.

In order to bring a defamation action, a plaintiff must allege and prove: 1) that the defendant made a false and defamatory statement concerning the plaintiff; 2) that the defendant published the statement without privilege to a third party; 3) that the defendant's fault in publishing the statement amounted to at least negligence; and 4) either that the statement was actionable as a matter of law irrespective of special harm or that is publication caused the plaintiff special harm. *Klayman v. Segal*, 783 A.2d 607, 612 n. 4 (D.C. 2001). Thus, the crux of the claim is the **publication** of a defamatory statement.

Plaintiff's defamation claim is based upon two very distinct articles. Each article was published by a different defendant. Defendant Bisney published an article on various Internet sites. That article makes no reference to "hooking up" or to plaintiff using her position at CNN to meet all the right people. Defendant The Examiner published a different article. While The Examiner based its article on the one that Bisney forwarded to it, its publication was a distinct act, containing different language than the Bisney article. It was not a mere republication of the Bisney article. Moreover, Bisney played

8

no role whatsoever in the decision by The Examiner to publish its article or to rewrite it in the manner it did so. The injury allegedly suffered by the plaintiff is not a single injury. As a result, contribution is not available to The Examiner.

In addition, contribution is not available to a tortfeasor who has intentionally caused the harm. Restatement (Second) on Torts, § 886A. The reason for this is simple.

It is undoubtedly the policy of the law to discountenance all actions in which a party seeks to enforce a demand originating in a willful breach or violation, on his part, of the legal rights of others. Courts of law will not lend their aid to those who found their claims upon an illegal transaction...It is only when a person knows, or must be presumed to know that his act was unlawful, that the law will refuse to aid him in seeking an indemnity or contribution. It is the unlawful intention to violate another's rights, or a willful ignorance and disregard of those rights, which deprives a party of his legal remedy in such cases.

*George's Radio v. Capital Transit Co.*, 126 F.2d 219, 221 (D.C. Cir. 1942).

The Second Amended Complaint alleges that The Examiner acts were intentional. See ¶ 203 ("The acts and omissions of defendant The Washington Newspaper Publishing Company, LLC, as alleged in this Second Amended Complaint, were intentional, willful, and done for the purpose of harming plaintiff, Kathleen A. Benz."). In fact, defamation is characterized as an "intentional" tort. *See Heard v. Johnson*, 810 A.2d 871, 881 n. 5 (D.C. 2002) (defamation, invasion of privacy and intentional infliction of emotional distress are nonphysical intentional torts); *Coleman v. American Broadcasting Companies, Inc.*, 1985 WL 365, *8 (D.D.C. 1985). *See also* D.C. Code § 12-301 (establishing a one-year statute of limitations for libel, slander, assault and other similar intentional torts).

Given the nature of the claim against The Examiner and the fact that it alone published the gossip column, it cannot seek contribution against defendant Bisney for its own intentional acts. Therefore, the claim for contribution must be dismissed.

9

Wherefore, and for such additional reasons as may appear at oral argument, if any, defendant Bisney respectfully requests that this Honorable Court dismiss the Cross-Claim filed against him by The Examiner.

Respectfully submitted,

/s/Larry S. Gondelman
(D.C. Bar No. 950691)
1501 M Street, NW
Suite 700
Washington, DC  20005
202.466.6550
202.785.1756 (fax)
larry.gondelman@ppsv.com

Counsel for Defendant John F. Bisney

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served electronically, by the

U.S. District Court for the District of Columbia Electronic Document Filing System

(ECF), this 23rd day of April, 2007, upon the following:

William Alden McDaniel, Jr.
LAW OFFICES OF WILLIAM ALDEN MCDANIEL, JR.
118 W. Mulberry Street
Baltimore, MD 21201
Counsel for Plaintiff Kathleen A. Benz

Laura R. Handman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Counsel for Defendant The Washington Newspaper
Publishing Company, LLC


_____
/s/Larry S. Gondelman

11