IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHLEEN A. BENZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 1:05cv1760 (EGS) (JMF) |
| | ) |
| THE WASHINGTON NEWSPAPER | )  Next event: Status Conference 6/21/07 |
| PUBLISHING COMPANY, LLC | ) |
| and | ) |
| JOHN F. BISNEY, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANT THE EXAMINER'S OPPOSITION TO
DEFENDANT BISNEY'S MOTION TO DISMISS CROSS-CLAIM**

Defendant The Washington Newspaper Publishing Company, LLC, publisher of the Washington Examiner ("The Examiner"), by undersigned counsel, hereby opposes Defendant John F. Bisney's ("Bisney") Motion to Dismiss the Cross-Claim.

**BACKGROUND**

Plaintiff Kathleen Benz ("Benz" or "Plaintiff") and Bisney "developed a social friendship" in November 2002. Their friendship ended badly in May 2005, after Plaintiff learned that Bisney had obtained access to her e-mail, established and maintained websites in Plaintiff's name, and posted personal and private information about Benz on the World Wide Web. Second Amended Complaint ("Am. Compl.") at ¶¶ 15-17. Plaintiff alleges that on or about July 19, 2005, Bisney began to post articles on a number of Internet sites, stating that Plaintiff was dating various wealthy and well-known men. *Id.* ¶¶ 78-82, 123. These articles appeared on websites such as a blog entitled "What's Happening at CNN," the Philadelphia Inquirer's website, and a website entitled "Watching the Watchers."

1

The Examiner published a thrice-weekly gossip column by a freelance columnist, Karen Feld, entitled "The Buzz." Cross-Claim at ¶ 9. As alleged in the Cross-Claim, on or about August 16, 2005, Ms. Feld received an email from the sender "julie.bowen@latimes.com" entitled "DC gossip" (the "Email"). The Email stated, in part, "Karen, Just wanted to make you aware of an interesting piece of naughty gossip on the Net!" and included the text of one of the articles about Plaintiff allegedly authored by Bisney, as well as a link to a website that also featured an article about Plaintiff allegedly authored by Bisney. *Id.* at ¶ 10. Mr. Bisney admits sending the fraudulent Email to Ms. Feld. *Id.* at ¶ 11; Bisney's Mem. of Pts. and Auth. in Support of Motion to Dismiss ("Mem.") at 2-3 ("Mr. Bisney has admitted to his role in forwarding the e-mail and his version of the article").

Ms. Feld's August 19, 2005 gossip column (the "Column") included an item, based on the email sent by Bisney, that indicated that Ms. Benz was "linked romantically" to a number of men referenced in the article forwarded to Ms. Feld. Cross-Claim at ¶ 12. In her Amended Complaint, Plaintiff brings three claims against both The Examiner and Bisney: for defamation (Claim One), invasion of privacy (public disclosure of private facts) (Claim Three), and false light invasion of privacy (Claim Four). Am. Compl. at ¶¶ 205-217, 237-259.[1] Plaintiff also brings claims for intentional infliction of emotional distress and intrusion upon seclusion against Bisney alone.

On March 28, 2007, with the Court's permission, The Examiner filed a cross-claim against Bisney for fraudulent misrepresentation, indemnification, and contribution. The Examiner's Cross-Claim identifies the fraudulent Email by date, sender and e-mail address and the text of the Email. The Cross-Claim alleges that Bisney falsely represented to Ms. Feld that

---

[1] The claims arising out of the correction The Examiner published on September 30, 2005 were dismissed by the Court on September 29, 2006.

the Email was sent from someone who worked at the *Los Angeles Times* and suggested that the facts contained in the Article quoted in the Email and linked to in the Email were true and repeated elsewhere "on the Net." Cross-Claim at ¶ 18. The Examiner alleges that these false representations were material, and that Bisney knew that the Email was falsely represented as coming from someone who worked at the *Los Angeles Times* and that the Article (or parts of the Article) was false. *Id.* at ¶¶ 19-20. By sending the Email and the Article, the Cross-Claim alleges Bisney intended to deceive Ms. Feld and induce reliance on the Email and Article for publication in The Examiner, and intended to deceive The Examiner by inducing Ms. Feld's reliance on the Email and the Article for publication in The Examiner. *Id.* at ¶¶ 21-22. The Cross-Claim further alleges Ms. Feld relied upon Bisney's false representation in the Email and the Article when she wrote the Column, supported by Bisney's other fabricated articles "on the Net," and The Examiner relied in part upon Bisney's false representation, conveyed through Ms. Feld, when it published the Column. *Id.* at ¶¶ 23-24.

Bisney now seeks to dismiss the cross-claim against him because, he argues, The Examiner has failed to significantly allege a claim upon which relief can be granted. Motion at 1. Bisney's motion to dismiss should be denied because, <u>first</u>, the claim for fraudulent misrepresentation was stated with sufficient particularity, <u>second</u>, whether or not The Examiner's reliance upon Bisney's email was reasonable is not appropriately decided at the pleading stage, and <u>third</u>, the cross-claim states claims for indemnification and contribution.

## ARGUMENT

I. **The Fraud Claim Has Been Adequately Pled, and States a Claim Upon Which Relief May be Granted**

    A. **Claim for Fraud Was Stated With Particularity**

As grounds for dismissal, Bisney alleges that The Examiner failed "to identify upon which false representations it relied." Mem. at 3. Rule 9(b) "requires the claimant to allege at a minimum the identity of the person who made the fraudulent statement, the time, place, and content or the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated." 2 Moore's Federal Practice § 9.03[1][b] (3d ed. 2006). *See also United States v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256-59 (D.C. Cir. 2004) (pleader in fraud action must state time, place, and content of false misrepresentations, fact misrepresented, and what was retained or given up as a consequence of fraud, and must identify individuals allegedly involved in fraud). The Examiner's allegations state the "who, what, when, and where," identifying the date, sender, addressee and text of the Email, and are more than sufficient to give Bisney "sufficient information to allow for the preparation of a response." *Martin-Baker*, 389 F.3d at 1256. *See* Cross-Claim at ¶¶ 6-25. It is clear from Bisney's Motion to Dismiss that he knows exactly which email is referred to and what the claim against him is.

Bisney argues that The Examiner failed to allege that it or Ms. Feld "reasonably relied" on the misrepresentation. The formulation of the elements of fraudulent misrepresentation differ, some citing "reasonable reliance" (see cases cited in Bisney's Mem. at 2), and others not; *see Esteves v. Esteves*, 680 A.2d 398, 401 n. 1 (D.C. 1996) (the elements of fraudulent misrepresentation in the District of Columbia are: "(1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; and (5) an action that is taken in reliance upon the misrepresentation.") (citations omitted);

4

*Armstrong v. Accrediting Council for Continuing Educ. & Training*, 961 F. Supp. 305, 309 (D.D.C. 1997) (listing identical elements).

In any event, as Bisney concedes, The Examiner did allege reliance, Cross-Claim at ¶ 23. Even if, *arguendo*, "reasonable" reliance was required to be pled, reasonable reliance can be inferred from the allegations in the Cross-Claim. In a fraud case where, unlike here, reliance was not expressly pled, Judge Lamberth of this court denied a motion to dismiss for failure to state a claim. Judge Lamberth held that "while reliance is an essential element of a fraudulent misrepresentation claim, it need not be specially pleaded if it can readily be gathered to exist from the allegations in the complaint." *Avianca, Inc. v. Corriea*, 1991 U.S. Dist. LEXIS 21622, *16 n. 26 (D.D.C. May 31, 1991) (citing *Democratic National Committee v. McCord*, 416 F. Supp. 505, 508 (D.D.C. 1976)). Because Rule 9 "should not be considered in isolation and should be construed in light of Rule 8 which calls for 'short and plain statements' of claims for relief," the court should not dismiss a fraud claim for failure to allege with particularity in a case such as this one, in which "a missing element of the fraud claim can easily be inferred from the complaint." *Avianca*, 1991 U.S. Dist. LEXIS 21622 at *16. The allegations in the Cross-Claim (namely, that Bisney sent Ms. Feld an email that appeared to come from an *Los Angeles Times* reporter and that endorsed Bisney's fabricated articles) are more than sufficient to support an allegation of reasonable reliance on the fraudulent statement for pleading purposes.

Should the Court find that the allegations of fraudulent misrepresentation have not been pled with adequate particularity, The Examiner requests leave to file an amended cross-claim to amend any deficiency. *See, e.g., Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (complaint dismissed under Fed. R. Civ. P. 9(b) almost always dismissed with leave to amend); *Cassidy &*

5

*Pinkard, Inc. v. Jemal*, 899 F. Supp. 5, 9 (D.D.C. 1995) (remedy under rule 9(b) "is almost always dismissal with leave to amend").

### B. Fraud Claim States a Claim Upon Which Relief Can Be Granted

While styled as a pleading challenge, at bottom, Bisney's motion argues that the claim must be dismissed because as a matter of law, that The Examiner's reliance was not reasonable. On a motion to dismiss, the Court must accept as true the allegations in the cross-claim. Granting judgment on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is only warranted if it appears beyond doubt, based on the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003).

First, whether or not The Examiner's reliance was "reasonable" is not appropriately decided at the initial pleading stage of the proceedings. *See, e.g.*, *Isaac v. Mnemonic Sys.*, 1998 U.S. Dist. LEXIS 4221, *24 (D.D.C. Mar. 25, 1998) ("The reasonableness of the reliance upon a misrepresentation is a question of fact"); *Rhone-Poulenc Agro v. DeKaln Genetics Corp.*, 272 F.3d 1335, 1346 (Fed. Cir. 2000) ("in fraud actions, it is generally for the jury to decide whether plaintiff reasonably relied upon representations made by defendant."). At the very least, this issue must wait for the Court to decide on a summary judgment motion once discovery has been completed in this case.[2] *Isaac*, 1998 U.S. Dist. LEXIS 4221, *24 ("in cases where no reasonable person could have relied on the statements, summary judgment *may* be appropriate") (emphasis added); *but see Armstrong v. Accrediting Council for Continuing Educ. & Training*, 961 F. Supp.

---

[2] The Court's scheduling order in this case provides for a discovery cutoff of July 30, 2007, and the filing of summary judgment motions after September 5, 2007.

6

305, 311 (D.D.C. 1997) (declining to grant summary judgment to defendant on reasonable reliance issue). The Examiner has alleged sufficient facts to put Bisney on notice of the exact nature of the claim, and whether or not Ms. Feld's reliance on an email from someone she believed to be a reporter at the *Los Angeles Times* was reasonable is not appropriate for determination at this time.

Second, Bisney argues that the fraudulent misrepresentation claim fails because "the statements in the article that lie at the crux of plaintiff's libel claim (and by extension her false light invasion of privacy claim) differ substantially from the statements contained in Bisney's emailed article." Mem. at 3. Bisney argues that "The Examiner cannot possibly claim that it relied on Bisney's statements" in "writing its own libelous statements." Mem. at 3. Bisney concedes in his motion that the source for the Column is the Email. He argues only that because The Examiner added the phrases "hooked up" and "uses her position to meet all the right people" to Bisney's false article, he is somehow absolved of liability – as a matter of law – for his fraudulent act in sending the article to Ms. Feld. This claim that the Email and Column are "substantially different" is absurd; Ms. Feld clearly relied on the Email in writing the Column, as she will testify. The Email reads:

> Karen,
>
> Just wanted to make you aware of an interesting piece of naughty gossip on the Net!
>
> "(BEVERLY HILLS) -- X-rated video mogul Mark Kulkis, who escorted porn star Mary Carey to June's GOP dinner with President Bush, has found a new love interest: Washington powerdater and CNN producer Kathy Benz.
>
> The two met during an interview while Kulkis, 40, president and CEO of Kick Ass Pictures, was in DC for the National Republican Congressional Committee's annual President's Dinner. He's honorary chairman of the NRCC's Business Advisory Council, a roundtable of millionaire entrepreneurs.

> Benz denies she's cozying up to Kulkis to get a scoop for CNN about the private lunch he and Carey had with White House Chief of Staff Karl Rove. "Mark's a wonderful guy and I think this could be the real thing," she tells girlfriends.
>
> Benz, 35, is known in Washington power circles for dating such figures as venture capitalist Jonathan Ledecky (now trying to buy the Washington Nationals), Univ. of Maryland basketball coach Gary Williams, and spent time last August with Sirius CEO Mel Karmazin at his Hamptons home.
>
> Her regular companions include Rep. Pete Sessions (R-Tex), John Sununu, Sr, venture capitalist Mark Ein, Chicago Cubs VP John McDonough and Democratic lawyer Julian Epstein. She was engaged to John Daggett, AOL millionaire."
>
> There are photos at: http://dailysexreview.com/category/porn-gossip
>
> BTW, the list goes on and on for this hottie -- Georgetown stylist Paul Bosserman, actor Hugh O'Brien, CNN correspondent John Bisney, etc etc.
>
> Enjoy!

The Column reads:

> CNN producer **Kathy Benz**, 35, uses her position to meet all the "right" people. She's been linked romantically with power players – including venture capitalist **Jonathan Ledecky** (a Washington Nationals ownership hopeful), University of Maryland basketball coach **Gary Williams**, Chicago Cubs VP **John McDonough**, Sirius CEO **Mel Karmazin**, actor **Hugh O'Brien**, CNN correspondent **John Bisney**, Georgetown hairstylist **Paul Bosserman** and her one-time fiance [sic], AOL millionaire **John Daggett**. Now, she has hooked up, according to her gal pals, with porn king **Mark Kulkis**. The couple first met when Kulkis, 40, president and CEO of Kick Ass Pictures, did a CNN interview while he was in D.C. for the National Republican Congressional Committee's annual President's Dinner. He's the honorary chairman of the NRCC's Business Advisory Council. That's a roundtable of millionaire entrepreneurs. Kulkis made tabloid headlines when he escorted porn star **Mary Carey** to the GOP dinner with **President Bush** in June. At that time, he and Carey enjoyed a private lunch with White House insider **Karl Rove**. Wouldn't you have liked to have been a fly on that wall?

As is quite obvious from reading the Email and the Column, Ms. Feld relied on the Email in writing the Column, since <u>all</u> the men mentioned in the Column are mentioned in the Email. Despite Bisney's arguments, it is clear on its face that the Email suggests that Plaintiff and Mark Kulkis "hooked up" (stating that Kulkis "has found a new love interest" in Plaintiff) and that

8

Plaintiff uses her position to meet men (describing Plaintiff as a "Washington powerdater" and that she met Kulkis on assignment for CNN, denying that "she's cozying up to Kulkis to get a scoop for CNN about the private lunch he and Carey had with White House Chief of Staff Karl Rove").

In any event, this is not an appropriate issue for a motion to dismiss as a matter of law; if a jury finds The Examiner liable for damages to Plaintiff based on the Column, The Examiner is entitled to have the same jury decide what portion, if any, of those damages are attributable to Bisney's fraudulent misrepresentation to Ms. Feld. The Cross-Claim sufficiently alleges fraud: Bisney sent an email to Ms. Feld, purporting to be from a *Los Angeles Times* reporter, containing what Bisney knew to be false information about Plaintiff, with the intention that Ms. Feld publish the information in her column in The Examiner. Now, after Bisney has succeeded in fabricating a "non-existent LA Times reporter" (Mem. at 4) for the purpose of inducing reliance, and entangled The Examiner in the process, he argues that The Examiner's "wounds" are "self-inflicted." Mem. at 5. Bisney's attempt to avoid liability for his actions at this pleading stage should be rejected. *See, e.g., Goldman v. Berquai*, 19 F.3d 666, 674 (D.C. Cir. 1994) (finding summary judgment on the question of reasonable reliance inappropriate and holding that "a plaintiff is justified in relying on a material misrepresentation if the defendant has taken steps to induce the plaintiff party to believe that she can trust the defendant's word").

## II.     The Cross-Claim States Claims for Indemnification and Contribution

The Cross-Claim sufficiently alleges that The Examiner is entitled to indemnification from Bisney because The Examiner was wrongfully induced to act by a misrepresentation on the party of Bisney, on which it justifiably relied. Cross-Claim at ¶¶ 25-27. Bisney concedes that equitable indemnity has "the same … elements of the tort of false misrepresentation." Mem. at

9

6. Therefore, The Examiner's indemnification claim must survive for the same reasons stated in section I, *supra*. Bisney's concern appears to be that he might also be liable for the portions of the Column that he did not write. Mem. at 6-7. Even if Bisney were correct that his liability would not extend to those portions of the Column – and the comparison of the two texts clearly establishes otherwise – it is not an all-or-nothing proposition, as indemnity can be total or partial. *Machesney v. Larry Bruni, P.C.*, 905 F. Supp. 1122, 1135 (D.D.C. 1995). Bisney's argument that indemnification would not apply for the entirety of any judgment awarded to Plaintiff related to the Column is one that will be decided by the Court once all the facts are before it, as this is an equitable claim.

The Examiner claims, in the alternative,[3] that it is entitled to contribution from Bisney. Cross-Claim at ¶¶ 28-29. Bisney points out, correctly, that contribution requires the parties to be joint tortfeasors. Mem. at 7. However, Bisney's argument that The Examiner cannot claim it is a joint tortfeasor with Bisney because it denied that they were joint tortfeasors in its Answer to Plaintiff's complaint, Mem. at 8, simply defies logic. In her Amended Complaint, Plaintiff claims that Bisney and The Examiner are joint tortfeasors, and The Examiner is merely preserving its well-established right to contribution in the event that it is found by the factfinder to be a joint tortfeasor with Bisney. The question of whether The Examiner and Bisney are joint tortfeasors – that is, whether their independent acts combined to cause a single injury to Plaintiff – is one for the factfinder, not for The Examiner or Bisney to decide. Of course, if a factfinder determines that The Examiner and Bisney are not joint tortfeasors, there can be no contribution.

Bisney's final argument, that The Examiner is not entitled to contribution because defamation is an "intentional" tort, misreads the law. First, it is far from clear that D.C. would

---

[3] *See* Fed. R. Civ. P. 8(e)(2).

10

recognize a prohibition against contribution for intentional acts. *See* Restatement (Third) of Torts: Apportionment of Liability §23 cmt l (2000) ("this Section does not preclude an intentional tortfeasor from recovering contribution"). Even if D.C. law would prohibit contribution for intentional torts, the prohibition does not apply to defamation absent a finding of malice on the part of the defendant. Plaintiff's complaint alleges liability for compensatory damages based on negligence. Am. Compl. ¶ 200. If she succeeds on that basis, a claim for contribution on compensatory damages would be premised on negligence, not on an intentional tort. In any event, there has been no finding here that The Examiner acted with actual or common law malice, and the claim cannot be dismissed at this pleading stage. *See, e.g., Globe Comm. v. R.C.S. Rizzoli Periodici*, 729 F. Supp. 973, 978 (S.D.N.Y. 1990) (denying motion to dismiss fraud and contribution claim by Globe newspaper against Italian tabloid that published article that was the source on which the Globe relied for its allegedly defamatory article).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court deny the Motion to Dismiss of Cross-Claim Defendant Bisney.

Dated this 4th day of May, 2007.

           Respectfully submitted,

           DAVIS WRIGHT TREMAINE LLP

           By:     /s/  Laura R. Handman
                Laura R. Handman (D.C. Bar No. 444386)
                Amber L. Husbands (D.C. Bar No. 481565)
           1919 Pennsylvania Avenue, N.W., Suite 200
           Washington, D.C. 20006-3402
           (202) 973-4200
           (202) 973-4499 fax

           *Attorneys for Defendant The Washington Newspaper Publishing Company, LLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 4, 2007, I caused the foregoing to be served electronically on counsel of record by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF).


                /s/  Amber L. Husbands
                Amber L. Husbands